IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LABMD, INC., | ) | |
|         Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 15-92 |
| | ) | |
| | ) | Judge Mark R. Hornak/ |
| TIVERSA HOLDING CORP. *formerly known as* TIVERSA, INC.; ROBERT J. BOBACK; M. ERIC JOHNSON; DOES 1-10, | ) ) ) ) | Chief Magistrate Judge Maureen P. Kelly

Re: ECF Nos. 21, 23 and 26 |
|         Defendants. | ) | |

**OPINION AND ORDER**

**KELLY, Chief Magistrate Judge**

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

In a new chapter of the ongoing litigation between the parties,[1] Plaintiff LabMD, Inc., a Georgia corporation ("LabMD") has filed this civil action stating claims for conversion, defamation, interference with business relations, fraud, negligent misrepresentation, conspiracy

---

[1] Litigation between the parties previously commenced in Georgia state court, was removed to the United States District Court for the Northern District of Georgia, and was subsequently dismissed for lack of personal jurisdiction. LabMd v. Tiversa, Inc., No. 11-4044 (N.D. Ga. Aug. 15, 2012), *aff'd*, 509 F. App'x 842 (11th Cir. Feb. 5, 2013). Thereafter, Tiversa filed an action in this Court against LabMd pleading state law claims for defamation, slander *per se*, commercial disparagement and trade libel. Tiversa Holding Corp. v. LabMD, Inc., No. 13-1296 (W.D. Pa. Sept. 5, 2012). On November 4, 2014, Judge Nora Barry Fischer dismissed Tiversa's action for lack of diversity jurisdiction, upon the addition of Richard Edward Wallace, a Pennsylvania resident, as a named defendant. (ECF No. 84). Tiversa is now pursuing its claims in a separate consolidated action in the Pennsylvania Court of Common Pleas of Allegheny County, at GD-14-16497, before Judge Christine Ward. Also pending and arising out of the subject matter of this action is an administrative action commenced by the Federal Trade Commission, In the Matter of LabMD, Inc., No. 9357 (F.T.C.).

and a claim for the violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).

Plaintiff's claims arise out of an alleged shakedown scheme, whereby Defendant Tiversa, Inc., a Pennsylvania corporation, ("Tiversa"), Defendant Robert J. Boback, a Pennsylvania resident ("Boback"), and Defendant M. Eric Johnson, a New Hampshire resident ("Johnson") conspired to infiltrate LabMD's computer systems and, upon gaining access, created a data security breach in LabMD's confidential patient health-related computer files. Tiversa then offered to sell LabMD services to remedy the security breach that Tiversa created. When LabMD refused to purchase Defendant Tiversa's services, Defendants turned to the Federal Trade Commission and reported that due to LabMD's failed data security protocols, confidential patient health and personal information was disseminated on peer to peer networks, for unbridled use by identity thieves. Tiversa informed the FTC that its analysis of LabMD's data security led it to conclude that LabMD was in violation of federal privacy rules and regulations.

LabMD alleges that as a result of Defendants' conduct, the Federal Trade Commission initiated a public and wide-ranging investigation, leaving LabMD "an insolvent shell of a company." LabMD further alleges that an ongoing investigation by the United States House of Representatives Committee on Oversight and Governmental Reform revealed that Tiversa inaccurately provided information to the Federal Trade Commission, and that Tiversa benefitted commercially from federal investigations of several companies that were initiated upon Tiversa's reports of security data breaches. This revelation appears predicated upon statements allegedly made a former Tiversa employee. (ECF No. 1, ¶ 31). It would further appear that at least one former Tiversa employee has been provided a grant of immunity by the United States Attorney General, and is expected to testify in the coming weeks before the Federal Trade Commission, in

its pending action against LabMD. In the Matter of LabMD, Inc., No. 9357, 2014 WL 7495797 (F.T.C.) (Dec. 29, 2014).

Having recognized the history between LabMD and Tiversa, the Court now addresses two pending motions. The first is a Motion to Modify Docketing of Errata at ECF 18 and 19 filed by Tiversa (ECF Nos. 21, 23), and the second is a Motion for Disclosure of Plaintiff's Original RICO statement and co-Defendant's Unredacted Motion to Modify by M. Eric Johnson (ECF No. 26).

On February 18, 2015, pursuant to Local Rule 7.1B, LabMD filed its "RICO Case Statement," setting forth with specificity the facts underlying its RICO related claims against each of the Defendants. ECF No. 18. Plaintiff attached Exhibit P to the RICO Case Statement, which is a publicly available Order of Chief Administrative Law Judge D. Michael Chappell. Also attached to the RICO Case Statement, at Exhibit Q, is an executed fact-laden Affidavit, dated April 17, 2014.

Several hours after LabMD filed the RICO Case Statement, an "Errata" containing an amended version of the RICO Case Statement was filed on the docket at ECF No. 19. The amendment removes any reference to the contents of Exhibits P and Q, and indicates that the documents have been "Removed." The docket entry further states: "Reason for Correction: Inadvertent filing of privileged draft." An entry by a Clerk's Office staff member notes that ECF No. 18 has been removed from public view. In pertinent part, the Errata is an amended version of the RICO Case Statement and appears to revise LabMD's allegations as to how and when it learned of Defendants' alleged fraudulent concealment.

Later that day, counsel for LabMD wrote a letter to counsel for Defendants, stating that in accordance with the notification requirements of Rule 26(b)(5)(B) of the Federal Rules of Civil

3

Procedure, counsel was reporting an inadvertent disclosure of privileged matter which was filed on the docket at ECF No. 18, and that upon notification to the Court of the inadvertent filing, the privileged draft was removed and "timely replaced with the final filed version." (ECF No. 24-2). Plaintiff's counsel requested that any copies accessed by Defendants be destroyed.

Counsel for Tiversa responded, requesting the legal basis for LabMD's assertion of privilege, and noting that the cited Federal Rule of Civil Procedure pertains to discovery materials, which on its face, would not apply to the retracted documents. (ECF No. 24-3). Counsel for LabMD replied, expressing disappointment in the lack of "professional courtesy," and claiming that the draft RICO Case Statement is not a pleading, but is required by LR 7.1B as "another mandatory Initial Disclosure under Fed. R. Civ. P. 26(a)(1)." Citing Fed. R. Evid. 502(b) and Rule 4.4(b) of the Model Rules of Professional Conduct as adopted in Pennsylvania, counsel claimed the documents are attorney work-product, and also claiming that the documents include "information that was provided in confidence by Plaintiff to its counsel for purposes of this representation." (ECF No. 24-4). The correspondence between counsel reveals the anticipated necessity for resort to this Court to resolve the issue.

Subsequently, a telephone call was received at the Chambers of the undersigned from counsel for Tiversa, requesting a conference addressing the removal of the original RICO Case Statement as well as Exhibits P and Q. Counsel was instructed to file the pending Motion to Modify the Docket, and was provided a briefing schedule, which was also communicated to counsel for LabMD by telephone.

Given the absence of a Motion to Seal pursuant to Standing Order 2:05-mc-45 of the United States District Court for the Western District of Pennsylvania and/or a related Order, Chambers' staff contacted the Clerk's Office to determine how the documents at ECF No. 18

came to be removed from public view. It was reported that a secretary for LabMD's local counsel contacted the Clerk's Office and stated that she had inadvertently filed a draft of the RICO Case Statement. She requested that she be permitted to file the correct version, which omitted Exhibits P and Q, and any references thereto. She also requested that the originally filed version be removed from public view. The Clerk's Office honored the request, and the documents were sealed and removed from public view. The Court notes that LabMD is presumed to have knowledge of the procedures for sealing documents filed of record as implemented through the Local Rules for the United States District Court for the Western District of Pennsylvania, given that LabMD has previously filed appropriate motions. <u>See</u> <u>e.g.</u> No. 13-1296, ECF No. 54.

On February 26, 2015, Tiversa and Boback filed an "Unopposed Motion for Leave to File Under Seal." (ECF No. 20). The Motion explained the procedural irregularity at issue as well as LabMD's position that the originally filed RICO Case Statement and Exhibits P and Q were privileged and/or subject to protection afforded by the attorney work-product doctrine. The Motion explained that Tiversa intended to file a Motion to Modify Docketing of ECF No. 18 and 19 to strike the Errata or, in the alternative, to compel production of the redacted documents.

Upon the granting of Tiversa's Motion for Leave to File Under Seal (Text Order dated February 27, 2015), Tiversa and Boback filed the pending motion (ECF No. 23) and brief in support (ECF No. 24). On March 5, 2015, counsel for M. Eric Johnson entered his appearance and filed a "Motion for Disclosure of Plaintiff's Original RICO Statement and co-Defendant's Unredacted Motion to Modify." (ECF No. 26). LabMD has responded to both pending motions, which are now ripe for review.

## II.   STANDARD OF REVIEW

The standard applicable to the inadvertent disclosure of privileged material is set forth at Rule 502 of the Federal Rules of Evidence.  Rule 502 provides, in relevant part, that, when an inadvertent disclosure of privileged material is made in a federal proceeding, the disclosure does not operate as a waiver if:

>   (1) the disclosure is inadvertent;
>
>   (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
>   (3) the holder promptly took reasonable steps to rectify the error, including (if applicable), following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed.R.Evid. 502(b). The analysis involves a two-step process: "'[f]irst, it must be determined whether the documents in question were privileged or otherwise protected and second, if privileged documents are produced then a waiver occurs unless the three elements of FRE 502(b) are met.'" Gilson v. Pennsylvania State Police, No. 12-CV-00002, 2015 WL 403181, at *1-2 (W.D. Pa. Jan. 30, 2015)(quoting Wise v. Washington Cty., Civ. No. 10–1677, 2013 WL 4829227, at *2 (W.D. Pa. Sept.10, 2013) and Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh, Civ. No. 09–261, 2009 WL 3319820, at *2 (W.D. Pa. 2009) (alteration in the original)). Further, "the disclosing party has the burden of proving that each of Rule 502(b)'s elements has been satisfied." Id. (citing Wise, 2013 WL 4829227, at *2 and Rhoades, 2009 WL 33319820, at *2).

Courts in this Circuit also consider the following factors in determining whether waiver has occurred: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5)

6

whether the overriding interests of justice would or would not be served by relieving the party of its errors. See Gibson, 2015 WL 403181, at *2, (citing Wise, 2013 WL 4829227, at *2 (W.D. Pa. Sept.10, 2013); Rhoades, 2009 WL 3319820, at *2; Smith v. Allstate Ins. Co., 912 F.Supp.2d 242, 247 (W.D. Pa. 2012)); Carlson v. Carmichael, Civ. No. 10–3579, 2013 WL 3778356, at *2 (E.D. Pa. July 19, 2013); Fed. R. Evid. 502 Advisory Committee's Note; Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am., 254 F.R.D. 216, 219 (E.D. Pa. 2008)).

LabMD also relies upon Rule 26(b)(5)(B), which provides:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

### III. DISCUSSION

**A. Whether the documents are privileged?**

Tiversa seeks to strike the Errata filing and reinstate the original RICO Case Statement, contending that the Exhibit Q Affidavit "undermines Plaintiff's allegations and exposes the factual predicate of how Plaintiff learned of the purported fraud alleged in this case." ECF No. 24, p. 1. LabMD, as the party with the burden of proof under F.R.E. 502(b), claims that the original RICO Case Statement, including the exhibits thereto, constitute an inadvertently filed "draft" and are privileged attorney work-product. LabMD further argues that the executed Affidavit and publically available FTC hearing Order are also privileged, because the decision to include these documents is an indication of counsel's thought processes and litigation strategy. (ECF No. 27, p. 4).

7

The doctrine of work-product immunity "'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" In re Grand Jury (Impounded), 138 F.3d 978, 981 (3d Cir. 1998) (quoting United States v. Nobles, 422 U.S. 225, 238 (1975)). The work-product doctrine "promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011), Westinghouse Elec. Corp. v. Republic of the Phil., 951 F.2d 1414, 1428 (3d Cir. 1991) (citations omitted).

Taking at face value LabMD's claim that the originally filed RICO Case Statement is a "draft" pleading, clearly prepared in the course of litigation, it would appear that the work-product doctrine protects against disclosure. However, given the circumstances in which the document was made public, the Court finds the protection afforded under the work-product doctrine has been waived.[2]

**B. Whether privilege was waived?**

**1. Inadvertance**

Applying the criteria set forth in Rule 502(b), as well as the related factors employed in this Circuit, LabMD has not met its burden of proving that it is entitled to the protection afforded by the attorney work-product doctrine. LabMD presents no evidence to support its claim that filing the documents with the Court was inadvertent and not the result of a post-filing change in

---

[2] Given this disposition, the Court will save for another day whether a publicly available Order filed on the FTC docket is privileged, as well as whether any privilege attaches to a fact-laden fully executed party Affidavit signed "under penalty of perjury." See e.g. Bell v. Lackawanna County, 892 F. Supp.2d 647, 661-62 (M.D. Pa. 2012), and cases cited therein.

strategy. The documents do not bear a "DRAFT" stamp or notation, and the originally filed RICO Case Statement is a fully executed complete document, accompanied by an appropriate Certificate of Service, bearing an electronic signature. Thus, there is no basis for the Court to weigh the blanket assertion that the originally filed RICO Case Statement is a draft document not intended to be filed on the public docket.

### 2. Reasonableness of Precautions

With regard to precautions taken to prevent inadvertent disclosure, LabMD again presents no evidence as to procedures typically employed by counsel to ensure that drafts are segregated and protected, and that documents filed with the Court are reviewed by the responsible attorney prior to submission. Faced with a similar paltry state of evidence as to protective measures employed by counsel, privilege was deemed waived by Judge Fischer in Wise, supra:

> Defendants have presented little evidence about the precautions taken to prevent the inadvertent disclosure. Mr. Joyal explains that it is the practice of his office to scan all documents received in a case in order to easily attach them to e-mails and court filings. (Docket No. 156, at ¶ 7). Because his usual secretary had been on vacation at the time the inadvertent disclosure were made, he believes that all the inadvertently disclosed documents were e-mailed to Plaintiff's counsel by a substitute secretary. (Docket No. 156, at ¶ 15). Nothing in his affidavit indicates how he supervises his subordinates or whether he performs a final review prior to transmission in order to guard against inadvertent disclosures. During oral argument, Mr. Joyal was unable to speak to the general practice of other attorneys in his law firm or at Travelers Insurance with respect to preventing inadvertent disclosures. (Docket No. 162, at 16). While he represented that in the normal course of events there would be an attorney who would review documents before they were sent to opposing counsel, there was no attorney with knowledge of the case who reviewed the documents in this instance because the disclosure took place during the holidays, when a number of attorneys and staff were out of the office. Id. at 16–17.
>
> An attorney's responsibilities, however, do not take a holiday. Nothing prevented Mr. Joyal from asking another attorney in the office to review what the substitute secretary planned to forward to Plaintiff's counsel and to call him (even on his holiday vacation) in order to properly vet the disclosure before submission to his

9

> opponent. Alternatively, nothing prevented him from seeking an extension until after his holiday vacation at which time he could have personally reviewed the challenged documents.

Wise, 2013 WL 4829227, at *2-3. Here, LabMD presents no evidence to weigh precautionary measures taken, or to determine whether the filing occurred due to an inappropriate delegation to administrative staff or some mishap otherwise within the control of counsel. Therefore, consideration of this factor weighs in favor of finding waiver.

Along with the reasonableness of precautions taken to prevent inadvertent disclosure, the Court also considers the number of documents disclosed. In this case, LabMD filed *one* document with *two* exhibits, a number readily within the ability of counsel to review prior to filing. This is not a situation where a small number of documents are overlooked in the course of a mass document production, entitling counsel to more deference. In Smith v. Allstate Ins. Co., 912 F. Supp. 2d 242, 248 (W.D. Pa. 2012), the Court found an insurer "narrowly satisfied its burden" under Rule 502(b) and did not waive privilege where seven documents containing privileged information were served with more than 1,200 pages of documents in response to Plaintiff's Request for Production of Documents. In such an instance, inadvertence may be understandable given the number of documents to be examined before production. See, e.g., McGreevy v. CSS Industries, Inc., No. 95-CV-8063, 1996 WL 412813 at *2 (E.D. Pa. July 17, 1996)(small number of documents produced weighs in favor of a finding of waiver when assessing care exercised to protect privilege); Advanced Med., Inc. v. Arden Med. Sys., Inc., No. 87-CV-3059, 1988 WL 76128, at *2 (E.D. Pa. July 18, 1988)(in extraordinary situations such as expedited discovery or massive document exchanges, a limited inadvertent disclosure will not necessarily result in a waiver). Accordingly, this factor too weighs in favor of finding waiver.

The Court also considers dispositive the extent of the disclosure, which in this case involved the publication of the document on the docket of this action. In McGreevy, supra, the Court found that the inclusion of a privileged document in a court filing "gives rise to a presumptive right of public access. Thus, regardless of counsel's intent, the filing of the [document] as a judicial document places it in the public domain and is inconsistent with a claim of privilege." McGreevy, 1996 WL 412813, at *3; see also, J.N. v. S. W. Sch. Dist., 14-CV-0974, 2014 WL 4792260, at *11 n.14 (M.D. Pa. Sept. 24, 2014)(filing a document with the court "is inconsistent with a claim of privilege" and generally results in waiver).

The Court in J.N. v. S. W. Sch. Dist., cited with approval United States v. Gangi, 1 F. Supp. 2d 256, (S.D.N.Y. 1998), where the Court found waiver of attorney work product privilege with regard to the unintentional filing of an internal Prosecution Memorandum with the Court in conjunction with an indictment. The Prosecution Memorandum set forth the Government's legal theories, anticipated witness list, alleged victims and cooperating witnesses, and summarized anticipated testimony. Unfortunately, through a series of preventable errors, the Prosecution Memorandum was attached to the Indictment and turned over to the Court for distribution, where it was copied and provided to counsel for two defendants. The Court considered several factors including the failure of counsel to act with due care by labeling the document "confidential," the failure to provide instructions to agents with regard to the sensitive nature of the document and, most damning, the public filing of the document. The Court determined that there had been a waiver of attorney work product protection. Id. at 267. In reaching its decision, the Court found persuasive other instances where the public filing of attorney work product was deemed to waive any protection afforded.

> The case most analogous to this case is Carter v. Gibbs, 909 F.2d 1450 (Fed. Cir. 1990). There, the Government inadvertently appended an internal DOJ

11

> memorandum, containing attorney work product, to the copy of a Government brief that was served on the opposing party in a civil case. The court held that the Government had waived the work product privilege. Adopting a strict approach, the court ruled that it was "irrelevant" that the disclosure was inadvertent, observing that:
>
>> [The] purpose [of the work product privilege] is to prevent the disclosure of an attorney's mental impressions and thought processes either to an opponent in the litigation for which the attorney generated and recorded those impressions, or to a third party with interests not 'common' to those of the party asserting the privilege....
>>
>> ... Voluntary disclosure of attorney work product to an adversary in the litigation for which the attorney produced that information defeats the policy underlying the privilege.... Granting the motion would do no more than seal the bag from which the cat has already escaped.
>
> Id. at 1451 (emphasis added) (citations omitted); accord In re Sealed Case, 877 F.2d 976, 980 (D.C. Cir. 1989) ("[I]f a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels—if not crown jewels. Short of court-compelled disclosure, or other equally extraordinary circumstances, we will not distinguish between various degrees of 'voluntariness' in waivers of ... privilege.") (citation and footnote omitted); FDIC v. Singh, 140 F.R.D. 252, 253 (D.Me.1992) (applying strict accountability rule because "[o]ne cannot 'unring' a bell").

U.S. v. Gangi, at 263-64. See also Vardon Golf Co. v. Karsten Mfg. Corp., 213 F.R.D. 528, 533-34 (N.D. Ill. 2003)(finding waiver where otherwise protected material was disclosed to a party in a public document). Here, the voluntary and complete disclosure of the original RICO statement on the public docket and to at least two Defendants weighs most heavily in favor of finding waiver.

### 3. Delay and measures taken to rectify disclosure

The sole Rule 502(b) factor weighing against a finding of waiver is the absence of substantial delay in attempting to "claw back" the originally filed RICO Case Statement. The

docket reflects that the revised version of the RICO Case Statement was filed on the same day as the original. However, the manner chosen by counsel to rectify the situation cannot be countenanced. It is apparent that an end-run around the Court and opposing counsel was attempted through an *ex parte* call to the Clerk of Court's docketing office by the secretary of LabMD's counsel.[3] The appropriate procedure to seal the originally filed RICO Case Statement would have entailed the filing of a Motion to Withdraw and a Motion to Seal, pursuant to Standing Order 2:05-mc-45 of the United States District Court for the Western District of Pennsylvania, seeking expedited review, so that any claimed privilege could have been addressed in due course with appropriate notice to the Court and to all parties.[4]

---

[3] The local rules require leave of court to seal a publicly filed document and thereby take into consideration that there is a presumption of access to judicial records. See In re Cendant Corp., 260 F.3d 183, 194 (3d Cir. 2001). A party seeking to seal a portion of the judicial record bears the burden of demonstrating that "disclosure will work a clearly defined and serious injury to the party seeking disclosure." Hart v. Tannery, 461 F. App'x 79, 81 (3d Cir. 2012), quoting Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir.1994).

[4] See, e.g., In re Sleepmaster Fin. Corp., 284 B.R. 411, 414 (Bankr. D. Del. 2002), where counsel attempted to correct a filing belatedly discovered to contain incorrect information:

> Counsel contacted the Clerk's Office to try and remedy the Debtors' error. This was inappropriate. The Clerk's Office is not to take directions from counsel.
>
> Further the directions given by counsel in this case were wrong. The Clerk's Office should not have marked the docket entry for that pleading as "Entered in Error." The pleading was not entered on the docket in error; it was properly docketed in this case because it was a pleading filed in this case. A designation of "Entered in Error" is proper only where the pleading was erroneously entered on the docket in the wrong case (because, for example, the case number was erroneous or it was docketed in the main case when it should have been docketed in the adversary) or where the document actually filed is not what the docket reflects, in which case a corrective entry should be noted on the docket.
>
> In this case, however, once the Certificate of No Objection was filed of record by counsel, it could not properly be removed from the file or the docket. The only proper procedure to avoid the effect of that filing was for counsel for the Debtors to file a Motion or Notice withdrawing that pleading.

Under the circumstances presented, it is evident that LabMD has not met its burden under Rule 502(b) to show reasonable precautions, if any, to prevent inadvertent disclosure, or to establish that the filing in fact was inadvertent and not reflective of a late in the day change of strategy. Based on the foregoing, the Court grants the Motion to Modify Docketing of Errata at ECF No. 18 and 19 (ECF No. 23). However, the Court will require that the documents at issue remain sealed from public view until the expiration of the appropriate time for an appeal from this Order to a District Judge. If no appeal of this Order is filed by April 1, 2015, the Clerk will be directed to unseal ECF No. 18 and all exhibits thereto, docket ECF No. 19 as Plaintiff's Amended RICO Case Statement, and unseal ECF Nos. 23 and 24, Defendants Motion and Brief in Support. An appropriate Order follows.

**ORDER**

AND NOW, this 17th day of March 2015, upon consideration of the Motion to Modify Docketing of Errata at ECF 18 and 19 (ECF No. 23), and the briefs filed in support and in opposition thereto, and upon consideration of the Motion for Disclosure of Plaintiff's Original RICO Statement and co-Defendants' Unredacted Motion to Modify" (ECF No. 26) and Plaintiff's response in opposition thereto, IT IS HEREBY ORDERED as follows:

1. Defendants' Motion to Modify Docketing of Errata at ECF 18 and 19 (ECF No. 23) is GRANTED;
2. IT IS FURTHER ORDERED that execution of this Order modifying the docket as set forth below shall be stayed until the expiration of the fourteen-day (14) period permitted under the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72.C.2 of the Local Rules of Court to file an appeal from this Order to the District Judge, and, in the event an

appeal is filed from this Order, this Order shall be stayed until the resolution of such an appeal;

3. IT IS FURTHER ORDERED that in the absence of an appeal filed on or before April 1, 2015, the Clerk shall unseal ECF No. 18 and all exhibits thereto, docket ECF No. 19 as Plaintiff's Amended RICO Case Statement, and unseal ECF Nos. 23 and 24, Defendants Motion and Brief in Support; and

4. IT IS FURTHER ORDERED that the Motion for Disclosure of Plaintiff's Original RICO Statement and co-Defendants' Unredacted Motion to Modify" (ECF No. 26) filed on behalf of Defendant M. Eric Johnson is denied without prejudice subject to the resolution of an appeal of this Order, if any.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record by Notice of Electronic Filing