**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LABMD, INC.,

   Plaintiff,

  v.

TIVERSA HOLDING CORP. f/k/a TIVERSA, INC.; ROBERT J. BOBACK; M. ERIC JOHNSON; and DOES 1-10,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:15-cv-00092-MRH-MPK

**ELECTRONICALLY FILED**

**DEFENDANTS TIVERSA HOLDING CORP. AND ROBERT J. BOBACK'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
<u>PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

FACTS ...........................................................................................................................3

A.    Tiversa and LabMD's Initial Interactions. ..........................................................3

B.    LabMD Confronts Tiversa and Accuses Tiversa Of Wrongful Conduct ............4

C.    LabMD's First Attempt to Sue Tiversa - The 2011 Georgia Complaint. ............5

ARGUMENT ..................................................................................................................7

A.    Plaintiffs' State Law Claims Are Untimely. .......................................................7

B.    The RICO Claims Are Also Untimely. ..............................................................12

C.    Beyond The Statute Of Limitations Issues, Plaintiff's State Law Claims Are Insufficiently Pled and Warrant Dismissal As A Matter of Law. ......................15

      1.    Plaintiff Cannot Allege A Claim For Conversion Because It Was Never Deprived Of Its Use of the 1718 File. ....................................................16

      2.    Plaintiff Fails to Identify Even One Defamatory Statement, and Thus its Defamation Claim Fails. ...................................................................17

      3.    Plaintiff's Tortious Interference Claim Lacks Any Allegation of an Actual Contract and Therefore Fails as a Matter Of Law. ................18

      4.    The Statements Forming the Basis of Plaintiff's Fraud Claim Were Not Material, Nor Made With Actual Knowledge of Their Falsity, and Therefore Plaintiff's Fraud Claim Fails as a Matter of Law. ...............20

      5.    Plaintiff's Negligent Misrepresentation Claim Fails for the Same Reasons its Fraud Claim Fails. .........................................................21

      6.    Plaintiff's Failure to Allege a Common Purpose Defeats The Civil Conspiracy Claim. ........................................................................22

D.    Plaintiff's RICO Claims Suffer From Countless Defects, Warranting Dismissal. ...........23

      1.    Plaintiff Lacks Standing to Assert the § 1962(c) Claim. ........................24

      2.    Plaintiff's Section 1962(c) Fails to Allege an Enterprise or a Pattern of Racketeering Activity ................................................................26

            a.    Plaintiff Fails to Allege the Existence of an Enterprise. ...........................26

            b.    Plaintiff Fails to Allege a Pattern of Racketeering Activity. ...................31

            c.    Plaintiff's RICO Claim Under 18 U.S.C. § 1962(d) Also Fails. ..............34

E.    Plaintiff Has Improperly Alleged Claims For Punitive Damages and Attorneys' Fees. ......................................................................................................35

F.    Amendment of the Complaint Would be Futile. .................................................35

CONCLUSION ...............................................................................................................35

**Cases**

*Adamski v. Allstate Ins. Co.*,
738 A.2d 1033 (Pa. Super. 1999) ........................................................................12

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
483 U.S. 143 (1987) ............................................................................................12

*Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*,
786 F. Supp. 1223 (W.D. Pa. 1992) ....................................................................27

*Ammlung v. City of Chester*,
494 F.2d 811 (3d. Cir. 1974) ................................................................................7

*Amos v. Franklin Fin'l Servs. Corp.*,
2011 WL 5903875 (M.D. Pa. Nov. 22, 2011), *aff'd* 509 Fed. Appx. 165 (3d
Cir. Jan. 11, 2013) ..............................................................................................28

*Annulli v. Panikkar*,
200 F.3d 189 (3d Cir.1999) ................................................................................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................16, 23

*Baglio v. Baska*,
940 F. Supp. 819 (W.D. Pa. 1996), *aff'd*, 116 F.3d 467 (3d Cir. 1997) ...........24, 30

*Beauty Time, Inc. v. Vu Skins Sys., Inc.*,
118 F.3d 140 (3d Cir. 1997) ...........................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................3, 15, 16

*Bohus v. Beloff*,
950 F.2d 919 (3d Cir. 1991) ...............................................................................10

*Bonavitacola Electric Contractor, Inc. v. Boro Developers, Inc.*,
87 Fed. Appx. 227 (3d Cir. 2003) .......................................................................26

*Boyle v. United States*,
556 U.S. 938 (2009) ............................................................................................27

*Bradley v. Conner*,
2007 WL 4241846 (W.D. Pa. Nov. 29, 2007) .......................................................8

*Bridge v. Phx. Bond & Indem. Co.*,
    553 U.S. 639 (2008)................................................................25

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
    140 F.3d 494 (3d Cir. 1998)........................................................25

*Brown v. DaVita Inc.*,
    2011 WL 5523823 (E.D. Pa. Nov. 14, 2011) ...........................................9

*In re Brownsville Property Corp., Inc.*,
    2013 WL 4010308 (Bankr. W.D. Pa. Aug. 1, 2013) ...................................22

*Burnside v. Abbott Laboratories*,
    505 A.2d 973 (Pa. Super. 1985).....................................................23

*Cardio-Medical Assocs. v. Crozer-Chester Med. Ctr.*,
    721 F.2d 68 (3d Cir. 1983)..........................................................8

*Ciccarelli v. Carey Canadian Mines, Ltd.*,
    757 F.2d 548 (3d Cir. 1985)........................................................11

*Colonial Assurance Co. v. Mercantile & General Reinsurance Co.*,
    297 F. Supp. 2d 764 (E.D. Pa. 2010), *aff'd*, 130 Fed. Appx. 607 (3d Cir. 2005).....................9

*Cooper v. Broadspire Servs., Inc.*,
    2005 WL 1712390 (E.D. Pa. July 20, 2005)..........................................31

*Del. Cnty. Chamber of Commerce v. USI Ins. Servs.*,
    2013 WL 6847001 (E.D. Pa. Dec. 30, 2013)...........................................7

*DelRio-Mocci v. Connolly Prop. Inc.*,
    672 F.3d 241 (3d Cir. 2012)........................................................25

*Easton v. Bristol-Myers Squibb Co.*,
    289 F. Supp. 2d 604 (E.D. Pa. 2003) ...............................................9

*Evans v. Philadelphia Newspapers, Inc.*,
    601 A.2d 330 (Pa. Super. 1991).....................................................7

*F.P. Woll & Co. v. Fifth & Mitchell St. Corp.*,
    1999 U.S. Dist. LEXIS 894 (E.D. Pa. Feb. 4, 1999) .................................12

*Forbes v. Eagleson*,
    228 F.3d 471 (3d Cir. 2000), *cert. denied*, 533 U.S. 921 (2001)..............12, 14, 15

*FTC v. LabMD*,
    No. 1:12-cv-3005-WSD (N.D. Ga. Nov. 26, 2012)....................................4, 13

*Gabelli v. SEC,*
    133 S. Ct. 1216 (2013)...........................................................................................14

*Gagliardi v. Equifax Info. Servs., LLC,*
    2011 WL 337331 (W.D. Pa. Feb. 03, 2011)......................................................25

*Gibbs v. Ernst,*
    647 A.2d 882 (1994)........................................................................................20, 22

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP,*
    615 F.3d 159 (3d Cir. 2010).................................................................................35

*Guaranty Towers, LLC v. Cellco Partn.,*
    2007 WL 2617651 (M.D. Pa. Sept. 6, 2007)......................................................18

*Harris v. New York State Dep't of Health,*
    202 F. Supp. 2d 143 (S.D.N.Y. 2002)....................................................................3

*Hindes v. Castle,*
    937 F.2d 868 (3d Cir. 1991).................................................................................32

*Holewinski v. Children's Hosp. of Pittsburgh,*
    649 A.2d 712 (Pa. Super. 1994)...........................................................................17

*Hull v. Kyler,*
    190 F.3d 88 (3d Cir. 1999).....................................................................................8

*Hvostal v. American Idea Mgmt. Corp.,*
    1992 WL 133908 (W.D. Pa. Mar. 23, 1992)......................................................34

*In re Ins. Brokerage Antitrust Litig.,*
    618 F.3d 300 (3d Cir. 2010)...........................................................................27, 29

*Jackson v. Broad. Music, Inc.,*
    2006 WL 250524 (S.D.N.Y. Feb. 1, 2006)............................................................3

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,*
    46 F.3d 258 (3d Cir. 1995)...................................................................................30

*Kehr Packages, Inc. v. Fidelcor, Inc.,*
    926 F.2d 1406 (3d Cir. 1991)..........................................................................31, 33

*Klehr v. A. O. Smith Corp.,*
    521 U.S. 179 (1997)..............................................................................................14

*LabMD, Inc. v. Tiversa, Inc.,*
    509 Fed. Appx. 842, 2013 WL 425983 (11th Cir. Feb. 5, 2013)......................6, 8

*Lightning Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993)..................................................................34

*Lorenz v. CSX Corp.*,
1 F.3d 1406 (3d Cir. 1993)..............................................................27, 29

*Marci's Fun Food, LLC v. Shearer's Foods, Inc.*,
2010 WL 3982290 (W.D. Pa. Oct. 8, 2010) ...................................19

*Marshall-Silver Constr. Co. v. Mendel*,
835 F.2d 63 (3d Cir. 1987) ..............................................................31

*Marshall-Silver Constr. Co. v. Mendel*,
894 F.2d 593 (3d Cir. 1990)....................................................27, 32, 34

*McCullough v. Zimmer, Inc.*,
382 Fed. Appx. 225 (3d Cir. 2010).................................................26

*McKeeman v. Corestates Bank, N.A.*,
751 A.2d 655 (Pa. Super. 2000).....................................................16

*Meade v. Meade*,
1991 WL 243539 (E.D. Pa. Nov. 18, 1991) ..................................33

*Merrill Iron & Steel, Inc. v. Blaine Constr. Corp.*,
2014 U.S. Dist. LEXIS 89932 (W.D. Pa. July 2, 2014) ................22

*Munno v. Town of Orangetown*,
391 F. Supp. 2d 263 (S.D.N.Y. 2005)..............................................3

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002).......................................................3, 35

*Nix v. Temple Univ.*,
596 A.2d 1132 (Pa. Super. 1991)....................................................23

*Norriton E. Realty Corp. v. Cent.–Penn Nat. Bank*,
254 A.2d 637 (Pa. 1969).............................................................16, 17

*Onconome, Inc. v. Univ. of Pittsburgh*,
2009 WL 5064481 (W.D. Pa. Dec. 16, 2009)................................10

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
38 F.3d 1380 (3d Cir. 1994)......................................................3, 7, 13

*Pelagatti v. Cohen*,
536 A.2d 1337 (Pa. Super. 1987)...............................................19, 23

*Prudential Ins. Co. of Am. v. United States Gypsum Co.*,
   359 F.3d 226 (3d Cir. 2004)............................................................12, 13

*PTSI, Inc. v. Haley*,
   71 A. 3d 304 (Pa. Super. 2013)........................................................16, 17

*Rankin v. Smithburger*,
   2013 WL 3550894 (W.D. Pa. July 11, 2013) ...................................12

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)............................................................................29

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985)...............................................................24, 26, 33

*Shearin v. E.F. Hutton Group, Inc.*,
   885 F.2d 1162 (3d Cir. 1989).............................................................34

*Sheet Metal Workers Int'l Assn., Local 19 v. 2300 Group, Inc.*,
   949 F.2d 1274 (3d Cir. 1991).............................................................11

*Silverman v. Bell Savings & Loan Ass'n.*,
   533 A.2d 110 (Pa. Super. 1987)........................................................20

*Small v. Juniata Coll.*,
   682 A.2d 350 (Pa. Super. 1996)........................................................19

*Smith v. IMG Worldwide, Inc.*,
   437 F. Supp. 2d 297 (E.D. Pa. 2006) .................................................7

*Strickland v. Univ. of Scranton*,
   700 A.2d 979 (Pa. Super. 1997).................................................19, 22

*Tabas v. Tabas*,
   47 F.3d 1280 (3d Cir. 1995)...............................................................32

*Tennis v. Ford Motor Co.*,
   730 F. Supp. 2d 437 (W.D. Pa. 2010)...............................................35

*Thomas v. Seaman*,
   304 A.2d 134 (Pa. 1973) ....................................................................20

*Tricome v. eBay, Inc.*,
   2014 WL 5410206 (E.D. Pa. Oct. 23, 2014).......................................8

*United States v. Console*,
   13 F.3d 641 (3d Cir. 1993), *aff'd*, 116 F.3d 467 (3d Cir. 1997)............30

*United States v. Riccobene,*
709 F.2d 214 (3d Cir. 1983)......................................................................27

*United States v. Turkette,*
452 U.S. 576 (1981)................................................................................30

*Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.,*
996 F.2d 1534 (3d Cir. 1993)..............................................................28, 29

*Vavro v. Albers,*
2006 WL 2547350 (W.D. Pa. Aug. 31, 2006), *aff'd,* 254 Fed. Appx. 134 (3d
Cir. 2007).............................................................................................16

*Vurimindi v. Fuqua Sch. of Bus.,*
435 Fed. Appx. 129 (3d Cir. 2011)...........................................................8

*Waris v. Mackey,*
2009 WL 4884204 (E.D. Pa. Dec. 14, 2009)..............................................24

*Weaver v. Lancaster Newspapers, Inc.,*
926 A.2d 899 (Pa. 2007).........................................................................17

*Wolk v. Olson,*
730 F. Supp. 2d 376 (E.D. Pa. 2010)..........................................................9

*Zax Environmental, Inc. v. Plant Const. Co., LLC,*
2008 WL 2509759 (W.D. Pa. June 18, 2008)..............................................33

**Statutes**

15 U.S.C. § 57b-1 ......................................................................................20

18 U.S.C. § 1962(c) ............................................................................. *passim*

18 U.S.C. § 1962(d) ..................................................................12, 23, 34, 35

18 U.S.C. § 1964(c) ....................................................................................35

42 Pa. Cons. Stat. Ann. § 5523(1).................................................................7

42 Pa. Cons. Stat. Ann. § 5524 ....................................................................7

42 Pa. Cons. Stat. Ann. § 8343(a).................................................................17

**Rules**

Fed. R. Civ. P. 9(b) .....................................................................................20

Fed. R. Civ. P. 11 ........................................................................................15

Fed. R. Civ. P. 12(b)(6)..................................................................................................3, 7, 15

**Other Authorities**

Black's Law Dictionary 457 (6th ed. 1991) .................................................................11

Restatement (2d) of Torts § 222A (1965).....................................................................17

This is Plaintiff LabMD, Inc.'s ("LabMD") long delayed second attempt to bring a meritless lawsuit against Defendants. LabMD's first attempt occurred over three (3) years ago when LabMD filed a complaint in Georgia (the "Georgia Complaint") relating to events that began in May 2008. The gravamen of the Georgia Complaint was that in May 2008 Tiversa allegedly stole a patient records file from LabMD, referred to as the "1718 File," and then used that file to purportedly extort LabMD. The Georgia Complaint further outlined an alleged "pattern and practice" related to Defendants' conduct, including searching for and downloading information from third parties. The action now before this Court is more of the same. For example, the Georgia Complaint alleged a claim for conversion. Now, more than seven (7) years after the purported conversion, and more than three years after the Georgia Complaint, Plaintiff alleges the same herein. That claim – like the others – is time-barred. Notwithstanding the recycled claims, Plaintiff now tries to run from the Georgia Complaint and recast the allegations using purportedly new and unknown allegations. The reason for this is obvious – Plaintiff recognizes it has fatal statute of limitations issues with its claims and does everything possible to overcome those issues. Plaintiff fails. As the totality of the allegations demonstrate, Plaintiff's Complaint is facially deficient and warrants dismissal with prejudice.

In addition to the untimeliness of the lawsuit, the Complaint's claims also fail because they are not adequately pled. Specifically, Plaintiff has alleged several state law tort claims which are missing critical elements necessary to be viable causes of action. *First*, Plaintiff alleges that Tiversa is liable for conversion (Count I) because Tiversa "stole" the 1718 file. This claim fails because LabMD at all times had possession and use of the file. *Second*, Plaintiff alleges that Tiversa is liable for defamation (Count II). This claim fails because Plaintiff does not identify any specific statement it alleges is defamatory, that Tiversa published the mystery

statement, or the purported defamatory meaning of the statement. *Third,* Plaintiff alleges that Defendants tortuously interfered with its business relations (Count III). This claim fails because Plaintiff has not alleged any contractual relationship which was damaged as a result of Tiversa's conduct or that Tiversa even knew of or contacted Plaintiff's purported contractual relationships. *Fourth,* Plaintiff alleges claims for fraud (Count IV) and negligent misrepresentation (Count V). Both of these claims fail because they are predicated on Tiversa's purported statement in May 2008 that Tiversa had seen individuals "downloading" the 1718 File. Plaintiff's "gotcha" allegation is that Tiversa lied and instead now admits that individuals were "searching" for the file. This verb change, however, is irrelevant because Plaintiff fails to allege any reliance whatsoever on Tiversa's purported statements or the materiality of Tiversa's purported "lie." While Plaintiff claims that it spent thousands of dollars seeking to detect and remedy the data breaches allegedly manufactured by Tiversa, Plaintiff does not allege that it would not have taken those actions if Tiversa had used the word "searching" instead of "downloading."[1]

*Lastly*, Plaintiff's Racketeer Influenced and Corrupt Organizations Act ("RICO") claims (Counts VII and VIII) fail because they do not meet the heightened pleading standards necessary to assert RICO claims. Indeed, Plaintiff's RICO claims suffer from a multitude of failures, including that Tiversa was not the cause of its alleged damages. Rather, Plaintiff alleges that its damages arise as a direct result of the Federal Trade Commission's ("FTC") administrative action against it, thereby defeating any standing to assert a RICO claim. Consequently, because Plaintiff has failed to allege any damages that result from Defendant's conduct, Plaintiff lacks standing to assert a claim against Tiversa. Similarly, Plaintiff has failed to allege the existence of an enterprise or a pattern of racketeering behavior.

---

[1] The claim for Civil Conspiracy (Count VI) fails because no underlying tort survives the motion to dismiss.

As a result of Plaintiff's deficient pleading the Court is left with numerous grounds upon which to dismiss the complaint and end this baseless, untimely litigation.

## FACTS[2]

### A.    Tiversa and LabMD's Initial Interactions.

Mr. Boback is the CEO of Tiversa, a "peer-to-peer cyber-intelligence" company. Complaint ¶¶ 2, 14.  In 2008, in the course of its business, Tiversa "obtained a 1,718 page file from LabMD containing sensitive and confidential patient data (the '1718 File') from a peer-to-peer network…" *Id.*, ¶ 20.  The 1718 File was available to Tiversa and others only because a LabMD computer had downloaded LimeWire, a P2P sharing application, no later than 2006.[3]

Shortly after finding the 1718 File, in May 2008, Tiversa employees contacted LabMD to alert it to the publicly available nature of the 1718 File.  Complaint, ¶ 20.  LabMD and Tiversa exchanged communications regarding Tiversa's ability to assist LabMD in remediating its breach of confidential information, but ultimately the parties did not engage in a business relationship.  *Id.*  Neither Tiversa nor Mr. Boback had any contact with LabMD subsequent to 2008.  *See generally* Complaint.  LabMD suspected as early as May 2008 that Tiversa was lying about the breach.  RICO Case Statement, p. 32.

---

[2] As they must, Defendants Tiversa and Mr. Boback treat the allegations of the Complaint as true for the purposes of their Motion to Dismiss (the "Motion").  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

[3] *See* Joint Stipulations of Fact, Law, and Authenticity, available at http://www.ftc.gov/enforcement/cases-proceedings/102-3099/labmd-inc-matter, attached hereto as **Exhibit A**.  The Court may take judicial notice of public record and other matters including court orders and exhibits attached to a complaint when adjudicating a motion to dismiss under Rule 12(b)(6).  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994).  *See also  In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002); *Jackson v. Broad. Music, Inc.*, 2006 WL 250524, at *7 (S.D.N.Y. Feb. 1, 2006) ("[T]he court may take judicial notice of public records and of 'admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings'") (quoting *Harris v. New York State Dep't of Health*, 202 F. Supp. 2d 143, 173 (S.D.N.Y. 2002) and citing *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005)).  Tiversa and Mr. Boback have also attached Exhibits B and C, which the Court may take judicial notice of for the same reasons cited herein.

Aware of breaches of confidential information like those that occurred at LabMD, and Tiversa's knowledge of the same, in 2009 the FTC approached and met with Tiversa regarding companies which had data breaches. Complaint, ¶ 23. Subsequent to these meetings, an entity called the Privacy Institute provided the FTC with information regarding roughly 100 companies which had suffered data breaches. *Id.* In January 2010, the FTC began investigating LabMD and notified LabMD of that investigation. *Id.*, ¶ 25; *see also FTC v. LabMD*, No. 1:12-cv-3005-WSD (N.D. Ga. Nov. 26, 2012), slip op. at 2-3.

**B.    LabMD Confronts Tiversa and Accuses Tiversa Of Wrongful Conduct**

Upon Tiversa's May 2008 contact with LabMD, LabMD immediately had suspicions about Tiversa. RICO Case Statement, p. 32. LabMD made those suspicions known to Tiversa in 2008 when it directed Tiversa to have communications regarding the 1718 File solely with its outside counsel. *See* the Georgia Complaint, attached hereto as **Exhibit B**, ¶ 95. LabMD acted on those suspicions after the FTC initiated its investigation in January 2010.

On September 30, 2010, LabMD's General Counsel sent a letter to Tiversa setting forth LabMD's purported knowledge of the facts that form the basis of this Complaint. *See* Georgia Complaint, Exhibit N (reflecting a September 30, 2010 Letter attached hereto as **Exhibit C**). Specifically, the September 30, 2010 letter set forth significant information regarding LabMD's knowledge of Tiversa and the purported claims LabMD had against Tiversa, including that LabMD was "conducting an investigation" into the "abuse and misappropriation of LabMD's property that may have involved any number of legal infractions, possibly including but not limited to, theft, conversion, extortion, trespass, privacy infringement, copyright infringement, computer crime, and misappropriation of trade secrets." *Id.* LabMD further admits in the September 30, 2010 letter that it was aware that the 1718 File was in Tiversa's, Dartmouth University's, and the FTC's possession. *Id.* LabMD declared that it had not "authorized or

granted permission to anyone to take possession of the [1718 File]." *Id.* LabMD also asked many questions of Tiversa, most of which now form the basis of the pending complaint. For example, LabMD asked several questions which highlight LabMD's suspicions and notice of potential claims, including: whether Tiversa has a financial or business relationship with the FTC; for Tiversa to identify all communications with the FTC and; Tiversa's justification for accessing, taking, and examining LabMD's property. *Id.* Ultimately, LabMD concludes the letter by requesting a response within 30 days, declaring: "LabMD takes a very dim view of this abuse of its property. This is a serious investigation that may involve many stages." LabMD also copied its outside counsel on the September 30, 2010 letter. *Id.*

**C.** **LabMD's First Attempt to Sue Tiversa - The 2011 Georgia Complaint.**

Tiversa never responded to the September 30, 2010 letter. *See generally,* Complaint. On October 19, 2011 – more than 3 years and 3 months prior to the filing of the Complaint – LabMD carried out its threat to sue Tiversa and filed suit against Tiversa, the Trustees of Dartmouth College ("Dartmouth") and Mr. Johnson in the Superior Court of Fulton County, Georgia. *See* the Georgia Complaint. The Georgia Complaint, ultimately removed to Federal Court, detailed the initial communications between Tiversa and LabMD from 2008 in depth, and alleged that Tiversa, Dartmouth, and Mr. Johnson "took personal property belonging to LabMD" as part of their "pattern and practices." *Id.*, ¶¶ 15, 72-95. The Georgia Complaint further alleged that in April 2009 Defendant Johnson, in concert with Defendants Tiversa and Dartmouth, published an article entitled *Data Hemorrhages in the Health-Care Sector*. *Id.*, ¶ 37. Further, the Georgia Complaint claims that the article contained a redacted copy of the 1718 File and LabMD admits that the 1718 File was "created" and "stored" on a LabMD computer and was the personal property of LabMD. *Id.*, ¶¶ 46-50.

The Georgia Complaint goes on to detail LabMD's purported knowledge of Tiversa's alleged wrongdoing as LabMD did in the September 30, 2010 letter. Specifically, LabMD alleges that it "directed Defendant Tiversa to LabMD's attorneys," *id.,* ¶ 95, and also cites to the September 30, 2010 letter wherein LabMD accused Tiversa of multiple crimes. *Id.,* ¶ 96.

Based on these allegations, the Georgia Complaint asserted claims against Tiversa and Mr. Johnson, claiming that Tiversa and Mr. Johnson, "intentionally accesse[d] LabMD's computers and networks and downloaded the 1,718 File without authorization" and that Tiversa did so "with the intent to extort money from LabMD." *See id.,* ¶¶ 106, 108, 112. The Georgia Complaint further alleged that "Tiversa downloaded the 1,718 File from LabMD's computer in order to facilitate the extortion of money and/or items of value from LabMD." *Id.* ¶ 116. The Georgia Complaint also claimed that Tiversa and Mr. Johnson were subject to liability for "Computer Crimes" pursuant to O.C.G.A. 16-9-93, *id.,* ¶¶ 119-137, and alleged that "Tiversa [and Mr. Johnson] used a computer network to search for, download, open and disseminate the 1,718 File," *id.,* ¶¶ 122, 129, as well as "took LabMD's personal property," *id.,* ¶¶ 124, 131, and "committed computer theft." *Id.,* ¶ 135. Count III of the Georgia Complaint was for conversion, *see id.,* pp. 29-31, alleging "[t]he appropriation of the 1,718 File by Defendant Tiversa [and Johnson and Dartmouth]." *See id.,* ¶¶ 142, 145, 148. The United States District Court for the Northern District of Georgia ultimately dismissed the Georgia Complaint, without prejudice, holding that the court lacked personal jurisdiction over Tiversa, and that dismissal was upheld on appeal. *See LabMD, Inc. v. Tiversa, Inc.*, 509 Fed. Appx. 842 (Table), 2013 WL 425983 (11th Cir. Feb. 5, 2013) (the court lacked personal jurisdiction over Tiversa).

<u>**ARGUMENT**</u>

**A.**     <u>**Plaintiffs' State Law Claims Are Untimely.**</u>

Plaintiff alleges that Tiversa is liable for conversion (Count I), defamation *per se* (Count II), tortious interference (Count III), fraud (Count IV), negligent misrepresentation (Count V), and civil conspiracy (Count VI) (collectively the "State Law Claims").   In Pennsylvania, defamation and tortious interference claims are subject to a one-year statute of limitations.   42 Pa. Cons. Stat. Ann. § 5523(1); *Smith v. IMG Worldwide, Inc.*, 437 F. Supp. 2d 297, 304 (E.D. Pa. 2006) (defamation); *Evans v. Philadelphia Newspapers, Inc.*, 601 A.2d 330, 334-35 (Pa. Super. 1991) (tortious interference with prospective contract claim).   Claims for conversion, fraud, and negligent misrepresentation are subject to a two-year statute of limitations.   42 Pa. C.S. § 5524.   Claims for civil conspiracy borrow the statute of limitations from their underlying wrongs.   *See Ammlung v. City of Chester*, 494 F.2d 811, 814-815 (3d. Cir. 1974).   Under Rule 12(b)(6), a court may dismiss an action if the complaint shows facial noncompliance with the statute of limitations.   *Oshiver*, 38 F.3d at 1384 n. 1.

Each of these claims requires independent review to determine when the statute of limitations began to run.   Undertaking that review exposes the Complaint's facial noncompliance with the statute of limitations, warranting dismissal.

**Conversion.**   Plaintiff's conversion claim is based on Tiversa "unlawfully convert[ing]" the 1718 File.   Complaint, ¶ 39.   The two-year statutory period for conversion begins to run when the plaintiff first becomes aware of the alleged wrongdoing.   *Del. Cnty. Chamber of Commerce v. USI Ins. Servs.*, 2013 WL 6847001, at *11 (E.D. Pa. Dec. 30, 2013) (noting "Pennsylvania courts have held that claims for conversion … accrue when a plaintiff first becomes aware of the defendant's alleged wrongdoing").   In this case, LabMD learned of the alleged wrongdoing in May 2008 when Tiversa "took" the 1718 File, Complaint, ¶ 20, and

Tiversa informed LabMD that it had the 1718 File. *Id*. LabMD immediately harbored suspicions regarding Tiversa's conduct. RICO Case Statement, p. 32. Further highlighting Plaintiff's facial noncompliance with the statute of limitations, on September 30, 2010, LabMD actually accuses Tiversa of "conversion" evidencing its knowledge of the purported wrongdoing. *See* **Exhibit C**. Accordingly, there are multiple allegations from which this Court can determine that the conversion claim is untimely:

- May 2008 – LabMD knew Tiversa had the 1718 file and at that time harbored suspicions regarding Tiversa.

- May 2008 – LabMD directed Tiversa to LabMD's outside counsel.

- September 30, 2010 – LabMD sent Tiversa a letter accusing Tiversa of conversion.

- October 19, 2011 – LabMD filed the Georgia Complaint alleging conversion.

Two (2) years from each of the above dates has long since passed and the claim is now untimely.[4]

**Defamation.** Plaintiff vaguely alleges that Tiversa "published false and defamatory statements." Complaint, ¶ 36. Again, this conclusory allegation fails to identify *when* the allegedly defamatory statements were published, or even what was said that is defamatory. The only reference in the Complaint to any publication whatsoever is the so-called Johnson Paper, which was published in April 2009. *Id*., ¶ 28. "'Under Pennsylvania law, a cause of action for defamation accrues on the date of publication of the defamatory statements.'" *Bradley v.*

---

[4] Notably, a "statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice," as "the original complaint is treated as if it never existed." *Cardio-Medical Assocs. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 77 (3d Cir. 1983). *See also Hull v. Kyler*, 190 F.3d 88, 103 (3d Cir. 1999)("[W]hen a complaint … is dismissed without prejudice, that complaint or petition is treated as if it never existed" and the statute of limitations is not tolled); *Tricome v. eBay, Inc.*, 2014 WL 5410206, at *2 (E.D. Pa. Oct. 23, 2014) (dismissal without prejudice of earlier lawsuit does not save new lawsuit from being time-barred). The Georgia Complaint was dismissed for lack of personal jurisdiction, *see LabMD, Inc. v. Tiversa, Inc.*, 509 Fed.Appx. 842 (Table) (11th Cir. Feb. 5, 2013), meaning it was done without prejudice. *See Vurimindi v. Fuqua Sch. of Bus.*, 435 Fed. Appx. 129, 131 (3d Cir. 2011) (noting district court dismissal of claims without prejudice "so as not to preclude their refiling in a court of competent jurisdiction").

*Conner*, 2007 WL 4241846, at *3 (W.D. Pa. Nov. 29, 2007) (quoting *Easton v. Bristol-Myers Squibb Co.*, 289 F. Supp. 2d 604, 613 (E.D. Pa. 2003)).  Here, Plaintiff alleges that the Johnson paper was published in April 2009, Complaint, ¶ 28, and that as late as September 30, 2010 Plaintiff was aware that the article was published.  *See* **Exhibit C**.  As a result, there is simply no factual scenario that allows plaintiff to bring its untimely defamation claim.  *Brown v. DaVita Inc.*, 2011 WL 5523823, at *4 (E.D. Pa. Nov. 14, 2011) ("courts decline to apply the discovery rule when the plaintiff . . . knew that the statement had been published, or could have learned of the statement's publication with due diligence").  *See also Wolk v. Olson*, 730 F. Supp. 2d 376, 378-79 (E.D. Pa. 2010) (declining to invoke any equitable tolling where the defamatory statement was "disseminated through . . . a website, and received by tens of thousands of readers").  Accordingly, because the Johnson Paper was published and also placed on a website, Plaintiff's claim is untimely.  *See* Georgia Complaint, ¶ 103 (stating that as of October 13, 2011, a link to the Johnson Paper appeared on the internet).  At best, Plaintiff had until October 2012 to assert its claim for defamation.

**Tortious Interference with Business Relations.**  Plaintiff next alleges that Tiversa tortuously interfered with its business by "engaging in the above described misconduct." Complaint, ¶ 49.  For a claim of intentional interference with business relations the statute of limitations begins to run "when the cause of action accrues." *Colonial Assurance Co. v. Mercantile & General Reinsurance Co.*, 297 F. Supp. 2d 764, 770 (E.D. Pa. 2010), *aff'd*, 130 Fed. Appx. 607 (3d Cir. 2005).  Accrual occurs "upon discovery of the allegedly interfering acts or when the allegedly interfering acts should have been discovered with reasonable diligence." *Id*.  Although Plaintiff does not delineate which alleged "misconduct" or "interfering acts" constituted tortious interference, the alleged misconduct includes: the "taking" of the 1718 File

which occurred in 2008, Complaint, ¶ 20; "feeding" Plaintiff to Mr. Johnson for an upcoming research report which occurred in 2008, *id.*, ¶ 21; providing the 1718 File to the FTC some time before January 2010, *id.*, ¶ 22; making alleged misrepresentations to the United States House of Representatives in 2009, *id.*, ¶ 24; or the publication of the Johnson Paper which occurred in 2009. *Id.*, ¶ 28. Regardless of the unidentified interfering act upon which Plaintiff bases its tortious interference claim, that claim is clearly time-barred as the last action which could possibly be construed as "misconduct" occurred in 2010 when the FTC initiated its investigation of LabMD. Accordingly, at the latest Plaintiff was required to assert its claim in 2012. Plaintiff did not, making the claim untimely.

**Fraud and Negligent Misrepresentation.** These claims can be analyzed together as the determinative factor of when the claims begin to accrue is Plaintiff's use of diligence to acquaint itself with the facts necessary to pursue its right of recovery. Specifically, fraud claims accrue when the "plaintiff learns or reasonably should have learned through the exercise of due diligence of the existence of the claim." *Onconome, Inc. v. Univ. of Pittsburgh*, 2009 WL 5064481, at *13 (W.D. Pa. Dec. 16, 2009) (quoting *Beauty Time, Inc. v. Vu Skins Sys., Inc.*, 118 F.3d 140, 148 (3d Cir. 1997)). The court may decide this inquiry on its own and, when doing so, focuses on the diligence exerted by plaintiff. *Id.* at *14. "All that is required to trigger the running of the statute of limitations is sufficient information to 'awaken inquiry and direct diligence in the channel in which it would be successful.'" *Id.* (quoting *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991)). Negligent misrepresentation claims accrue when the plaintiff should have known of his injury. *Id.* In considering when the statutory period begins to run, the plaintiff has a duty to "use all reasonable diligence to inform himself … of the facts … upon

which the right of recovery is based and to institute suit within the prescribed … period."
*Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985).

Here, Plaintiff alleges that Tiversa is liable for fraud and negligent misrepresentation because Tiversa falsely told LabMD in May 2008 that Tiversa "continued to see individuals… downloading copies of the 1718 File." Complaint, ¶ 55. Plaintiff claims that based on this statement it suffered damages as early as 2008 because it "spent thousands of dollars, and devoted hundreds of man hours, to seek to detect and remedy the phantom data breaches." *Id*., ¶ 59. As discussed above, however, Plaintiff sent a letter to Tiversa on September 30, 2010 that identified LabMD's concerns regarding "any number of legal infractions." *See* **Exhibit C**. Further, Plaintiff filed the Georgia Complaint again asserting the allegations contained in the September 30, 2010 letter, including alleging that "Tiversa downloaded the 1718 File from LabMD's computer in order to facilitate the extortion of money and/or items of value from LabMD." Georgia Complaint, ¶ 116. Based on these allegations, LabMD harbored suspicions with respect to all of Tiversa's conduct as late as September 2010 – including the statements Tiversa made to LabMD in 2008 – yet waited until 2015 to assert its claims. Consequently, not only has the statute of limitations passed, but it is also clear that LabMD failed to exercise reasonable diligence to ascertain the existence and cause of an injury. *Beauty Time, Inc. v. VU Skin Sys. Inc.*, 118 F.3d 140 (3d Cir. 1997) ("Reasonable diligence has been defined as follows: 'A fair, proper and due degree of care and acting, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity.'") (quoting BLACK'S LAW DICTIONARY 457 (6th ed. 1991)); *Sheet Metal Workers Int'l Assn., Local 19 v. 2300 Group, Inc.*, 949 F.2d 1274, 1282 (3d Cir. 1991) ("Plaintiffs need not know that they have a cause of action or that the injury was caused by

another party's wrongful conduct, for once [a plaintiff] possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim.").

Here, the claim accrued when Plaintiff was damaged (May 2008), not when the precise amount or extent of the damage was realized. *See F.P. Woll & Co. v. Fifth & Mitchell St. Corp.*, 1999 U.S. Dist. LEXIS 894, at *29 (E.D. Pa. Feb. 4, 1999) (cause of action accrued when plaintiff realized property had been contaminated, not when he later sold property); *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042 (Pa. Super. 1999) ("Our Court has repeatedly held that, for purposes of the statute of limitations, a claim accrues when a plaintiff is harmed and not when the precise amount or extent of damages is determined"). Moreover, Plaintiff knew about the purported damages and the conduct that purportedly caused the same no later than September 2010. Therefore, the claims are untimely because Plaintiff waited until 2015 to pursue them.[5]

## B.     The RICO Claims Are Also Untimely.

Plaintiff's Complaint also asserts theories of liability based on alleged violations of 18 U.S.C. §§ 1962(c) and (d). RICO claims are subject to a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987). The Third Circuit has adopted the "injury discovery rule" as the governing standard for determining statute of limitations issues in civil RICO claims. *Forbes v. Eagleson*, 228 F.3d 471, 484 (3d Cir. 2000), *cert. denied*, 533 U.S. 921 (2001). This approach requires the court to "determine when the plaintiffs knew or should have known of their injury." *Prudential Ins. Co. of Am. v. United States Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004) (quoting *Forbes*, 228 F.3d at 484). "In

_____

[5] Plaintiff has also alleged a claim for civil conspiracy. "In Pennsylvania, civil conspiracy claims borrow the statute of limitations of their underlying wrongs." *Rankin v. Smithburger*, 2013 WL 3550894, at *12 (W.D. Pa. July 11, 2013). As a result, pleading an underlying tort is essential for a civil conspiracy claim, for – at the very least – the duration of the statute of limitations and date of accrual cannot be determined without one. Here, given that all the State Tort Claims are untimely, the civil conspiracy claim also fails.

addition to the injury, the plaintiffs must also have known or should have known of the source of their injury." *Id*. Nothing more is required to trigger the running of the four-year limitations period governing a civil RICO claim. *Id*. Moreover, the accrual begins upon a plaintiff's "awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." *Oshiver*, 38 F.3d at 1386. Based on this standard, Plaintiff's RICO claims are time-barred.

**Accrual of Damages.** First, Plaintiff alleges that part of the damage suffered as a result of the RICO conduct includes costs incurred attempting to resolve the purported security breach and to comply with the investigations and demands, which LabMD alleges Tiversa precipitated. *See* RICO Case Statement, p. 28. Those purported damages occurred in May 2008 when LabMD accused Tiversa of stealing its file and in January 2010. In addition, Plaintiff refers vaguely to "investigations and demands" which presumably relates to the FTC's January 2010 investigation of LabMD. *See FTC v. LabMD*, No. 1:12-cv-3005-WSD (N.D. Ga. Nov. 26, 2012) slip op. at 2-3.

LabMD further confirms the publically available nature of the information it uses to allege RICO violations was all available at the time the FTC commenced its investigation of LabMD in January 2010, as at that point LabMD believed and knew the following: LabMD suspected as early as May 2008 that Tiversa was lying about the source of the 1718 File, RICO Statement, p. 32; Tiversa, according to LabMD, committed theft and extortion, September 30, 2010 letter; the Johnson Paper was published, Complaint ¶ 28; the FTC commenced an investigation into LabMD in January 2010; and LabMD reviewed an article dated February 23, 2010 wherein the FTC, Defendant Eric Johnson, and Tiversa are all quoted relating to the FTC's investigations, which post-dated the FTC's investigation of LabMD. *See* Complaint, Exhibit H. Further compounding LabMD's statutory problems are the allegations asserted in the Georgia

Complaint. LabMD alleges that Defendants continually financially benefited from downloading the 1718 File from third parties, Georgia Complaint, ¶ 99, and all of this knowledge is based on a survey of various activity spanning from May 2008 through October 2009. *Id.*, ¶¶ 52-71.

Anticipating these case-ending issues, Plaintiff attempts to use its RICO Statement to remedy these maladies. *See* RICO Case Statement, pp. 29-31. Those efforts ring hollow. Indeed, had Plaintiff actually taken diligent steps, the Court would not be bothered with this baseless litigation. Instead, Plaintiff took half-measures, only going far enough to make allegations and accusations, without taking steps to prove their baseless accusations. For example, Plaintiff sent the September 30, 2010 letter, including a 30-day response period, then waited over a year to file the Georgia Complaint, and then another three-plus years to begin this case.

**Defendants' "Fraudulent Steps" to Conceal.** Plaintiff further alleges its due diligence was thwarted because Defendants took "fraudulent steps." For tolling to apply, "[t]he plaintiff must show *active misleading* by the defendant." *Forbes*, 228 F.3d at 486-87 (emphasis in original). Further, the plaintiff must allege "the defendant [took] steps beyond the challenged conduct itself to conceal that conduct from the plaintiff." *Gabelli v. SEC*, 133 S. Ct. 1216, 1220 n. 2 (2013). Importantly, fraudulent concealment is not only concerned with the behavior of the defendants; rather, with respect to RICO claims specifically, an underlying purpose is to "encourage those victims themselves diligently to investigate and thereby to uncover unlawful activity," so the plaintiff's investigation or lack thereof will be highly relevant. *Klehr v. A. O. Smith Corp.*, 521 U.S. 179, 195 (1997).

The instant case is analogous to *Forbes*, wherein the Third Circuit ruled equitable tolling on plaintiffs' RICO claims was not appropriate. In *Forbes*, the Court ruled that even assuming

defendant "engaged in affirmative acts of concealment designed to mislead plaintiffs," the fact that plaintiffs knew of the facts supporting their cause of action at least six years prior to the filing of the complaint containing their RICO claims made tolling unavailable. *Forbes*, 228 F.3d at 487. The court emphasized that plaintiffs had filed a "virtual carbon copy of the complaint" with a labor relations board within the statutory period, and pointed to the district court's determination that "plaintiffs 'could have actually pled almost every allegation in their complaint'" as evidence that tolling was not appropriate. *Id*. at 487-88. Although plaintiffs argued they had insufficient knowledge to plead RICO claims in a timely manner, the court found they were "aware or should have been aware of the facts supporting" the claims and that Rule 11 of the Federal Rules of Civil Procedure does not require absolute certainty when filing a claim. *Id*. at 488. Ultimately, the court rejected the tolling arguments, as a plaintiff need not only show active misleading by the defendant, but also show that, despite reasonable diligence, the plaintiff was misled into thinking no cause of action existed. *Id*. at 487.

Like in *Forbes*, the Plaintiff here filed a virtual "carbon copy" of its Complaint in Georgia. Given the lengthy litigation history between the parties, LabMD has not and could not argue that Tiversa ever led LabMD into thinking no cause of action existed. Rather, LabMD simply waited to bring the claim. The boilerplate allegations of concealment here do not excuse a lack of diligence, particularly where the concealment was insufficient to prevent the filing of the 2011 Complaint, which alleges the same facts upon which Plaintiff's 'new' claims are based.

**C.**     **Beyond The Statute Of Limitations Issues, Plaintiff's State Law Claims Are Insufficiently Pled and Warrant Dismissal As A Matter of Law.**

A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead enough facts to state a claim for relief that is "plausible" as opposed to merely "conceivable." *Twombly*, 550 U.S. at 570. To survive a

motion to dismiss, a complaint must contain more than "labels and conclusions;" the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 555. A plaintiff's showing must contain more than "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

### 1. Plaintiff Cannot Allege A Claim For Conversion Because It Was Never Deprived Of Its Use of the 1718 File.

To establish a claim for conversion, a plaintiff must allege: "(1) the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, (2) without the owner's consent, and (3) without lawful justification." *Vavro v. Albers*, 2006 WL 2547350, at *13-14 (W.D. Pa. Aug. 31, 2006), *aff'd*, 254 Fed. Appx. 134 (3d Cir. 2007) (quoting *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n. 3 (Pa. Super. 2000)). Moreover, a demand and refusal is an essential element of an action for conversion. *Norriton E. Realty Corp. v. Cent.–Penn Nat. Bank*, 254 A.2d 637, 639 (Pa. 1969).

Here, Plaintiff fails to allege that it was deprived of its right to use the 1718 File. *PTSI, Inc. v. Haley*, 71 A. 3d 304 (Pa. Super. 2013) is illustrative of Plaintiff's failure. In *Haley*, the defendants (former employees of the plaintiff PTSI) allegedly took the only existing copy of client work-out files. PTSI alleged that the defendants were liable for conversion because they took the only existing file and refused to return it for over three weeks. The court explained that the tort of conversion has been limited to "those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value." *Id*. at 313. The court highlighted that "conversion is an intentional exercise of dominion or control over a chattel which *so seriously interferes* with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Id*. at 314 (citing

Restatement (2d) of Torts § 222A (1965)) (emphasis added). The court concluded that PTSI could not substantiate its claim for conversion because the workout sheets had no economic value to anyone and there was no "*denied access to* the alleged client list or workout sheets." *Id.* at 313 (emphasis added).

Here, Plaintiff's conversion claim fails because Plaintiff has not pled any deprivation whatsoever, denial of access, or such exercise of dominion or control over the 1718 File by Defendants that interfered in any way with Plaintiff's exercise and control. Moreover, the Complaint does not (and could not) allege an unsatisfied demand for the return of the 1718 File, a critical element necessary to substantiate conversion. *Norriton E. Realty Corp.*, 254 A.2d at 639. This is because "[o]n May 13, 2008 . . . Defendant Tiversa emailed a copy of the file in its possession to LabMD." *See* Georgia Complaint, ¶ 77. Lastly, Plaintiff has not alleged that the 1718 File has any economic value. Plaintiff cannot substantiate its conversion claim because it has failed to allege the critical elements of the tort necessary to prevail.

2.  **Plaintiff Fails to Identify Even One Defamatory Statement, and Thus its Defamation Claim Fails.**

In order to recover in a defamation action under Pennsylvania law, a plaintiff must show: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from the publication; and (7) the abuse of a conditionally privileged occasion. *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 903 (Pa. 2007); 42 Pa. Cons. Stat. § 8343(a). Fatal to a claim for defamation is the failure "to set forth a specific statement." *Holewinski v. Children's Hosp. of Pittsburgh*, 649 A.2d 712, 716 (Pa. Super. 1994).

Here, Plaintiff vaguely alleges that Tiversa "published false and defamatory statements about [Plaintiff] to third parties." Complaint, ¶ 36. However, the Complaint is completely devoid of any allegation pertaining to the nature of the allegedly defamatory statements; simply put, Plaintiff does not state *what* the defamatory statement was. The Complaint fails to identify the defamatory character of the communication. There is no allegation of when or where the statement was published or who published the statement. There is no allegation of any recipient of the allegedly defamatory statement, the recipient's understanding, special harm to the Plaintiff, or abuse of a conditionally privileged occasion. Instead, Plaintiff baldly asserts that a defamatory statement has been made. Such conclusory statements are found throughout the Complaint: Plaintiff defines "Defamatory Statements" not to include specific instances of actual statements made, but instead only as statements which were "false and defamatory." *Id*.

Plaintiff has only pled "threadbare" legal conclusions with respect to its claim for defamation *per se*. Because Plaintiff has omitted any factual allegations necessary to establish a claim for defamation *per se*, Count II should be dismissed in its entirety as a matter of law.

### 3. Plaintiff's Tortious Interference Claim Lacks Any Allegation of an Actual Contract and Therefore Fails as a Matter Of Law.

Plaintiff next alleges that Tiversa is liable for tortious interference with business relations. Complaint, ¶¶ 48, *et seq*. Although Pennsylvania does not recognize a cause of action for "tortious interference with business relations," Pennsylvania courts typically interpret such claims as tortious interference with contractual relations. *See, e.g., Guaranty Towers, LLC v. Cellco Partn.*, 2007 WL 2617651 (M.D. Pa. Sept. 6, 2007). Under Pennsylvania law, the elements of a cause of action for intentional interference with a contractual relation are: (1) a contractual or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation,

or to prevent a prospective relation from occurring; (3) absence of privilege or justification on the part of the defendant; and (4) legal damage as a result of the defendant's conduct. *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. 1997) (citing *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. 1987); *Small v. Juniata Coll.*, 682 A.2d 350, 354 (Pa. Super. 1996)). Fatal to Plaintiff's claim here is that it has not identified any business or contractual relationship whatsoever with which Tiversa interfered. In *Marci's Fun Food, LLC v. Shearer's Foods, Inc.*, 2010 WL 3982290 (W.D. Pa. Oct. 8, 2010) the court dismissed a similar claim because no specific contractual relationship was pled:

> Plaintiff, however, does not allege any specific contractual relationship with which Defendants allegedly interfered. Plaintiff asserts in its brief that it has stated a claim for tortious interference with existing contractual relationships under Pennsylvania law. Plaintiff acknowledges that a claim for tortious interference with existing contractual relationships requires the existence of a contractual relationship. But Plaintiff's Complaint only vaguely alleges a "relationship" with unidentified "customers."

*Id*. at *12. Here, Plaintiff's allegations fall even shorter than those in *Marci's Fun Food* and fail to allege even the existence of vague relationships.

Further, Plaintiff has failed to allege purposeful action by Tiversa *specifically intended to harm* the existing relationship. Nowhere in the Complaint does Plaintiff identify any purposeful conduct or action by Tiversa to interfere with an existing contractual relationship. Further, Plaintiff fails to allege Tiversa's specific intent to harm an existing relationship. Plaintiff does allege in conclusory fashion that Tiversa acted with intent to injure LabMD; however, even that conclusory allegation falls short of the requisite intent to interfere with an *existing contractual relationship*, none of which were alleged to exist.

Plaintiff has not identified any relationship with which Tiversa allegedly interfered and Plaintiff fails to identify *how* Tiversa interfered with the unidentified relationships. Instead, Plaintiff vaguely concludes that Tiversa engaged in "misconduct" as the basis for its tortuous

interference claim. Moreover, even if Plaintiff can substantiate that Tiversa purposefully interfered with an existing relationship with intent to harm that relationship, Plaintiff has failed to plead that Tiversa was not justified or privileged in its interference.[6]

Because Plaintiff's claim fails to identify any relationship with which Tiversa interfered, it is clear that Plaintiff cannot prevail on this theory of liability.

### 4. The Statements Forming the Basis of Plaintiff's Fraud Claim Were Not Material, Nor Made With Actual Knowledge of Their Falsity, and Therefore Plaintiff's Fraud Claim Fails as a Matter of Law.

Next, Plaintiff alleges that Tiversa is liable for fraud. Complaint, ¶¶ 54, *et seq*. The specific elements of fraud include: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst*, 647 A.2d 882, 889 (1994). In other words, "[f]raud is composed of a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim." *Thomas v. Seaman*, 304 A.2d 134, 137 (Pa. 1973). Importantly, Federal Rule of Civil Procedure 9(b) requires that fraud is pled with particularity.

Plaintiff alleges that Tiversa falsely told Plaintiff that Tiversa "continued to see individuals… downloading copies the [1718 File]." Complaint, ¶ 55. The Complaint purposefully does not allege *how* this representation is "material" to the transaction at hand. "A misrepresentation is material when it is of such a character that if it had not been made, the transaction would not have been entered into." *Silverman v. Bell Savings & Loan Ass'n.*, 533

---

[6] Should the Complaint survive the within Motion to Dismiss, Tiversa will be able to demonstrate that the provision of the 1718 File to the FTC was privileged, as it was done in response to a Civil Investigative Demand pursuant to Section 20 of the Federal Trade Commission Act, 15 U.S.C. § 57b-1. This well-known fact is conveniently omitted from the Complaint.

A.2d 110, 113 (Pa. Super. 1987). Mr. Boback testified it was his belief that individuals were not *downloading* the 1718 File, but, in fact, individuals were *searching* for the 1718 File. *See* Complaint, ¶ 30. The difference between the terms "downloading" and "searching" is wholly immaterial given Plaintiff's immediate concerns regarding its security and Tiversa's conduct. Consequently, Plaintiff has failed to plead that it did *anything* different based on Tiversa's purportedly fraudulent statement, and thus that statement was not material. Further, Plaintiff fails to allege that the representation was made with actual knowledge of its falsity. In fact, Plaintiff acknowledges that Tiversa *did not* have knowledge of its alleged falsity when the representation was made: "as far as the downloading, maybe I misspoke." *See* Complaint, ¶ 30 (quoting Mr. Boback's testimony). Thus, Plaintiff acknowledges that the representation that individuals were downloading the 1718 File was clearly made *without* knowledge of its alleged falsity.

In addition, Plaintiff alleges that Tiversa made the allegedly fraudulent representation "for the purposes of soliciting its business, specifically to try to persuade [Plaintiff] to use Tiversa's 'Incidence Response Services.'" Complaint, ¶ 20. The only way Plaintiff can prevail on its theory is if Plaintiff actually engaged Tiversa's services – the action which Tiversa allegedly intended to induce. However, the Complaint makes it abundantly clear that this allegedly desired result did not occur as Plaintiff did not engage Tiversa's services. *Id*. Thus, Plaintiff has failed to plead any reliance on the statements, warranting dismissal of the claim.

### 5. Plaintiff's Negligent Misrepresentation Claim Fails for the Same Reasons its Fraud Claim Fails.

Plaintiff next alleges that Tiversa is liable for negligent misrepresentation. Negligent misrepresentation requires: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresentor ought to have known its falsity; (3) with an intent to

induce another to act on it; and, (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994) (citations omitted).

As with Plaintiff's claim for fraud, this claim is legally insufficient because Plaintiff has failed to allege how the representation that individuals were downloading the 1718 File was a misrepresentation of *material* fact. *See, e.g., Merrill Iron & Steel, Inc. v. Blaine Constr. Corp.*, 2014 U.S. Dist. LEXIS 89932 at *21-22 (W.D. Pa. July 2, 2014) ("A factual misrepresentation is "material," so as to provide a basis for a negligent misrepresentation claim, when it is of such character, that had it not been made, the transaction in question would not have been consummated") (quoting *In re Brownsville Property Corp., Inc.*, 2013 WL 4010308, at *12 (Bankr. W.D. Pa. Aug. 1, 2013)). As with the fraud claim, it is clear that the representation was not material. Mr. Boback testified that individuals were not *downloading* the 1718 File, but, in fact, individuals were *searching* for the 1718 File. *See* Complaint, ¶ 30. The difference between the terms "downloading" and "searching" is wholly immaterial. There is no indication in the Complaint that any of Plaintiff's actions would have changed if Tiversa used the word "searching" rather than "downloading" in May 2008.

> **6.     Plaintiff's Failure to Allege a Common Purpose Defeats The Civil Conspiracy Claim.**

Plaintiff alleges that the Defendants are liable for civil conspiracy. Complaint, ¶¶ 69, *et seq*. In Pennsylvania, "[t]o state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-988 (Pa. Super. 1997) (citation and internal quotations marks omitted). Proof of agreement and malicious intent are essential to stating a claim for conspiracy,

and the fact that two or more people are acting to do something at the same time is not by itself an actionable conspiracy. *Burnside v. Abbott Laboratories*, 505 A.2d 973, 980 (Pa. Super. 1985). A claim for civil conspiracy also cannot be pled without properly alleging an underlying tort. *See, e.g., Nix v. Temple Univ.*, 596 A.2d 1132, 1137 (Pa. Super. 1991) (citing *Pelagatti v. Cohen*, 536 A.2d 1337, 1341-42 (Pa. Super. 1987)).

Plaintiff has failed to plead the existence of any agreement to commit an unlawful act. Plaintiff references an email from Mr. Johnson to Chris Gormley to "spice up" a report, but such a statement, even if true, in no way substantiates the existence of an agreement to commit an unlawful act. Even if this court accepts as true that Mr. Johnson and Tiversa were acting to do something at the same time, that by itself is not an actionable conspiracy. *Burnside*, 505 A.2d at 980. Plaintiff has also failed to allege that Mr. Boback and Mr. Johnson acted with malice. Nor could Plaintiff make this allegation given that the reference to the 1718 File in the Johnson Paper was redacted and did not contain LabMD's name. Complaint, Exh. J, Fig. 4.

Next, Plaintiff fails to allege the presence of an overt act, a critical element necessary to substantiate a claim for civil conspiracy. Although Plaintiff alleges that "Defendants took overt acts in furtherance of this unlawful[] conspiracy[,]" Complaint, ¶ 72, Plaintiff does not actually identify any overt act by Tiversa. Because this court does not need to consider "threadbare recitals of a cause of action's elements," it is clear that Plaintiff has not sufficiently pled its claim for civil conspiracy. *Iqbal*, 556 U.S. at 663. Lastly, because all of the claims upon which Plaintiff relies to assert its claim for civil conspiracy fail as a matter of law, there can be no claim for conspiracy because there is no viable underlying tort. *See Nix,* 596 A.2d at 1137.

**D.    Plaintiff's RICO Claims Suffer From Countless Defects, Warranting Dismissal.**

Plaintiff claims that Tiversa is liable for violations of 18 U.S.C. § 1962(c) and (d). Plaintiff, however, lacks standing to assert these claims, both of which are insufficiently pled.

1. **Plaintiff Lacks Standing to Assert the § 1962(c) Claim.**

It is "well settled that the plaintiff cannot prevail upon a Section 1962(c) claim unless he has been injured in his business or property by the conduct constituting the violation." *Baglio v. Baska*, 940 F. Supp. 819, 833 (W.D. Pa. 1996), *aff'd*, 116 F.3d 467 (3d Cir. 1997) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Also, where "Plaintiff lacks standing … under § 1962(c), he cannot sustain a claim under § 1962(d)." *Waris v. Mackey*, 2009 WL 4884204, at *11 (E.D. Pa. Dec. 14, 2009). The Third Circuit requires "a direct relationship between the injury asserted and the injurious conduct alleged." *Baglio,* 940 F. Supp. at 833.

According to Plaintiff, it suffered harm resulting from the "financially devastating" course of events such as the FTC investigation and its "attendant adverse publicity" and "administrative burdens." RICO Case Statement, p. 6. Plaintiff also alleges that due to the investigation, it lost its referral sources and employees, resulting in the company being "forced out of business by January 2014." *Id.* Thus, to the extent LabMD's business problems are traceable to an external force, that force is the FTC investigation.

While the Complaint suggests Defendants somehow bear responsibility – "in large party [sic] by precipitating the FTC's investigation and enforcement action against it," Complaint, ¶ 33 – Plaintiff alleges no facts indicating the FTC was part of the alleged enterprise or that Defendants in any way exerted control over the agency. Instead, Plaintiff simply concludes that communications between the FTC and Tiversa amounted to racketeering activity. It is unclear how Plaintiff perceives the FTC's role in the alleged scheme: the RICO Statement at one point identifies the FTC as a victim, RICO Case Statement, p. 10 ("the FTC was unaware that Defendants were misleading it about those breaches"), but later discusses "Defendants' role in the FTC investigation," suggesting some degree of cooperation. RICO Case Statement, p. 17.

Regardless of how Plaintiff chooses to characterize the FTC, Plaintiff cannot directly connect Tiversa's alleged activities and Plaintiff's alleged injury at the hands of the FTC.

To be valid for RICO purposes, Plaintiff must show facts indicating the injury flowed directly from the alleged racketeering activity; an injury can still be found to be "too attenuated from that activity to justify a RICO claim" even if plaintiff's injury would not have arisen but for the activity. *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 257 (3d Cir. 2012). In other words, Plaintiff must allege that the predicate acts directly caused its injury; that plaintiff was injured "by reason of" the "acts indictable as mail fraud" – i.e., that the mail or wire fraud itself, not some other act, caused the harm. *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). Plaintiff fails to forge such a direct link here. Both the Complaint and the RICO Case Statement merely make conclusory allegations that the FTC, in reaching out to Tiversa to understand data vulnerabilities, somehow acted improperly or enabled Tiversa to do so. Plaintiff fails to demonstrate the direct relationship required to establish standing; the RICO claims fail.

Further, RICO claims require a plaintiff to allege underlying predicate acts. *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 502 (3d Cir. 1998). With respect to Tiversa's alleged involvement with the FTC, Plaintiff has failed to do so. The RICO Case Statement alleges only that sometime in "Summer 2009…Upon information and belief, Defendants, through the Privacy Institute" mailed documents including misrepresentations about the File to the FTC. RICO Case Statement, p. 13. However, Plaintiff is required to plead a minimum of two predicate acts of racketeering activity that are related to one another and either constitute or threaten continued criminal activity to state a RICO claim. *Gagliardi v. Equifax Info. Servs., LLC*, 2011 WL 337331, at *4 (W.D. Pa. Feb. 03, 2011). Thus, to the extent Plaintiff

alleges the Defendants are somehow linked to racketeering activity related to the FTC and Privacy Institute, it is clear that a pattern of such activity cannot be established.

Further, the RICO Statement's vague description of the alleged mailing from the Privacy Institute to the FTC is not pled with sufficient particularity. Predicate acts of mail fraud must "identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentation." *Bonavitacola Electric Contractor, Inc. v. Boro Developers, Inc.*, 87 Fed. Appx. 227, 231 (3d Cir. 2003) (quoting *Annulli v. Panikkar*, 200 F.3d 189, 201 n. 10 (3d Cir.1999)). Plaintiff's RICO Statement description about a mailing regarding "LabMD, Open Door, and at least 82 other companies" and unidentified "misrepresentations … about [the File]" is vague, sparse, and ambiguous – a far cry from the standard of particularity required. RICO Case Statement, p. 13.

Plaintiff does not have standing to bring its RICO claims; they should be dismissed.

**2.    Plaintiff's Section 1962(c) Fails to Allege an Enterprise or a Pattern of Racketeering Activity**

To state a claim for a violation of 18 U.S.C. § 1962(c), a Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima*, 473 U.S. at 496. However, the RICO claim here is nothing more than a recitation of the statute's elements and is devoid of any specific factual support whatsoever.

**a.    Plaintiff Fails to Allege the Existence of an Enterprise.**

Initially, Plaintiff fails to allege the existence of an enterprise. An enterprise is more than a list of parties but a distinct entity with structure; a group with "a common purpose of engaging in a course of conduct." *McCullough v. Zimmer, Inc.*, 382 Fed. Appx. 225, 231 (3d Cir. 2010). An enterprise's structure must include (1) a common purpose; (2) "'relationships among those associated with the enterprise'"; and (3) "'longevity sufficient to permit these associates to

pursue the enterprise's purpose.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 368 (3d Cir. 2010) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)). Further, the association behind the alleged continuing and coordinated activities must have "some sort of structure" or framework for coming to, and carrying out, its decisions. *United States v. Riccobene*, 709 F.2d 214, 222 (3d Cir. 1983). The Third Circuit has long held that the alleged enterprise and defendants in a civil RICO action must be "sufficiently distinct." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d Cir. 1993). This "distinctiveness requirement" means that a Plaintiff cannot succeed simply by pleading "that the enterprise consists of a defendant corporation in association with employees, agents, or affiliated entities acting on its behalf" and must be "more than an association of individuals or entities conducting the normal affairs of a defendant corporation." *Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, 786 F. Supp. 1223, 1230 (W.D. Pa. 1992)(internal quotation omitted). It is not enough to "simply identify[] the allegedly associated components." *In re Ins. Brokerage Antitrust Litig.*, 618 F.2d at 369. "[A]fter *Twombly*," a "RICO claim must plead facts plausibly implying the existence of an enterprise" with the required structure and "common purpose" and "collaboration" among members. *Id*. at 369-70.

**Plaintiff Alleges No Framework of the Enterprise.** As to the framework requirement, the only allegation in the Complaint is that of Tiversa's corporate structure, as Mr. Boback is the company's Chief Executive Officer. There is nothing else to identify the framework of the purported enterprise. To avoid this defect, Plaintiff generally refers to the one-time publication of the so-called Johnson Paper and the press it generated. Complaint ¶¶ 28-29. This is insufficient to establish coordinated or structured behavior. It is clear that where plaintiff alleges garden-variety fraud or "activity pos[ing] no threat of additional repeated criminal conduct over a significant period," doing so is insufficient to support RICO claims. *Marshall-Silver Constr.*

*Co. v. Mendel,* 894 F.2d 593, 597 (3d Cir. 1990).  One-off or infrequent actions do not comprise the type of structured, continuing activity that evidences racketeering enterprises; the Third Circuit has held that tasks such as attending board meetings or merely providing accounting or consulting services "from time to time" do not show a party's participation in the affairs of an enterprise.  *Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993).  *See also Amos v. Franklin Fin'l Servs. Corp.*, 2011 WL 5903875, at *15 (M.D. Pa. Nov. 22, 2011), *aff'd* 509 Fed. Appx. 165 (3d Cir. Jan. 11, 2013) ("unilateral action" and insufficient indicia of a continuing relationship impedes establishment of enterprise structure).

Indeed, Plaintiff fails to allege sufficient facts to marshal the Defendants into any semblance of a framework; while the Complaint suggests the publication of the paper and the FTC investigation were somehow part of Tiversa's scheme, there are no allegations as to the FTC being part of the framework and, but for the passing reference to a one-time collaboration with Mr. Johnson, Plaintiff fails to allege he is part of any coordinated, continuing framework. The Complaint further fails to sufficiently demonstrate how Mr. Johnson's publishing effort aligns with Tiversa's alleged purpose of "strong-arming" clients into using its services, particularly because Johnson's paper does not mention LabMD by name, and where the paper includes an image from the 1718 File, it is redacted.  *See* Complaint, Exhibit J, p. 13.  The fact that Tiversa had a relationship with another party does not automatically make that relationship part of a racketeering enterprise.  The publication of Mr. Johnson's paper provided no tangible benefit to Tiversa and was merely a one-time academic pursuit.  Complaint ¶ 27, Exhibit J, fn. 1. As such, any one-time assistance Tiversa provided to help Mr. Johnson pursue his independent research is not consistent with an alleged purpose or benefit resulting from racketeering activity. To be considered part of an association in a section 1962(c) claim, a participant must be shown

to have "directed or controlled" the enterprise in some manner. This means a plaintiff must show "a nexus between the person and the conduct in the affairs of an enterprise." *Univ. of Md. at Baltimore,* 996 F.2d at 1539. As described, Plaintiff does not demonstrate such a nexus.

**Plaintiff Cannot Distinguish the "Framework" From Tiversa.** Plaintiff's efforts to distinguish the alleged enterprise from the daily activities of Tiversa also fails. Plaintiff's Complaint acknowledges Tiversa's role in Johnson's research was very minor; the company simply permitted Johnson to leverage its search engines for his own research. Complaint, ¶ 27. Tiversa neither supplied search terms nor downloaded any of the results. *Id.* This admission contradicts Plaintiff's assertions that any relationship sufficient to demonstrate a racketeering enterprise existed. To be part of an association, a person must knowingly engage in "directing the enterprise's affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 179 (1993). Here, Johnson simply used Tiversa's capabilities for his own academic pursuit. Just as Tiversa did not control the direction of this research, Johnson had no role in managing Tiversa. This mutually passive, isolated interaction benefitting only Johnson is inconsistent with a racketeering enterprise. *See In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 366 (3d. Cir. 2010) (association-in-fact enterprise requires a structure evidenced by a purpose and relationships with sufficient longevity/continuity to enable pursuit of the enterprise's own purposes).

Further, the Complaint's allegations focus primarily on Tiversa and its Chief Executive Officer, Mr. Boback. For example, Plaintiff states "Boback manages, operates, and directs the affairs of the Enterprise." Complaint ¶ 80. The fact that "Enterprise" could seamlessly be exchanged for "Tiversa" illustrates that Plaintiff's allegations fail the distinctiveness analysis detailed in *Lorenz* and contradict Third Circuit law requiring a difference between the enterprise and the persons alleged to be liable under RICO. While the Complaint uses inflammatory

language to suggest Mr. Boback "identifies potential victims, solicits them, and, if they agree to his solicitations, has them enter agreements with Tiversa," Complaint ¶ 80, in substance the allegations simply attempt to recast the normal business operation of contacting and recruiting at-risk clients as the activities of a racketeering enterprise. Significantly, Plaintiff fails to allege any purported enterprise that is "'an entity separate and apart from the pattern of activity in which it engages.'" *United States v. Console*, 13 F.3d 641, 650 (3d Cir. 1993), *aff'd*, 116 F.3d 467 (3d Cir. 1997) (Table) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Rather, Plaintiff lists business activities Mr. Boback and Tiversa carried out, including limited interactions with the FTC and Mr. Johnson, and labels the activity an enterprise.

To the extent Plaintiff suggests Mr. Boback's actions can be imputed to Tiversa to establish the company as a member of the enterprise, such an attempt would necessarily fail, as "a business may not be held liable under a theory of respondeat superior" for purposes of section 1962(c). *Baglio v. Baska*, 940 F. Supp. 819, 832 (W.D. Pa. 1996). While a "corporate defendant may be a 'person' and thus liable under Section 1962(c)," this is the case "only if it, through a pattern of racketeering, conducted the affairs of an enterprise other than itself." *Id.* (citing *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 268 (3d Cir. 1995)). As such, the inability to impute liability to Tiversa means that Plaintiff must show Tiversa is (a) the enterprise; but is also (b) an independent actor in the enterprise. In other words, Plaintiff must show that the racketeering enterprise is not simply Tiversa and its employees, but that the company directed some other racketeering activity – independent of its day-to-day business – that harmed Plaintiff. Plaintiff suggests the enterprise's activities are evidenced by "a campaign of defamation and tortious interference," Complaint, ¶ 80, but that is simply another malicious rephrasing of the normal commercial operation of speaking as an authority on data privacy, the

crux of Tiversa's business. The constant conflating and relabeling of the Defendants' activity in carrying out the business of Tiversa with the alleged enterprise and its activity indicate Defendants are not conducting a distinct enterprise with a framework of its own.

**Plaintiff Provides No Allegations as to the Longevity of the Enterprise.** Plaintiff also fails to plead an enterprise as, due to the isolated nature of the alleged incident with LabMD, there is no demonstration of longevity or the potential for such. The Third Circuit has held that where a RICO claim alleges simply "a single victim, a single injury, and a single, short-lived scheme," it fails to provide sufficient indicia of continuity and a threat of future harm. *Marshall-Silver*, 835 F.2d 63, 66-67. Further, "bald assertions" tracking the language of elements or court decisions cannot "compensate for the inadequacy of …claim[s] that defendants' alleged conduct would continue in the future." *Cooper v. Broadspire Servs., Inc.,* 2005 WL 1712390, at *10 (E.D. Pa. July 20, 2005) (quotation omitted).

b.     Plaintiff Fails to Allege a Pattern of Racketeering Activity.

Plaintiff has also failed to allege the existence of a "pattern" of racketeering activity. Central to the "pattern" requirement is consideration of "the length of time over which the criminal activity occurs or *threatens to occur*." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991) (emphasis added). In fact, Plaintiff points to just one set of acts – the alleged targeting of LabMD after it declined Tiversa's services – and does not allege a threat of the identical scenario being played out again in the future or the existence of any agreement to that effect. While the Complaint does not reference the incident at all, the RICO Case Statement suggests that Tiversa was somehow also involved in the legal problems of the Open Door Clinic in Chicago. However, the dissimilarities between Open Door's experience and LabMD's belie any attempt to characterize Open Door as part of the same alleged pattern or scheme.

First, despite Mr. Johnson allegedly playing an integral role in the enterprise thanks to his publications, speaking engagements, and interview comments, LabMD does not mention Johnson when recounting Open Door's experiences. Additionally, LabMD claims the instigation of a class action law suit was a central component of the Open Door incident, but no such suit against LabMD was filed. RICO Case Statement, p. 7. The differences in the two "victim" companies' experiences contradict any claim that they were subject to an identical, continuing scheme. There is also no allegation that Open Door was the subject of an FTC investigation.

Alleging a continuous pattern is essential because Congress intended for RICO to be used to target long-term criminal activity, "not to federalize every garden-variety claim of fraud." *Tabas v. Tabas*, 47 F.3d 1280, 1306 (3d Cir. 1995). However, the very first paragraph of the Complaint disproves any assertion of long-term, related, continuing criminal activity: while Plaintiff uses buzzwords such as "nationwide," "continuing racketeering scheme," and "conspiracy," the only harmful incident mentioned is the downfall of LabMD. Complaint ¶ 1. In this way, Plaintiff's allegations are analogous to those in *Hindes v. Castle,* 937 F.2d 868 (3d Cir. 1991), wherein the Third Circuit affirmed dismissal of RICO claims because the short-term scheme to improperly collude during the course of a single election through multiple fraudulent mailings – despite plaintiff's claims that this was defendants' regular "way of business" – was insufficient to satisfy the pattern requirement. *Hindes*, 937 F.2d at 874; *Marshall-Silver* (dismissing RICO claims for lack of continuity where plaintiff alleged threatening letters, the filing of a false bankruptcy petition, and "generation of false publicity" drove the company out of business). There, as here, a single, isolated scheme with a completed purpose and no threat of future harm failed the relatedness and continuity tests.

Even if this Court generously construes Plaintiff's allegations regarding Open Door as

indicative of a pattern, this would still be insufficient to establish the pattern of racketeering central to a § 1962(c) claim. *See Kehr Packages*, 926 F.2d at 1413 ("When [an alleged] scheme is short-lived and directed at a limited number of people, this court has required some further indication that the defendant's fraudulent activities are likely to continue"). Plaintiff's allegations regarding Open Door, which only appear in the RICO Statement, are conclusory and describe a course of events much different from those LabMD alleges to have experienced. RICO Case Statement, pp. 6-8. Nowhere does LabMD claim the central parts of Tiversa's alleged scheme – publishing a paper with Mr. Johnson and publicizing its findings through speaking engagements – occurred in the Open Door scenario. Further, while the RICO Statement attempts to link a class action lawsuit against Open Door to Tiversa, no such suit was filed against LabMD, making the "pattern" argument implausible. RICO Statement, pp. 6-8.

At best, Plaintiff has alleged two acts, but fails to indicate the requisite relatedness and continuity. And "while two acts are necessary, they may not be sufficient" to allege a RICO pattern. *Zax Environmental, Inc. v. Plant Const. Co., LLC,* 2008 WL 2509759, at *3 (W.D. Pa. June 18, 2008)(quoting *Sedima*, 473 U.S. at 497 n. 14). "Indeed, in common practice, two of anything do not generally form a pattern." *Id.* Moreover, even where one instance of fraudulent activity has been established – though none has been here – the "ensuing use of the mails and wires to run the legitimate business" of a company "does not amount to fraud" even if that business engaged in fraudulent activity in the past. *Meade v. Meade*, 1991 WL 243539, at *3 (E.D. Pa. Nov. 18, 1991). Finally, Plaintiff fails to show these two isolated, inconsistent occurrences demonstrate any realistic future threat. The Third Circuit has held that RICO claims are improper where there is an absence of continued activity or threat of the same affecting a larger number of people; when there are only isolated occurrences it is "unlikely that Congress

intended RICO to apply in the absence of a more significant societal threat." *Marshall-Silver*, 894 F.2d at 597. Plaintiff's attempt to allege a pattern fails; its claim should be dismissed.

c. <u>Plaintiff's RICO Claim Under 18 U.S.C. § 1962(d) Also Fails.</u>

Plaintiff claims that Defendants are liable for a RICO violation under 18 U.S.C. § 1962(d). As a preliminary matter, Plaintiff's claim under 18 U.S.C. § 1962(d) should be dismissed because a claim alleging conspiracy to violate any other 1962 section "necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993). Because Plaintiff has failed to state a claim under § 1962(c), the claim under § 1962(d) should be dismissed.

Even if Plaintiff's section (c) claim survives, however – which it should not – Plaintiff's section (d) claim still fails. To establish a claim under § 1962(d), a plaintiff "must set forth allegations that address the period of conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Hvostal v. American Idea Mgmt. Corp.*, 1992 WL 133908, at *3 (W.D. Pa. Mar. 23, 1992) (internal quotation omitted). Additionally, the plaintiff must demonstrate "agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity." *Id.* (quoting *Shearin v. The E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989). Neither the Complaint nor the RICO Statement accomplishes this task. At best, Plaintiff alleges that "[i]n 2005, Tiversa, Boback, and Johnson … began working together on cyber security issues." Complaint ¶ 17. However, Plaintiff concedes the collaboration was for a legitimate purpose, with the only agreement being a "nondisclosure agreement" executed "[i]n connection with their agreement to work together." *Id.* Conspicuously absent are any allegations of an agreement or understanding to partake in a pattern of racketeering activity. Because Plaintiff points to only one agreement between the Defendants and then immediately points out that it is a legitimate one, Plaintiff has failed to

allege a conspiracy in violation of § 1962(d). Accordingly, Plaintiff's claim for a violation of that section fails as a matter of law.

**E.** **Plaintiff Has Improperly Alleged Claims For Punitive Damages and Attorneys' Fees.**

In Count IX, Plaintiff claims to be entitled to an award of punitive damages based on the allegedly "willful misconduct" of Defendants, and further claims entitlement to treble damages based on Plaintiff's RICO claims. Complaint ¶¶ 94-95. In Count X, Plaintiff asserts a claim for attorneys' fees and expenses of litigation pursuant to 18 U.S.C. § 1964(c) and based on allegations of the Defendants acting in bad faith. Complaint ¶¶ 97-98. Both warrant dismissal because they are not independent causes of action and rather are just potential damages. *See Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 450 (W.D. Pa. 2010) ("Punitive damages are a form of relief, … not the basis for an independent cause of action.").

**F.** **Amendment of the Complaint Would be Futile.**

Plaintiff may argue that it is entitled to leave for the purpose of amending the Complaint. Such a request should be denied as futile. "Under Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (quotations omitted). Here, LabMD not only fails to state a claim, but would not be able to cure the myriad deficiencies via amendment. Amending a complaint with time-barred claims and claims which would not survive a 12(b)(6) motion even if pled with more particularity is futile, necessitating denial of leave to amend. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

## CONCLUSION

For the reasons above, Plaintiff's Complaint should be DISMISSED WITH PREJUDICE.

Dated: March 31, 2015

REED SMITH LLP

By: _/s/_ Jarrod D. Shaw
    Jarrod D. Shaw, Esquire
    PA ID No. 93459
    Lucas Liben, Esquire
    PA ID No. 309527
    REED SMITH CENTRE
    225 Fifth Avenue
    Pittsburgh, PA 15222-2716
    jshaw@reedsmith.com
    lliben@reedsmith.com
    Tel: (412) 288-3013
    Fax: (412) 288-3063

    *Counsel for Defendants Robert J. Boback*
    *and Tiversa Holding Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.


<u>*/s/* Jarrod D. Shaw</u>
Jarrod D. Shaw

*Counsel for Defendants Robert J. Boback*
*and Tiversa Holding Corp.*