IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LABMD, INC.,                              )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )
                                          )        No. 2:15-cv-00092-MRH-MPK
TIVERSA HOLDING CORP. f/k/a               )
TIVERSA, INC.; ROBERT J. BOBACK;          )
M. ERIC JOHNSON; and DOES 1-10,           )
                                          )
                                          )
            Defendants.                   )

## <u>DECLARATION OF MICHAEL J. DAUGHERTY</u>

1.  My name is Michael J. Daugherty.  I am the chief executive officer of Plaintiff LabMD, Inc. ("LabMD").

2.  I am competent in all respects to testify regarding the matters set forth in the enumerated paragraphs herein.  I have personal knowledge of the facts stated in these paragraphs and know them to be true unless stated otherwise.

3.  I give this declaration in support of Plaintiff's Opposition to Defendants Tiversa Holding Corp. and Robert J. Boback's Motion to Dismiss Plaintiff's First Amended Complaint.

4.  Until January 15, 2014, LabMD was a small, medical services laboratory providing doctors with cancer-detection services.

5.  Since January 15, 2014, LabMD's only business has been to provide patient records as requested by physicians and to collect on unpaid accounts.

6.  LabMD's first contact with Defendant Tiversa, Inc. ("Tiversa") was through a phone call it received from Defendant Robert J. Boback ("Boback") on May 13, 2008.

7.   LabMD's first contact with the Federal Trade Commission ("FTC") was through a phone call it received from an FTC investigator in January 2010, informing us that the FTC was about to conduct a non-public inquiry on LabMD.   On or about January 20, 2010, I received a letter from that investigator, a true and correct copy of which is attached hereto as Exhibit A.

8.   Much of the diligence LabMD undertook in response to the initial and follow-up communications from Tiversa and the FTC are described in *The Devil Inside the Beltway*, a book I authored and had published in September 2013.  A true and correct copy of the final manuscript for *The Devil Inside the Beltway* is attached hereto as Exhibit B.

LabMD's Due Diligence – LabMD<br>Hires Counsel to Investigate and Advise

9.   From May 13, 2008, through April 2, 2014, LabMD called upon at least twenty-four (24) attorneys at eleven (11) different law firms to investigate allegations made by Tiversa and the Federal Trade Commission and/or to advise LabMD regarding appropriate actions to take in response to those allegations.

10. For example, beginning on May 13, 2008, shortly after Boback called, LabMD sought legal consultation from its outside counsel, Phillipa V. Ellis, Esq., at the law firm of Owen, Gleaton, Egan, Jones & Sweeney in Atlanta, Georgia.

11. Beginning on January 19, 2010, LabMD sought legal consultation from Ms. Ellis relating to the non-public inquiry initiated by the FTC.

12. On April 2, 2014, I received a telephone call from a former Tiversa employee named Richard E. Wallace ("Wallace").  Several of the details of conversations I had with Wallace in April 2014, are set forth in the Daugherty Affidavit which is attached as Exhibit Q to LabMD's RICO Statement filed in this action on February 15, 2015.

13.  At no time before April 2, 2014, did Ms. Ellis ever suggest to LabMD that LabMD might have a claim against Tiversa for fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, federal RICO or state RICO.  At no time before April 2, 2014, did Ms. Ellis ever suggest that the FTC was relying upon Tiversa's *lies*.

14.  In August 2010, LabMD engaged Benjamin Wright, Esq. from Dallas, Texas, for legal advice relating to Tiversa and the Federal Trade Commission.  At no time before April 2, 2014, did Mr. Wright ever suggest to LabMD that LabMD might have a claim against Tiversa for fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, federal RICO or state RICO.  At no time before April 2, 2014, did Mr. Wright ever suggest that the FTC was relying upon Tiversa's *lies*.

15.  In March 2011, LabMD engaged Stephen F. Fusco, Esq. of Atlanta, Georgia, for legal advice relating to Tiversa and the Federal Trade Commission.  At no time before April 2, 2014, did Mr. Fusco ever suggest to LabMD that LabMD might have a claim against Tiversa for fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, federal RICO or state RICO.  At no time before April 2, 2014, did Mr. Fusco ever suggest that the FTC was relying upon Tiversa's *lies*.

16.  In March 2011, LabMD engaged Dana Rosenfeld and Kristin McPartland at the law firm of Kelley Drye in Washington, D.C., for legal advice relating to Tiversa and the Federal Trade Commission.  At no time before April 2, 2014, did Dana Rosenfeld or Kristin McPartland ever suggest to LabMD that LabMD might have a claim against Tiversa for fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, federal RICO or state RICO.  At no time before April 2, 2014, did Dana Rosenfeld or Kristin McPartland ever suggest that the FTC was relying upon Tiversa's *lies*.

17.  In September 2011, LabMD engaged Claudia Calloway and Christina Grigorian at the law firm of Katten Muchin in Washington, D.C., for legal advice relating to Tiversa and the Federal Trade Commission.  At no time before April 2, 2014, did Claudia Calloway or Christina Grigorian ever suggest to LabMD that LabMD might have a claim against Tiversa for fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, federal RICO or state RICO.  At no time before April 2, 2014, did Claudia Calloway or Christina Grigorian ever suggest that the FTC was relying upon Tiversa's *lies*.

18.  In September 2012, LabMD engaged Thomas J. Archer and Christopher S. Anulewicz at the law firm of Balch & Bingham in Atlanta, Georgia, for legal advice relating to the Federal Trade Commission.  At no time before April 2, 2014, did Thomas J. Archer or Christopher S. Anulewicz ever suggest to LabMD that LabMD might have a claim against Tiversa for fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, federal RICO or state RICO.  At no time before April 2, 2014, did Thomas J. Archer or Christopher S. Anulewicz ever suggest that the FTC was relying upon Tiversa's *lies*.

19.  In August 2013, LabMD engaged Cause of Action in Washington, D.C., for legal advice relating to the Federal Trade Commission.  Attorneys at Cause of Action who represented LabMD included Daniel Z. Epstein, Patrick Massari, Kent Huntington, Michael D. Pepson, Hallee Morgan and Robyn Burrows.  At no time before April 2, 2014, did the attorneys at Cause of Action ever suggest to LabMD that LabMD might have a claim against Tiversa for fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, federal RICO or state RICO. At no time before April 2, 2014, did the attorneys at Cause of Action ever suggest that the FTC was relying upon Tiversa's *lies*.

20.  Shortly after LabMD engaged Cause of Action in August 2013, Cause of Action engaged the law firm of Dinsmore & Shohl in Washington, D.C. for legal advice relating to the Federal Trade Commission.  Attorneys at Dinsmore & Stohl who represented LabMD included Reed D. Rubinstein, William Sherman II and Sunni Harris.  At no time before April 2, 2014, did Reed D. Rubinstein, William Sherman II or Sunni Harris ever suggest to LabMD that LabMD might have a claim against Tiversa for fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, federal RICO or state RICO.  At no time before April 2, 2014, did Reed D. Rubinstein, William Sherman II or Sunni Harris ever suggest that the FTC was relying upon Tiversa's *lies*.

21.  Shortly after September 13, 2013, when LabMD and I were served with the summons and complaint in *Tiversa Holding Corp. and Robert J. Boback v. LabMD, Inc. and Michael J. Daugherty*, in then United States District Court for the Western District of Pennsylvania, Civil Action No. 2:13-cv-01296-NBF (the "Federal Defamation Action"), LabMD and I engaged Richard T. Victoria and Alexander W. Saksen at the law firms of Gordon Rees in Pittsburgh, Pennsylvania and Cynthia L. Counts at Counts Law Group in Atlanta, Georgia, to defend LabMD and me in that matter.  At no time before April 2, 2014, did Richard T. Victoria, Alexander W. Saksen or Cynthia L. Counts ever suggest to LabMD that LabMD might have a claim against Tiversa for fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, federal RICO or state RICO.  At no time before April 2, 2014, did Richard T. Victoria, Alexander W. Saksen or Cynthia L. Counts ever suggest that the FTC was relying upon Tiversa's *lies*.

### LabMD's Due Diligence –
### No Information from FTC Investigators

22. Between January 10, 2010, and September 30, 2010, LabMD prepared and sent at least six lengthy written submissions and thousands of pages of documents to the FTC in response to inquiries from FTC investigators.  The last submission before September 30, 2010, was dated August 30, 2010.

23. Other than stating their belief that LabMD had made the 1718 File publicly available on peer-to-peer networks, the FTC investigators refused to tell us the basis for their non-public inquiry and subsequent investigation.  The FTC never disclosed to LabMD any of the information or documentation they had received from Tiversa, Dartmouth College, Eric Johnson or anyone else before they produced documents from "The Privacy Institute" in the fall of 2013 and even then they gave no explanation as to the relevance of that company or its connection to Tiversa.

### LabMD's Due Diligence – Inquiries to
### Tiversa, Dartmouth College and Johnson

24. LabMD sent a list of questions to Tiversa, Dartmouth College and Eric Johnson by letter dated September 30, 2010.  Ms. Ellis and Mr. Wright were the primary authors of those letters.  True and correct copies of those letters are attached hereto and marked, collectively, as Exhibit  C.

25. LabMD did not accuse Tiversa, Dartmouth College or Eric Johnson of fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, federal RICO or Georgia RICO on September 30, 2010, because LabMD was not aware of any facts that would support such claims.  LabMD did not know and had no reason to believe that Tiversa had lied to the FTC.

26. Tiversa, Dartmouth College and Eric Johnson all failed to respond to the September 30, 2010 letters.

27. After September 30, 2010, we heard nothing from the FTC until February 10, 2011, when an FTC investigator called Ms. Ellis to inform LabMD that the FTC investigators wanted more information.

LabMD's Due Diligence –
Dealing with the FTC Investigators

28. On May 16, 2011, LabMD submitted to the FTC investigators an eight page written narrative with 24 exhibits. This was LabMD's *seventh* submission of information and documentation to the FTC investigators.

29. On May 31, 2011, LabMD submitted to the FTC investigators a six page written narrative with 14 additional exhibits. This was LabMD's *eighth* submission of information and documentation to the FTC investigators.

30. On August 19, 2011, an FTC investigator called LabMD's counsel to request a face-to-face meeting in Washington, D.C., which occurred on October 20, 2011.

31. LabMD learned in the summer of 2011 that the FTC was not going away – it insisted that LabMD agree to a consent order.

LabMD's Due Diligence – LabMD Files Georgia
Lawsuit Against Tiversa, Dartmouth and Johnson

32. On October 19, 2011, LabMD filed a complaint against Tiversa, Dartmouth College and Eric Johnson in the Superior Court of Fulton County, Georgia (the "Georgia Action"). The Georgia Action included counts for violations of the Computer and Fraud Abuse Act (18 U.S.C. 1030), computer crimes under O.C.G.A. § 16-9-3, conversion, trespass and punitive damages.

33. LabMD did *not* include counts for fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, federal RICO or Georgia RICO in the Georgia Action because LabMD was not aware of any facts that would support such claims.  As of October 19, 2011, LabMD did not know and had no reason to believe that Tiversa had lied to the FTC.

LabMD's Due Diligence – Tiversa<br/>Avoids Discovery in the Georgia Action

34.  Because Tiversa, Dartmouth and Johnson filed and eventually succeeded on motions to dismiss the Georgia Action for lack of personal jurisdiction, LabMD was never able to take any discovery from Tiversa, Dartmouth, Johnson or anyone else.

35. On August 15, 2012, the defendants' motions to dismiss the Georgia Action for lack of personal jurisdiction were granted.  LabMD appealed the district court's rulings to the Eleventh Circuit Court of Appeals (the "Eleventh Circuit").

36. The Eleventh Circuit affirmed the district court's rulings in the Georgia Action on February 5, 2013.

LabMD's Due Diligence –<br/>Tiversa's Counsel's False Statements

37. In November 2012, during pendency of LabMD's appeal to the Eleventh Circuit, Tiversa attorney John Hansberry from the Pittsburgh office of Pepper Hamilton sent a letter to LabMD's general counsel that included the following statements (which are now known to be false):

> In our conversation, you also described an FTC investigation of LabMD.  We were previously unaware of any such investigation.  You explained that LabMD believes that Tiversa is somehow complicit in the FTC's investigation because the FTC investigation came after LabMD decided it would not hire Tiversa. LabMD's accusation is patently false and baseless.

Critically, and contrary to your clients' published false statements, Tiversa did not break into LabMD's system.  Tiversa is not a "thief."  Mr. Daugherty and LabMD know that these specific accusations are false.  As I said to you on the phone, we are willing to sit down and further demonstrate what you and Mr. Daugherty already know through publically available documents: namely, that the file in question could be found and today can still be found at multiple sites in the public domain.

A true and correct copy of the Pepper Hamilton letter is attached hereto and marked as Exhibit

D.

LabMD's Due Diligence – LabMD Consults with
Reed Smith re Suing Tiversa and Boback in Pittsburgh

38. On December 6, 2012, just four months after the district court granted the defendants' motions to dismiss the Georgia Action, LabMD began a series of attorney-client privileged communications with George L. Stewart, II ("Stewart"), the managing partner of Reed Smith, regarding the possibility of Reed Smith representing LabMD in a lawsuit that LabMD told Stewart it would be filing against Tiversa and Boback in Pittsburgh if LabMD were unsuccessful in its attempts to overturn the district court's dismissals in the Georgia Action.

39. On January 17, 2013, Stephen F. Fusco, LabMD' general counsel, and I met personally with Stewart and Reed Smith partners Thomas Allen and Mark Melodia just outside of Pittsburgh for further consultations and privileged discussions regarding the possibility of Reed Smith representing LabMD in Pittsburgh.  The parties closed the meeting by agreeing to have further discussions regarding Reed Smith's representation of LabMD in that matter.

40. LabMD and I left the meeting with the understanding that one or more of the Reed Smith attorneys would get back to us for further discussions regarding their representation of LabMD in Pittsburgh.  Because our appeal to the Eleventh Circuit was pending, time was not of the essence.

41. After the Eleventh Circuit's ruling on February 5, 2013, LabMD was given until October 6, 2013, to file a petition for writ of certiorari to the U.S. Supreme Court.  A true and correct copy of this authorization is attached hereto and marked as Exhibit E.

42. As of September 13, 2013, LabMD was giving serious consideration to filing a petition for certiorari.  For reasons that included the events set forth below, we decided against filing a petition for certiorari shortly before October 6, 2013.

LabMD's Due Diligence – Tiversa and
Boback Sue LabMD and Me in Pittsburgh

43. LabMD heard nothing further from Reed Smith until September 13, 2013, when LabMD and I were served with the summons and complaint in the Federal Defamation Action when, much to our shock and surprise, we learned that *Reed Smith* was representing Tiversa and Boback *against* LabMD and me, personally, in the Federal Defamation Action.

44. Reed Smith *never* disclosed to LabMD that it could not represent LabMD in any matter adverse to Tiversa.  Reed Smith *never* disclosed to LabMD that (1) it *was* representing Tiversa during our earlier communications or (2) it took on the representation of Tiversa after our earlier communications.

45.   As with every one of LabMD's other attorneys, neither George L. Stewart II, Thomas Allen nor Mark Melodia ever suggested to us that LabMD might have a claim against Tiversa for fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, federal RICO or state RICO.  At no time before April 2, 2014, did George L. Stewart II, Thomas Allen or Mark Melodia ever suggest that the FTC was relying upon Tiversa's *lies*.

46. After LabMD and I were served in the Federal Defamation Action, LabMD decided to (1) pursue a motion to disqualify Reed Smith, (2) pursue a motion to dismiss and/or summary

judgment and, (3) if we were unsuccessful on the motion to dismiss and/or summary judgment, pursue the discovery that we were unable to pursue in the Georgia Action.

47. On December 20, 2013, Judge Fischer denied our motion to disqualify Reed Smith.

48. On April 21, 2014, Judge Fischer denied our motion to dismiss.

49. In a conference before Judge Fischer on June 10, 2014, Judge Fischer decided to postpone discovery until the parties could brief and she could resolve how discovery should proceed in light of the various positions taken by the parties at the conference.

50. At the initial case management conference held on July 21, 2014, Judge Fischer approved a phased discovery plan agreed upon by the parties.  After considerable discussion of the facts of the case, Judge Fischer said to Jarrod Shaw, counsel for Tiversa and Boback, "Because if it turns out, as Ms. Counts [counsel for LabMD and me] says, that maybe Tiversa doesn't have a case, then it seems to me that the honorable thing might be for Tiversa to withdraw their lawsuit."  A true and correct copy of the portion of the hearing transcript where that statement was made is attached hereto and marked as Exhibit F.

<u>LabMD's Due Diligence – Tiversa and</u>
<u>Boback Sue LabMD and Me, Again, in Pittsburgh</u>

51. Thereafter, Tiversa and Boback did not do the honorable thing.  Instead, on September 23, 2014, while the Federal Defamation Action was pending, Tiversa and Boback filed a Praecipe for Writ of Summons in the Court of Common Pleas of Allegheny County, showing LabMD, Inc. Michael J. Daugherty *and* LabMD's law firm as Defendants (the "State Defamation Action").  A true and correct copy of that Praecipe is attached hereto and marked as Exhibit G.

52. To my knowledge, Tiversa did not disclose the filing of the Praecipe for Writ of Summons in the Court of Common Pleas of Allegheny County to Judge Fischer.

53. By order dated October 29, 2014, Judge Fischer referred the Federal Defamation Action to Early Neutral Evaluation by the Honorable Kenneth J. Benson to be concluded by January 23, 2015, and stayed further discovery until resolution of the ADR process.

54. On October 31, 2014, after Tiversa's counsel learned of Judge Fischer's order referring the matter to Early Neutral Evaluation, Tiversa and Boback filed another Praecipe for Writ of Summons in the Court of Common Pleas of Allegheny County to add Richard E. Wallace as a new party defendant to the action Tiversa initiated on September 23, 2014.   A true and correct copy of that Praecipe is attached hereto and marked as Exhibit H.

LabMD's Due Diligence – Tiversa and Boback
Dismiss Federal Defamation Action Before Discovery

55. Tiversa dismissed the Federal Defamation Action on November 4, 2014, just five (5) days after Judge Fischer's order referring the matter to Early Neutral Evaluation.

56. LabMD opposed Tiversa's dismissal but lost that effort on December 1, 2014.

57. Tiversa's termination of the Federal Defamation Action prevented LabMD from taking any discovery in that case.

LabMD's Due Diligence – Tiversa Dismisses
State Defamation Action Before Discovery, Again

58.  On March 1, 2016, after a hearing before the Honorable Christine A. Ward in the State Defamation Action, and at her request, LabMD submitted a proposed order that would have permitted the parties 100 days of discovery related to LabMD's pending Motion for Sanctions. A true and correct copy of that proposed order is attached hereto and marked as Exhibit I.

59. On March 10, 2016, Tiversa filed a Praecipe for Discontinuance of the State Defamation Action.  Once again, Tiversa dismissed a case before LabMD could take any discovery.  A true and correct copy of that Praecipe is attached hereto and marked as Exhibit J.

LabMD's Due Diligence – LabMD Seeks
Discovery from Tiversa in Enforcement Action

60. The FTC filed an enforcement action against LabMD on August 29, 2013.  In re LabMD, in the United States Federal Trade Commission, Docket No. 9357 (the "Enforcement Action").  On August 29, 2013, LabMD believed that if we did *not* file a petition for certiorari to the U.S. Supreme Court in the Georgia Action (or if our petition was unsuccessful), Reed Smith was still a candidate to be LabMD's counsel in Pittsburgh for a lawsuit against Tiversa and Boback.  As noted above, however, I learned just a couple of weeks later that Reed Smith could not represent LabMD because it was representing Tiversa and Boback in the Federal Defamation Action *adverse* to LabMD and me.

61. By September 13, 2013, when we discovered Reed Smith's conflict, LabMD was heavily embroiled in the FTC enforcement action.  Between November 21, 2013, and April 20, 2014, forty-one (41) depositions were taken.  I attended almost all of those depositions.

62. The first deposition taken by the FTC in the Enforcement Action was of Boback on November 21, 2013.  This was the very first opportunity LabMD ever had to ask Boback questions in a formal setting.  Jarrod Shaw represented Boback at his deposition.  Boback testified about CX00019, an exhibit that he alleged was proof that Tiversa had found the 1718 File at four different locations on peer-to-peer networks.  A true and correct copy of CX00019 (which is also referred to herein as "Tiversa's Third Forensic Report")[1] is attached hereto and marked as Exhibit K.  LabMD now has proof that CX00019 is false evidence fabricated by Tiversa.

---

[1] Tiversa's first and second forensic reports, which pre-date the Third Forensic Report, are discussed below.

13

63. On November 21, 2013, when Boback was asked about Tiversa's dealings with the FTC, he lied: "I don't recall, specifically, FTC in any conversation, really, bringing up Lab MD, specifically, so if that helps you;" "I have had, in the totality of our time at Tiversa, I have had, what I believe to be, two meetings with the FTC;" and "We [The Privacy Institute] responded to the civil investigative demand exactly to the letter of what we had to, because it was a civil investigative demand. So, whatever the totality of those documents were, we responded accordingly."  True and correct copies of Boback's testimony containing these statements are attached hereto and marked as Exhibit L.

LabMD's Due Diligence –
Tiversa's Counsel's False Statements, Again

64. In a letter dated October 17, 2013, to LabMD's counsel, Reed Smith attorney Jarrod Shaw (representing Tiversa and Boback) stated as follows (all of which is now known to be false):

> If we are unable to reach a settlement, the evidence will indisputably show that Tiversa and Mr. Boback did not access, take, "invade" or ever obtain the File through a LabMD computer.  Instead, as a result of a LabMD computer downloading Limewire and making its files accessible to the peer-to-peer network, the File was shared with and downloaded by individuals that connected with LabMD's File.

> Moreover, the evidence will also show that the Plaintiffs accessed the File through a computer located in San Diego - and not the LabMD Computer - with an Internet Protocol Address of 68.107.82.250. Thus, any and all statements asserting or implying that the Plaintiffs accessed the File through a LabMD computer are demonstrably incorrect; the File had already been shared on the peer-to-peer network by LabMD at the time Tiversa and Mr. Boback came across it in February 2008.

A true and correct copy of Jarrod Shaw's October 17, 2013 letter (the "Reed Smith Disclosure") is attached hereto and marked as Exhibit M.  The Reed Smith Disclosure was made in and during the pendency of the Federal Defamation Action – a case that Tiversa would later dismiss on the eve of discovery.

65. The October 17, 2013 Reed Smith Disclosure was the first communication that LabMD ever received, from anyone, evidencing Tiversa's false statements as to source, disclosure and spread of the 1718 File.  At that time, however, LabMD had no reason to know (1) whether the statements were true or false, (2) whether the statements had been made to the FTC and, (3) even if I had reason to the believe that the statements *had been* made to the FTC and *were* false, I do not know how we would ever have proved the falsity of any of those statements without discovery in a lawsuit or whistleblowing from a Tiversa insider like Richard E. Wallace.

LabMD's Due Diligence – Tiversa<br>*Terminates* Wallace Before His Deposition

66. During Boback's deposition on November 21, 2013, we learned enough information about Tiversa employee Richard E. Wallace ("Wallace") that caused LabMD, on January 30, 2014, to served a *subpoena ad testificandum* on Wallace for a deposition to be taken in Pittsburgh on February 18, 2014.

67. By agreement of Tiversa's counsel (Jarrod Shaw) and FTC counsel, Wallace's deposition was postponed to March 4, 2014, to accommodate schedules.

68. On February 26, 2014, after the agreed-upon postponement, Tiversa's attorney, Jarrod Shaw, informed LabMD that Wallace was "no longer available" to be deposed due to an "unexpected medical issue."

69. On February 28, 2014, LabMD requested documentation from Tiversa to prove that Wallace could not comply with the subpoena due to a medical condition.  Tiversa, through Jarrod Shaw, refused to provide any documentation.

70. I later learned from Wallace that his employment at Tiversa was terminated on April 1, 2014, after Wallace refused to comply with Boback's demand that Wallace lie under oath to the federal government.

71. On Monday, April 7, 2014, Tiversa's attorney informed LabMD that Wallace was no longer employed by Tiversa and that Tiversa would not coordinate his deposition.

<u>LabMD's Due Diligence – With Reed Smith Out, LabMD Seeks</u>
<u>Other Counsel for Advice on Claims Against Tiversa and Boback in Pittsburgh</u>

72. On April 21, 2014, the day after depositions concluded in the Enforcement Action, and approximately three weeks after my conversations with Wallace, I began a series of meetings with attorneys in the Atlanta office of Greenberg Traurig for advice regarding claims to be filed against Tiversa and Boback in Pittsburgh.

73. Several weeks into our discussions, the attorneys at Greenberg Traurig informed me that they had a conflict of interest and, therefore, referred LabMD to attorneys at the law firm of Taylor English in Atlanta, Georgia, for advice regarding claims against Tiversa and Boback in Pittsburgh.

74. On or about August 11, 2014, I engaged attorneys at Taylor English to represent LabMD on claims to be filed against Tiversa and Boback in Pittsburgh.  Those attorneys then engaged other attorneys for assistance in researching for, preparing and filing this action on January 21, 2015, including attorneys at the law firm of Fox Rothschild to represent LabMD as local counsel.  Exhibit N hereto is a timeline my attorney prepared showing several of the various law firms LabMD consulted regarding filing claims against Tiversa and Boback in Pittsburgh.

LabMD's Due Diligence –
LabMD Seeks More Evidence from Tiversa

75. On May 2, 2014, LabMD served a *subpoena ad testificandum* on Boback compelling

him to appear in Washington, D.C. for testimony in the upcoming trial of the FTC's Enforcement

Action against LabMD.

76. On May 13, 2014 and May 14, 2014, Reed Smith attorneys John P. Feldman and

Jarrod D. Shaw, respectively, entered appearances in the Enforcement Action.

77. On May 20, 2014, trial began in Washington, D.C. in the Enforcement Action.

LabMD's Due Diligence – Tiversa Interferes by
Changing Testimony and Fabricating Evidence

78. On May 29, 2014, LabMD's counsel notified the FTC's trial counsel that the OGR

Committee had begun an investigation of Tiversa.

79. On May 30, 2014, Reed Smith attorney Jarrod Shaw told the FTC's trial counsel that

Boback had made a "misstatement" and needed to "clarify" his testimony on November 21,

2013.  A few days later, Shaw told the FTC's trial counsel that Tiversa had conducted another

spread analysis ("Tiversa's Fourth Forensic Report").  A true and correct copy of the Fourth

Forensic Report is attached hereto as Exhibit O.

80. On June 3, 2014, the OGR Committee issued a subpoena to Tiversa compelling it to

produce certain documents.

81. Tiversa produced its Fourth Forensic Report to the OGR Committee even though the

document was created outside of the time period specified in the subpoena.

82. The OGR Committee interviewed Boback on June 5, 2014.  The interview was

transcribed but was not made available to LabMD.

83. Boback's trial testimony in the Enforcement Action was taken by deposition in Pittsburgh, PA, on June 7, 2014.  Jarrod Shaw represented Boback at his deposition.  Boback testified that the Fourth Forensic Report was proof that Tiversa had located the 1718 File at seven (7) different locations on peer-to-peer networks.

84. Since April 2, 2014, LabMD has developed proof that the Fourth Forensic Report is based on fabricated evidence.

LabMD's Due Diligence – Tiversa Interferes with<br>Wallace's Testimony and Fabricates More Evidence

85. On October 1, 2014, LabMD filed in the Enforcement Action a motion for an order requiring Wallace to testify under a grant of immunity.

86. On October 14, 2014, Tiversa filed in the Enforcement Action a "Notice of Information Pertinent to Richard Edward Wallace's Request for Immunity," ("Notice") wherein Tiversa attempted to impugn Wallace's character and otherwise interfere with LabMD's request for Wallace to testify under immunity.  A true and correct copy of the Notice is attached hereto and marked as Exhibit P.

87. Tiversa included in its Notice emails dated November 6 and 9, 2012 (plus an attachment) allegedly from Wallace, supposedly evidencing Wallace's discovery of the 1718 File on seven (7) different locations on peer-to-peer networks (the "Fifth Forensic Report").  A true and correct copy of the Fifth Forensic Report is attached hereto and marked as Exhibit Q.

88. On October 15, 2014, Reed Smith attorney Jarrod Shaw filed another Notice of Appearance in the Enforcement Action.

89. On November 19, 2014, Chief Administrative Law Judge D. Michael Chappell ordered that the assertions and documents contained in Tiversa's Notice would be "disregarded

and will not be considered for any purpose." A true and correct copy of Judge Chappell's ruling

is attached hereto and marked as Exhibit R.

90. On November 14, 2014, the U.S. Attorney General approved the request for authority

to issue an order requiring Wallace's testimony and granting immunity.

LabMD's Diligence – Tiversa's Involvement
in the FTC Investigation and Enforcement Action

91. Exhibit S hereto is a collection of emails and evidence of voicemails by and between

Tiversa's counsel, FTC investigators and FTC trial counsel.

LabMD's Diligence –
Discovery of Tiversa's Lies to the FTC

92. On April 2, 2014, and thereafter, and at no time before April 2, 2014, I learned that

since 2008 or 2009, Tiversa had repeatedly and falsely stated to FTC investigators that:

- LabMD had publicly disclosed patients' personal identifying information and personal health information:

- Tiversa found LabMD's 1718 File on computers on peer-to-peer networks other than a LabMD computer; and

- Tiversa had proof that LabMD's 1718 File had proliferated to multiple places on peer-to-peer networks.

LabMD's Due Diligence –
Compulsory Processes Served on Tiversa

93. I have learned that in 2009, FTC investigators asked Tiversa for evidence regarding

private companies' alleged disclosure of files containing patient health information ("PHI") and

personal identifying information ("PII").

94. In response, Tiversa, Boback, FTC investigators and Tiversa's counsel agreed that (1)

Tiversa would create a shell company, (2) the FTC investigators would serve a civil investigative

demand on the shell company rather than on Tiversa, (3) Tiversa would produce evidence to the

19

FTC investigators (including the 1718 File) under the pretense that those items were being produced by the shell company, and (4) the FTC investigators and Tiversa would keep the identity and purpose of the shell company a secret.

95. In 2009, Tiversa directed its counsel at Morgan, Lewis & Bockius to incorporate the shell company as a *Delaware* corporation rather than a *Pennsylvania* corporation.

96. Tiversa and Boback named the shell company "The Privacy Institute."

97. In the summer of 2009, FTC investigators followed through on the plan to serve a civil investigative demand on The Privacy Institute (the "First Subpoena"). A true and correct copy of the First Subpoena is attached hereto and marked as Exhibit T.

98.  Tiversa dissolved The Privacy Institute on June 24, 2013, just two months before the FTC filed the Enforcement Action.

99. On September 30, 2013, in the Enforcement Action, the FTC served a *subpoena ad testificandum* and a *subpoena duces tecum* on Tiversa (the "Second Subpoena"). A true and correct copy of the Second Subpoena is attached hereto and marked as Exhibit U.

100.    On January 30, 2014, LabMD served a *subpoena ad testificandum* on Tiversa employee Richard E. Wallace ("Wallace") (the "Third Subpoena"), for a deposition to take place on February 18, 2014. A true and correct copy of the Third Subpoena is attached hereto and marked as Exhibit V.

101.    On June 3, 2014, the U.S. House of Representatives, through the Committee on Oversight and Government Reform (the "OGR Committee"), issued a subpoena to Tiversa compelling it to produce certain documents (the "Fourth Subpoena").

### LabMD's Due Diligence – Tiversa
### *Successfully Concealed* its First Forensic Report

102.    Shortly before Wallace testified in the Enforcement Action on May 5, 2015, I saw for the first time a Tiversa report dated April 18, 2008 (the "First Forensic Report").  A true and correct copy of Tiversa's First Forensic Report is attached hereto as Exhibit W.

103.    Tiversa prepared the First Forensic Report for CIGNA, one of Tiversa's customers, on or about April 18, 2008.

104.    Tiversa admits in the First Forensic Report that it found the 1718 File on a LabMD computer at LabMD's IP address in Atlanta, Georgia and nowhere else.  To be clear, the First Forensic Report does not say anything about any spread of the 1718 File to other IP addresses on peer-to-peer networks.

105.    Tiversa refused to produce the First Forensic Report in response to the First, Second, Third and Fourth Subpoenas.

### LabMD's Due Diligence – Tiversa
### *Successfully Concealed* its Second Forensic Report

106.    Shortly before Wallace testified in the Enforcement Action on May 5, 2015, I saw for the first time a Tiversa report dated August 12, 2008 (the "Second Forensic Report").  A true and correct copy of Tiversa's Second Forensic Report is attached hereto as Exhibit X.

107.    As with the First Forensic Report, Tiversa prepared the Second Forensic Report for CIGNA, one of Tiversa's customers.  The Second Forensic Report was prepared on or about August 12, 2008.

108.    Tiversa admits in the Second Forensic Report that it found the 1718 File on a LabMD computer at LabMD's IP address in Atlanta, Georgia.

109.    Tiversa refused to produce the Second Forensic Report in response to the First, Second, Third and Fourth Subpoenas.

LabMD's Due Diligence – Tiversa *Successfully*
*Concealed* an Internal Email with Critical Admissions

110.    In a congressional report titled, "Tiversa, Inc.: White Knight or Hi-Tech Protection Racket" dated January 2, 2015, and embargoed until after the May 5, 2015 immunized testimony of a whistleblower and former Tiversa employee Richard E. Wallace (the "OGR Report"), I saw for the first time portions of an internal email dated September 5, 2013, from Boback to Dan Kopchak, Tiversa's chief financial officer, and Molly Trunzo, secretary to Tiversa's board of directors ("Tiversa's Internal Email").  A true and correct copy of a complete version of "Tiversa's Internal Email" is attached hereto and marked as Exhibit Y.

111.    Boback admits in Tiversa's Internal Email that the 1718 File originated and that Tiversa took the file directly from a LabMD computer in Atlanta, Georgia in 2008.

112.    Tiversa refused to produce the Tiversa Internal Email in response to the Second Subpoena.

113.    Exhibit Z hereto are two timelines prepared by my attorney showing Tiversa's involvement in the Georgia Action, the Federal Defamation Action, the State Defamation, the Congressional Investigation and the Enforcement Action.

114.    Exhibit AA hereto contains true and correct copies of recent publications regarding the March 1, 2016 FBI raid on Tiversa's headquarters in Pittsburgh.

115.    Exhibit BB hereto is a true and correct copy of an expert report authored by Adam Fisk.

I declare, under penalty of perjury under the laws of the United States of America, that

the facts stated in the enumerated paragraphs herein are true and correct.

Executed on April 8, 2016.

Michael J. Daugherty, individually and as
duly authorized representative of LabMD,
Inc.