# Exhibit Y

| | |
|---|---|
| From: | Robert Boback <rboback@tiversa.com> |
| Sent: | Thursday, September 5, 2013 3:20 PM |
| To: | Dan Kopchak <dkopchak@tiversa.com>; Molly Trunzo <mtrunzo@tiversa.com> |
| Subject: | Tiversa |

I wanted to provide updated information regarding the question of litigation involving Tiversa. During our call, I discussed litigation in which Tiversa is a pla[intiff] against our former patent firm. That is still ongoing. Earlier in 2013, Tiversa was also engaged in a separate litigation with a company called LabMD, which is base[d] in Georgia. Tiversa, Dartmouth College and Professor Eric Johnson (Tuck Business School) was sued by LabMD by its CEO, Michael Daugherty as he alleged that Tiversa "hacked" his company in an effort to get a file containing nearly 9,000 patient's SSNs and medical information and provided the information to Dartmouth and Eric Johnson for a DHS-funded research project. Mr. Daugherty has little to no understanding of P2P or information security which is what caused him to think that he was "hacked" and which resulted in his widespread government conspiracy theory that followed. He also suggested in the litigation that because he woul[d] not do business with Tiversa to remediate the problem, that Tiversa "kicked the file over to the feds [FTC]" (and Dartmouth) and the FTC sent him a questionnaire about the breach, which caused him "great harm" due to the widespread "government shakedown of small business." He claimed that Tiversa was attempting to extort money from him to "answer his questions" as a part of the larger conspiracy. The reason that I did not mention this during our discussion is that the case was dismissed due to jurisdiction (his real estate attorney friend filed it in Georgia). He subsequently appealed two times, and lost both, the final of which was ruled on in February 2013. As an interesting sidebar to this story, Mr. Daugherty began writing a book about the government overreach and his great conspiracy theory o[f] the government war on small business. When our attorneys learned of what was coming in the book (from his blog postings about the book), we quickly served his counsel with a C&D as his "true story" was full of inaccurate statements about me and Tiversa. Unfortunately, Mr. Daugherty sees himself as "Batman" (no joke) and he chose to continue on with his book and starting scheduling speaking engagements where he would discuss his "true story" about how the government is out to "get" small business and that the FTC and Tiversa (and presumably Dartmouth) are the ring leaders. His book, "Devil Inside the Beltway" is to be released later this month. While I do not expect this book to be on the NY Times best seller list, I cannot sit idly by and allow such a gross distortion of the facts and mischaracterization of Tiversa, and me, in his efforts to sell his book and create a "name" for himself on any speaking tour.

That said, Tiversa filed a complaint in federal court today citing a number of counts including but not limited to Defamation, Slander, Libel, and others against Mr. Daugherty and LabMD. Tiversa is not litigious and it was our hope that he would conduct himself appropriately after receiving the C&D in November of 2012. But again, he sees himself as Batman.

Here is the real series of events that occurred in this case:

Tiversa, as you know, downloads leaked information on behalf of clients, individual, corporate and/or federal. In the process of downloading information, we often get files that are not related to our clients but are nonetheless sensitive. We call this "dolphin in the tuna net"....for example, if we were looking for "Goldman Sachs" and our system finds a file with the term "Goldman" in it. The file may have the name "Henry Goldman" but our system just saw "Goldman" and downloaded it, in the event it related to Goldman Sachs. After the file would be downloaded, it would be reviewed by an Analyst which would determine that it was NOT related to Goldman Sachs, but it may or may not include SSNs or other sensitive information. This was the case with LabMD.

In 2008, while doing work for a client, our systems downloaded a file (1,718 page pdf) that contained sensitive information including SSNs and health information for over 9000 people. The file had the name "LabMD" in both the header of the file and the metadata. The IP of the download was found to be in Georgia, which after a Google search, is where we found LabMD's office to be located. At this point, we were not positive that the file belonged to LabMD, but it seemed probable. We could have chosen to do nothing at all and pretend that we never saw the file. That approach would leave both LabMD and the 9000 victims at very high risk (and growing) of fraud and identity theft. Needless to say, we contacted the company to inform them of the file with their company name on it. After providing the file with all of the information that we had, the Mr. Daugherty asked us for additional information that we did not have. We told him that we could perform the services but it would take a few weeks and would cost about $15K. After hearing this, he asked us to send him the SOW for the services. 3 weeks after providing the SOW and not hearing anything in return, I reached out to Mr. Daugherty to see if he had any questions (re: SOW) and he told me never to contact him again with no further explanation. We didn't.

Tuck Business School at Dartmouth (and Professor Eric Johnson) used Tiversa in early 2006 for a research project to determine to what extent, if any, leaked financial documents were able to found on P2P networks. The research consisted of Dartmouth providing simple and straightforward search terms to Tiversa like "bank" and "account" to locate and download files using Tiversa's engine to a hard drive that Dartmouth owned and controlled. Tiversa only issued the searches but was not able to see the actual downloads. The downloads were stored on a hard drive that graduate students at Dartmouth were to later evaluate. Although Dartmouth was researching this using resources from a grant by DHS, Tiversa was not paid anything for our participation. The research was impactful and resulte[d] in a number of articles being published. With the prior success of the financial research, Dartmouth wanted to followup with a second research project focused on medical information in 2008. Following the exact same procedure, the medical research was completed and widely published in early 2009. Again, Tiversa did not receive any compensation whatsoever for our part in the project. Upon reading the research paper, one of the many example files that were used to demonstrate the problem was the file in question with LabMD. Tiversa did not know that the file was included in the research as we did not see the downloads, only the search terms. Frankly, it was not surprising that the file was found because it was never addressed with LabMD therefore the file continued to spread across the P2P network.

I was called to testify before Congress twice in 2009, once in May and the second in July, as they were investigating breaches of security via P2P. At the directio[n of] Congress, Tiversa was asked to demonstrate the extent and severity of the problem. Tiversa then provided Congress with numerous, redacted, examples of file disclosure that affected government, private and public enterprises, and individuals. Shortly after the hearings, Tiversa was visited by the FTC. The senior representatives from the FTC wanted to see the non-redacted versions of the files discussed with Congress as one of their missions is to help consumers handle ID theft. When Tiversa asked what would happen if we refused to provide the information, the FTC stated that they would issue a Civil Investigative Demand (CID[)] which acts as a federal subpoena to gain access to the information. We told them that they would need to do that and then we would provide the information in accordance with the subpoena. The FTC issued a subpoena that asked us to provide any file, regardless of source, that disclosed >100 SSNs. We provided over 100 files to the FTC in accordance with the federal subpoena and the LabMD file was still one of them as it remained on the P2P network. We had no insight/control as to what the FTC was going to do with the information once they received it. Tiversa was not compensated in any way for providing this information to the FTC.

Apparently, the FTC sent questionnaires to some, if not all, of the companies or organizations that breached the sensitive information. The FTC posted on its website a copy of a standard letter(s) that was sent, which is how we knew that they had sent a letter or letters. We had no further communication with the FT[C] regarding the breaches or their investigations.

LabMD sued Tiversa/Dartmouth/Eric Johnson. Case was dismissed (all three times) for jurisdiction issues.

Mr. Daugherty starts writing his book about his problems and blames everyone but himself and his lax security measures at LabMD. He refuses to provide any information to the FTC questionnaire saying it's a "witch hunt."

To this date, I have not heard of Mr. Daugherty spending a single penny in notification or protection of ANY of the over 9000 cancer/medical patients in which he violated their privacy and well established HIPAA laws. He sees himself as the "victim" when he is actually the perpetrator. He intends to capitalize on his "victim" status by becoming "Batman" on a crusade for all Americans against government overreach.

The FTC sued Mr. Daugherty and LabMD last week for his non-compliance with a federal subpoena (CID). In the FTC complaint, it noted that over 500 people [of the 9000 in the LabMD file] have become victims of ID theft and fraud according to a Sacramento, CA Police Department investigation. I would suppose that multip states AG's offices could pursue litigation against LabMD and Mr. Daugherty as well for not notifying the individuals (that reside in the various states) that their information had been breached. It is a requirement in 47 of the 50 states. I also only suppose that it is matter of time before there will be a class action suit file against LabMD and Mr. Daugherty for the continued reckless breach of patient information.

Mr. Daugherty continues to hype his book, even going as far to have a cheesy trailer made about the book which is full of false statements regarding Tiversa and me. He continues to suggest that Tiversa is "government funded" which we are not, and never have been. Tiversa has only received one round of funding in 2006 by Adams Capital Management.

In my opinion, he needs to draw some connection between Tiversa, "hacking" and the government in an effort to sell his book and, more importantly, claim that he was not required to compensate the 9000 true victims of this story.

Tiversa filed a Defamation suit against LabMD and Mr. Daugherty in federal court on September 5, 2013.

Essentially, Tiversa was trying to help the 9000 people by informing LabMD that there was a problem. Unfortunately, LabMD took the "shoot/sue the messenger" approach.

Confidential – For Committee and Staff Use Only          TIVERSA OGR 0028867