IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LABMD, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 15-92 |
| | ) | |
| | ) | Judge Mark R. Hornak/ |
| TIVERSA HOLDING CORP. *formerly* | ) | Chief Magistrate Judge Maureen P. Kelly |
| *known as* TIVERSA, INC.; ROBERT J. | ) | |
| BOBACK; M. ERIC JOHNSON; DOES | ) | |
| 1-10, | ) | Re: ECF No. 137 |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION**

### I.     **RECOMMENDATION**

Plaintiff LabMD, Inc., a Georgia corporation, ("LabMD") has filed this civil action asserting claims for defamation *per se*, tortious interference with existing and prospective business relationships, fraud, negligent misrepresentation and civil conspiracy. The claims arise out of an alleged shakedown scheme executed by Defendant Tiversa, Inc., a Pennsylvania corporation, ("Tiversa"), Defendant Robert J. Boback, a Pennsylvania resident, ("Boback") (collectively, "Defendants").[1]

For the following reasons, it is respectfully recommended that the Motion to Dismiss presently before the Court, filed by Defendants, ECF No. 137, be granted in part and denied in part.

---

[1] Defendants Does 1-10 are identified in the Amended Complaint as "as-yet unidentified individuals or entities that actively participated in and/or materially benefitted from the illicit conduct detailed herein" who "will be substituted with the proper names of these individuals or entities as they become available." ECF No. 125 ¶ 9. No such substitution has been made and these defendants obviously have not been served with the Amended Complaint.

## II.    REPORT

### A.    FACTUAL AND PROCEDURAL BACKGROUND

The instant iteration of this litigation was commenced via a Complaint filed by LabMD with this Court on January 21, 2015.  ECF No. 1.  On January 8, 2016, following litigation of two Motions to Dismiss that Complaint, ECF Nos. 34 and 36, Counts I, VII and VIII of the original Complaint were dismissed with prejudice.  ECF No. 115.  Counts II and III were dismissed with prejudice against Defendant M. Eric Johnson, who is no longer a party to this case.  Id.  Counts II, III, IV, V and VI were dismissed without prejudice and with leave to amend.  Id.  LabMD subsequently filed a Motion for Reconsideration of the January 8, 2016, Order.  ECF No. 117.  Following extensive briefing thereupon, the Court denied the Motion for Reconsideration, ECF No. 130, and issued a Memorandum Opinion, ECF No. 129, in which it revised its rationale for its holding as to Count I and revisited several arguments as to statutes of limitations.

On February 12, 2016, LabMD filed the operative Amended Complaint.  ECF No. 125. On March 11, 2016, Defendants filed the instant Motion to Dismiss and Brief in support.  ECF Nos. 137-138.  On April 8, 2016, LabMD filed its Brief in opposition to the Motion to Dismiss. ECF No. 144.  On April 29, 2016, Defendants filed a Reply Brief.  ECF No. 151.  On June 2, 2016, LabMD filed a supplemental Brief in Opposition.  ECF No. 157.  The Motion to Dismiss is now ripe for review.

The allegations in the Amended Complaint describe the shakedown scheme as one in which Defendants conspired to infiltrate LabMD's computer systems and, upon gaining access, created a data security breach in LabMD's computer files.  ECF No. 125 ¶ 4.  Through this breach, Tiversa obtained a 1718-page file containing confidential patient health-related data ("the

1718 File"). Id. ¶ 37.  With this file as proof of a breach, Tiversa then offered to sell LabMD services to remedy the breach.  Id. ¶ 43  When LabMD refused to purchase Tiversa's services, Defendants turned to the Federal Trade Commission ("FTC") and reported that due to LabMD's failed data security protocols, confidential patient health and personal information was disseminated on peer-to-peer[2] networks for unbridled use by identity thieves.  Id. ¶¶ 77-83.  The FTC instituted an administrative action.  In the Matter of LabMD, Inc., No. 9357 (F.T.C.).[3]

LabMD alleges that as a result of Defendants' conduct, it is now "an insolvent shell of a company."  Id. ¶ 1.

### B.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Dismissal of a complaint or portion of a complaint is warranted under Federal Rule of Civil Procedure 12(b)(6) when a claimant fails to sufficiently state a claim upon which relief can be granted.  Avoiding dismissal under Rule 12(b)(6) requires that the complaint to provide "enough factual matter (taken as true)" to suggest the required elements of the claim presented while providing the defendant with fair notice of the grounds upon which the claim rests.  Phillips v. County of Allegheny, 515 F. 3d 224, 233, 234 (3d Cir. 2008).  The pleader must "'nudge his or her claims across the line from conceivable to plausible.'"  Id. (quoting Bell Atlantic Co. v. Twombly, 550 U.S. 544 at 570 (2007)).

In assessing the merits of a claim subject to a motion to dismiss, a court must accept all alleged facts as true and draw all inferences gleaned therefrom in the light most favorable to the non-moving party.  Phillips, 515 F. 3d at 228 (citing Worldcom, Inc. v. Graphnet, Inc., 343 F. 3d

---

[2]  Also referred to "P2P."
[3]  On July 29, 2016, the FTC issued a final order concluding that LabMD's data security practices were unreasonable and constituted a violation of Section 5 of the Federal Trade Commission Act.

651, 653 (3d Cir. 2003)).  A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'"  Fowler v. UPMC Shadyside, 578 F. 3d 203, 213 (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)).

## C.     DISCUSSION

As to each of LabMD's claims, Defendants argue in the pending Motion to Dismiss that: (1) the claim is substantively deficient; and (2) the claim is time-barred due to the expiration of the statute of limitations.  A discussion of these arguments, as necessary, for each claim follows.

### 1.     Count II: Defamation (All Defendants)

#### a.     LabMD claims

In its Amended Complaint, LabMD alleges that Defendants made 20 defamatory statements which diminished LabMD's reputation and hurt its business by casting doubt on its identity as "a business that operates legally, ethically and honestly."  ECF No. 125 ¶ 160. LabMD classifies the allegedly defamatory statements into three groups: (1) statements indicating that LabMD publicly disclosed its patients' personal health information ("PHI") and personal identifying information ("PII"), id. ¶ 73; (2) statements regarding the source of the 1718 file, id. ¶ 74; and (3) statements that the 1718 file proliferated to multiple places, id. ¶ 75. LabMD refers to these categories, respectively, as "Disclosure," "Source," and "Spread."  Id. ¶¶ 73-76.

#### b.     Substantive Deficiency

Under the relevant Pennsylvania statute, the elements of a defamation claim are:

(a) *Burden of plaintiff.* -- In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

4

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

(b) *Burden of defendant.* -- In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:

(1) The truth of the defamatory communication.

(2) The privileged character of the occasion on which it was published.

(3) The character of the subject matter of defamatory comment as of public concern.

42 Pa. Con. Stat. § 8343.

### (1)     Defamatory Statements 1-3

LabMD identifies Defamatory Statements 1, 2 and 3 as statements to the "following effect," respectively: (1) "LabMD had publicly disclosed patients PII and PHI;" (2) "LabMD's 1718 File was found somewhere other than on a LabMD computer;" and (3) "LabMD's 1718 File had proliferated to multiple places on peer-to-peer networks." ECF No. 125 ¶ 83. LabMD alleges that these statements were made by Tiversa to FTC investigators in 2009. Id.

Defendants argue: (1) these statements are not sufficiently identified; and (2) these statements are absolutely privileged under Pennsylvania law. ECF No. 138 at 27-29. LabMD disputes Defendants' interpretation of the relevant law. ECF No. 144 at 17-21.

As to Defendants' first argument, that LabMD insufficiently identifies only the general topic/effect of the statements, the Court is not convinced. A plaintiff is not required to plead "the precise defamatory statements" or "specifically name the person who made the statement," as long its defamation count "provides sufficient notice to defendants." Rishell v. RR Donnelley & Sons Co., Civ. A. No. 06-4782, 2007 U.S. Dist. LEXIS 38325, *9 (E.D. Pa. May 24, 2007)

5

(citations omitted). Here, although LabMD does not allege the precise language of the alleged defamatory statements, its description of their subject provides sufficient notice to Defendants.

Defendants' second argument, however, that these statements are absolutely privileged under Pennsylvania law, is convincing. Defendants argue that, because the statements are alleged to have been made to FTC investigators,[4] they were absolutely privileged as statements preliminary to a judicial proceeding. ECF No. 138 at 28 (citing Pawlowski v. Smorto, 588 A.2d 36 (Pa. Super. Ct. 1991)(explaining absolute judicial privilege and finding it applicable to private parties involved in providing information to proper authorities in investigatory stages of case)). LabMD disagrees, asserting that the privilege does not apply because the statements were not made in connection with a civil suit or in relation to a court of competent jurisdiction. ECF No. 144 at 19. However, quasi-judicial proceedings, such as those before a regulatory body like the FTC, qualify as events for which the judicial privilege applies. See Schutter v. Herskowitz, Civ. A. No. 07-3823, 2008 WL 2726921, at *13 (E.D. Pa. July 11, 2008) (finding a statement made to a regulatory body responsible for promulgating and enforcing regulations was absolutely privileged); Doe v. Wyo. Valley Health Care Sys., 987 A.2d 758, 766-67 (Pa. Super. Ct. 2009) (explaining that privilege applies in quasi-judicial proceedings). Thus, LabMD's arguments in opposition are unavailing. Because it appears that the statements made to FTC investigators were absolutely privileged, it is recommended that the portion of the Count II based on Defamatory Statements 1-3 be dismissed.

### (2)    Defamatory Statement 4

LabMD identifies Defamatory Statement 4 as "CX00019," a document that Tiversa provided to the FTC, which was later relied upon by the FTC as evidence of wrongdoing by LabMD. ECF No. 125 ¶ 103. This document identified four IP addresses at which Tiversa

---

[4] As discussed above, the FTC did pursue action against LabMD.

supposedly found the 1718 File on peer-to-peer networks. Id. For the reasons set forth above in

regards to Defamatory Statements 1-3, statements in this document are absolutely privileged. It

is therefore recommended that the portion of the Count II based on Defamatory Statement 4 be

dismissed.

### (3)    Defamatory Statements 5-9

LabMD identifies Defamatory Statements 5-9 as the following statements published by

Defendants in a May 28, 2009, press release:

> Tiversa today announced the findings of new research that revealed
> 13,185,252 breached files emanating from over 4,310,839 sources on P2P
> filesharing networks within a twelve month period from March 01, 2008 -
> March 01, 2009. (Defamatory Statement No. 5).
>
> This new data clearly demonstrates that P2P file-sharing risk is not
> effectively being addressed by the security protocols of Fortune 500
> companies and government agencies, as these organizations commonly
> have exposure across the Extended Enterprise. (Defamatory Statement No.
> 6).
>
> Findings released in February 2009, in a collaborative research study ("Data
> Hemorrhages in the Health-Care Sector") between Tiversa and The Tuck
> School of Business at Dartmouth College highlight these same risks by
> focusing on the exposure rate of sensitive data in the healthcare industry.
> (Defamatory Statement No. 7).
>
> Over a two-week period, Dartmouth College researchers and Tiversa
> searched file-sharing networks for key terms associated with the top ten
> publicly traded health care firms in the country, and discovered a treasure
> trove of sensitive documents. (Defamatory Statement No. 8).
>
> Also identified was a 1,718-page document from a medical testing
> laboratory containing patient Social Security numbers, insurance
> information, and treatment codes for thousands of patients …. (Defamatory
> Statement No. 9).

ECF No. 125 ¶ 130.

Defendants assert that "LabMD has not and cannot plead that any recipient could

understand Defamatory Statements 5-9 apply to LabMD," ECF No. 138 at 30., i.e., the fifth

7

statutory requirement set forth above. LabMD offers no response to this argument.[5] Obviously, Statements 5-9 do not identify LabMD by name. LabMD has failed to provide any factual matter to suggest how the understanding of these statements by the recipient was intended to be applied to LabMD. Because such understanding is a required element of defamation, it is recommended that the portion of the Count II based on Defamatory Statements 5-9 be dismissed.

### (4)    Defamatory Statements 10-14

LabMD identifies Defamatory Statements 10-14 as the following statements published by Defendants in a February 10, 2015, statement to "The Pathology Blawg":

> After all, we found this file in a public file sharing network that was accessible by millions of people from around the world. (Defamatory Statement No. 10).

> The FTC then filed a Civil Investigative Demand (CID) that forced Tiversa to comply. In compliance with the CID, Tiversa provided information on 84 companies that were breaching information and that matched the criteria of the CID. LabMD was one of those listed. (Defamatory Statement No. 11).

> Tiversa has not had a single criminal allegation alleged against us by any individual or organization in our entire 11 year history …. not even Daugherty or LabMD, despite the defamatory and baseless allegations of extortion, theft and fraud. One would think that if Daugherty truly believed he was the victim of an actual extortion plot, as he has suggested, he would have called the police or FBI. To my knowledge, he has not. It is my belief that he knows that if he files a false police statement, he could be prosecuted, which may be the likely reason why he has decided not to do so. (Defamatory Statement No. 12).

> LabMD lawsuit - The claims are baseless and completely unsubstantiated …. even in the complaint itself. This appears to be another attempt by Daugherty to distract people from the INDISPUTABLE FACT that LabMD and Michael Daugherty leaked customer information on nearly 10,000 patients. (Defamatory Statement No. 13).

> To my understanding from the deposition transcripts, LabMD had a policy against installing file sharing software. An employee at LabMD violated

---

[5]  LabMD does acknowledge Defendants' argument, but baldly asserts that it does "not defeat Plaintiffs' defamation claim." ECF No. 144 at 23.

> that policy, which resulted in the exposure of nearly 10,000 patients[']
> private information.   This clearly demonstrates that LabMD DID NOT
> adequately protect their patient's [sic] PHI/PII, which is al[l] that the FTC
> needs to demonstrate.   Case closed.   The rest of this is just a desperate
> attempt to distract everyone from that INDISPUTABLE FACT.
> (Defamatory Statement No. 14).

ECF No. 125 ¶ 133.

Defendants assert that these statements do not constitute defamation because they are either true or are non-actionable opinions. ECF No. 138 at 30-32. Indeed, a defamation claim may be dismissed when the affirmative defense of truth is apparent on the face of a complaint. Morrison v. Chatham Univ., Civ. A. No. 16-476, 2016 U.S. Dist. LEXIS 121227, * 11-12 (W.D. Pa. Sept. 8, 2016). Further, expressions of opinion cannot support an action in defamation. Constantino v. Univ. of Pittsburgh, 766 A.2d 1265, 1270 (Pa. Super. Ct. 2001).

In its response to Defendants' Motion to Dismiss on these bases, LabMD addresses only one of the statements, Defamatory Statement 13, and focuses on the phrases, "indisputable fact," and "leaked customer information." ECF No. 144 at 21-23. Thus, it appears that LabMD has conceded that Defamatory Statements 10-12 and 14 are not defamatory.

As for Defamatory Statement 13, Defendants argue that the qualifying language, "this appears to be," renders the entire statement a non-actionable opinion. ECF No. 138 at 32. However, a fair reading of the statement reveals that the identified qualifying language does not qualify the part of the statement LabMD claims is defamatory, i.e., "the INDISPUTABLE FACT that LabMD and Michael Daugherty leaked customer information on nearly 10,000 patients." As that statement is defamatory on its face, it is recommended that the portion of the Count II based on Defamatory Statements 10-14 be dismissed only as to Defamatory Statements 10, 11, 12 and 14. It is recommended that the portion of Count II based on Defamatory Statement 13 survive.

### (5)    Defamatory Statements 15-20

LabMD identifies Defamatory Statements 15-20 as the following statements published by

Defendants in a letter to the editor of The Wall Street Journal, published in the December 9,

2015, edition:

> LabMD, a Georgia-based cancer screening company, admits its own
> employee mistakenly exposed the confidential medical records of nearly
> 10,000 individuals on the Internet. (Defamatory Statement No. 15).
>
> LabMD's CEO Michael Daugherty admits that a LabMD employee
> improperly installed LimeWire file-sharing software on a company
> computer.    Doing so made confidential patient information publicly
> available over the Internet. (Defamatory Statement No. 16).
>
> Using this information, LabMD discovered that it had peer-to-peer sharing
> software on a company computer.  Without Tiversa's free information,
> LabMD would have never known it was continuing to publicly expose
> patient information. (Defamatory Statement No. 17).
>
> The suggestion that Tiversa provided information on exposed files to the
> Federal Trade Commission as a means of retribution because LabMD didn't
> hire Tiversa is 100% false. (Defamatory Statement No. 18).
>
> In the Fall of 2009 - well over a year later - as part of its investigation into
> cyber leaks, the FTC issued the equivalent of a subpoena to Tiversa, which
> legally required us to provide information on all the breaches we found
> from many companies.    There was absolutely no "deal" entered into
> between the FTC and Tiversa. It is no different than the subpoena the FTC
> issued on LabMD.  LabMD was legally required to respond, as was Tiversa.
> (Defamatory Statement No. 19).
>
> As a result of this dispute, LabMD's CEO has defamed my company and
> made statements that are 100% wrong. (Defamatory Statement No. 20).

ECF No. 125 at 35-36.

Defendants assert that these statements cannot support a defamation claim because

Defamatory Statements 15-17 are true, Defamatory Statement 18 cannot be understood to apply

to LabMD, Defamatory Statement 19 is true and Defamatory Statement 20 is an opinion. ECF

No. 138 at 32-33. LabMD offers no directly responsive argument, but rather disputes only the

10

portion of these statements wherein its patient information is characterized as "publicly available." ECF No. 144 at 23-24. Thus, it appears that LabMD has conceded that Defamatory Statements 15 and 17-20 are not defamatory.

As to the remaining statement, Defamatory Statement 16, Defendants assert that LabMD admits that this statement is true. ECF No. 138 at 32. Defendants base this assertion on an allegation in the Amended Complaint wherein LabMD alleges, "The 1718 File was a victim of inadvertent file sharing," ECF No. 125 ¶ 37. LabMD disputes the characterization of the confidential patient information as "publicly available." ECF No. 144 at 23-24. Even if such information was technically accessible via inadvertent file sharing, the argument goes, it was, at a minimum, not legally available to the public. Id. Because the meaning of "publicly available," is subject to interpretation, the Court cannot say that LabMD cannot maintain a defamation claim as to Defamatory Statement 16. Accordingly, it is recommended that the portion of the Count II based on Defamatory Statements 15-20 be dismissed only as to Defamatory Statements 15 and 17-20. It is recommended that the portion of Count II based on Defamatory Statement 16 survive.

### c.    Statute of Limitations

Defendants' assertions concerning the statute of limitations for Count II are limited to Defamatory Statements 1-9. Because it is recommended that Count II survive only as to Defamatory Statements 13 and 16, there is no need to address the statute of limitations.

### 2.    Count III: Tortious Interference with Existing and Prospective Business Relationships (All Defendants)

#### a.    LabMD claims

In Count III of the Amended Complaint, LabMD alleges, *inter alia*, that:

11

175. By engaging in the above described misconduct, Defendants have substantially harmed and/or seriously jeopardized LabMD's reputation and goodwill in the healthcare industry and its existing and prospective business relationships with employees, patients, providers, third party payors, insurance carriers, referral sources, and others.

176. Defendants knew or should have known that the above described misconduct would substantially harm and/or seriously jeopardize LabMD's reputation and goodwill in the healthcare industry and its existing and prospective business relationships with employees, patients, providers, third party payors, insurance carriers, referral sources, and others.

ECF No. 125 ¶¶ 175-176.

### b. Substantive Deficiency

Pennsylvania recognizes interference with existing contractual relations and interference with prospective contractual relations as branches of the tort of interference with contract. Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 530 (3d Cir. 1998) (citing U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 925 (3d Cir. 1990)). Although they are distinct, the two types of torts share essentially the same elements. Brokerage Concepts, Inc, 140 F.3d at 529. These elements include:

> 1. the existence of a contractual, or prospective contractual relation between [the plaintiff] and a third party;
> 2. purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent the prospective relation from occurring;
> 3. The absence of a privilege or justification on the part of the defendant;
> 4. the occasioning of actual legal damage as a result of the defendants' conduct; and
> 5. for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the interference of the defendant.

Id. at 530 (citing Pelagatti v. Cohen, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1988); Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979); Birl v. Philadelphia Elec. Co., 167 A.2d 472, 474 (Pa. 1960)).

In the instant Motion to Dismiss, Defendants argue that these claims are substantively deficient in that LabMD fails to allege facts in support of the second requisite element of this cause of action. Defendants claim that the Amended Complaint lacks any factual allegations to show that Defendants had knowledge of the existence of the contracts allegedly interfered with or to show that Defendants took purposeful action specifically intended to harm existing relationships, or to prevent prospective relationships from occurring. ECF No. 138 at 33-34. However, in the Amended Complaint, LabMD alleges, *inter alia*:

> 142.    Boback and Tiversa knew that if they, directly or indirectly, represented to any of LabMD's employees, patients, providers, third party payors, insurance carriers and referral sources that LabMD had failed to keep [personal health information] and [personal identifying information] confidential, that such representations would erode if not eradicate the confidence that employees, patients, providers, third party payors, insurance carriers and referral sources had in LabMD.
>
> . . .
>
> 149.    The False and Defamatory Statements Regarding Disclosure, Source and Spread and other misconduct were done with the specific intent to harm LabMD's existing and prospective contractual relationships. Specifically, Boback and Tiversa wanted to put LabMD out of business (1) to prevent LabMD from learning and disclosing the truth behind their False and Defamatory Statements Regarding Disclosure, Source and Spread and (2) in retribution of the fact that LabMD did not hire Tiversa, that LabMD's chief executive officer published *The Devil Inside the Beltway* and that LabMD disclosed and challenged Tiversa and Boback's coercive business practices.
> . . . .
>
> 150.    Boback and Tiversa were purposeful in their actions to destroy LabMD. ... Boback and Tiversa also purposely acted, as discussed above, to injure LabMD's reputation to prevent employees, third party payors, insurance carriers and other from dealing with it.

ECF No. 125 ¶¶ 142, 149-150.

These allegations appear to remedy the previously identified problem with this claim; however, because the only two surviving Defamatory Statements are from 2015, these statements

cannot be the basis for a tortious interference claim for a company that was effectively out of business by January 2014. See id. ¶ 145. To the extent that LabMD is also basing this claim on eight "False Statements," identified in the Amended Complaint, see id. ¶ 149, such basis will be addressed below in the context of the statute of limitations for this claim.

Accordingly, it is recommended that the portion of Count III based on the alleged Defamatory Statements be dismissed.

### c.     Statute of Limitations

As to the remaining portion of Count III, tortious interference based on eight identified "False Statements," it is noted that each of these False Statements was made in 2008 to LabMD or an employee thereof.[6]   ECF No. 125 ¶¶ 43, 45, 47, 49, 51, 53, 55 and 57.   The statute of limitations for tortious interference is, at most, two years. Evans v. Philadelphia Newspapers, Inc., 601 A.2d 330, 333 (Pa. Super. Ct. 1991) (explaining that gravamen for tortious interference claim controls its statute of limitations); 42 Pa. Cons. Stat. § 5524 (two-year statute of limitations for torts); 42 Pa. Cons. Stat. § 5523(1) (one-year statute of limitations for defamation).   A claim based on statements made to LabMD directly in 2008 was time-barred by the filing of this January 21, 2015, action.

Accordingly, it is recommended that Count III be dismissed in its entirety.

### 3.     Count IV: Fraud (All Defendants)

#### a.     LabMD Claims

Count IV of the Amended Complaint is identical to Count IV of the original Complaint.[7] LabMD alleges therein that Defendants are liable for fraud.   LabMD asserts that, in order to

---

[6]  It is worth noting that statements made to LabMD or its employees would be unlikely to have any effect on parties outside of LabMD.

[7]  The sole difference is a relabeling of the Defendants (from "Defendants Tiversa and Boback" to "all Defendants"). ECF No. 1 at 15; ECF No. 125 at 45.

14

induce it to obtain Tiversa's services, Defendants made knowingly false statements concerning how they had obtained the 1718 File and the extent to which third parties were downloading copies of the 1718 File. ECF No. 125 ¶¶ 181-182. LabMD further alleges that it relied on these statements to its detriment, in that it spent time and money attempting to detect and remedy phantom data breaches. Id. ¶¶ 184-186.

### b.   Substantive Deficiency

In the Report and Recommendation as to the original Complaint, this Court recommended that LabMD's fraud claim at Count IV be dismissed because no transaction was entered into by Tiversa and LabMD. ECF No. 70 at 11-13. In the Memorandum Order disposing of the Motions to Dismiss the original Complaint, Count IV was dismissed without prejudice and with leave to amend, explaining:

> While the Complaint appears to plead that any misrepresentations by Defendants were done with intent to induce Plaintiff to retain Defendant's services, no such transaction was entered into. However, the Court concludes that the alleged misrepresentation may be actionable apart from such a specific transaction if fraudulent conduct was intended to induce the Plaintiff to act to its detriment outside of a specific transaction with a Defendant, and Plaintiff thereafter acted to its detriment. However, the allegations of the Complaint are not currently so styled in light of the requirement of Federal Rule of Civil Procedure 9(b) for pleading fraud with particularity.

ECF No. 115 at 2-3.

LabMD did not amend the allegations in Count IV. Further, in response to the instant Motion to Dismiss, LabMD makes no argument but merely "incorporates by reference its previous responses to those arguments found at ECF No. 63 and 73." ECF No. 144 at 27. These responses were unavailing at the time they were made. To the extent they are appropriate or relevant at this point, they remain unavailing. Additionally, LabMD fails to offer any response to Defendants' statement that, in light of LabMD's failure to address Defendants' challenge to

15

these counts, "it appears that LabMD is conceding [its fraud and negligent misrepresentation] claims." ECF No. 151 at 9 n.8.

However, the Court's review of the new factual allegations in the Amended Complaint reveals the following allegations. LabMD alleges that "Boback and Tiversa intended for LabMD to rely upon [multiple identified false] statements by incurring enough costs in their own investigation that they would eventually be motivated to hire Tiversa after LabMD failed to uncover the truth." ECF No. 125 ¶ 66. Further, LabMD alleges that "LabMD justifiably relied on these misrepresentations by conducting an unnecessary investigation at a great cost to LabMD of time and money." Id. ¶ 66. These allegations appear to cure the identified problem with the original Complaint.

<strong>c.     Statute of Limitations</strong>

The Pennsylvania statute of limitations for fraud is two years. 42 Pa. Cons. Stat. § 5524(7). The statements and acts of fraud described in Count IV occurred in 2008. ECF No. 125 ¶¶ 43-66. This action was commenced on January 21, 2015. ECF No. 1. Facially, the claim is time-barred.

In opposing the Motion to Dismiss, LabMD raises multiple general challenges to the application of statutes of limitations in this case, but does not address the specific statute of limitations or time frame applicable to fraud/Count IV.

To the extent that LabMD relies on fraudulent concealment, ECF No. 144 at 13-17, it is clear from a reading of LabMD's Complaint filed in Georgia state court in October 2011, wherein LabMD alleged that "Defendant Tiversa intentionally accesse[d] LabMD's computers and networks and downloaded the 1,718 File without authorization" and "Defendant Tiversa

16

accessed LabMD's computers and networks with the intent to extort money from LabMD," ECF No. 138-2 ¶¶ 106, 112, that LabMD knew of the basis for the fraud claim in 2011.

To the extent that LabMD asserts that the filing of the Georgia action equitably tolled the statute for this claim, id. at 14, this Court previously determined that no tolling resulted from that action. ECF No. 129 at 4. Accordingly, because LabMD knew the significance of the 2008 statements at least in 2011, the two-year statute of limitations on its fraud claim had run by the time of this 2015 action. It is therefore recommended that Count IV be dismissed.

### 4.    Count V: Negligent Misrepresentation (All Defendants)

#### a.    LabMD Claims

Count V of the Amended Complaint is identical to Count V of the original Complaint.[8] The basis for LabMD's negligent misrepresentation claims is essentially the same as the basis for its fraud claims.  LabMD alleges that Defendants made statements they knew or should have known were false concerning how they had obtained the 1718 File and the extent to which third parties were downloading copies of the 1718 File.  ECF No. 125 ¶¶ 187-194.

#### b.    Substantive Deficiency

In the Report and Recommendation as to the original Complaint, this Court recommended that LabMD's negligent representation claim at Count V be dismissed because no transaction was entered into by Tiversa and LabMD.  ECF No. 70 at 13-14.  In the Memorandum Order disposing of the Motions to Dismiss the original Complaint, Count V was dismissed without prejudice and with leave to amend for the same reasons as noted in the ruling on Count IV.  ECF No. 115 at 3.

---

[8]  The sole difference is a relabeling of the Defendants (from "Defendants Tiversa and Boback" to "all Defendants"). ECF No. 1 at 16; ECF No. 125 at 46.

LabMD did not amend Count V. Further, in response to the instant Motion to Dismiss, LabMD makes no argument but merely "incorporates by reference its previous responses to those arguments found at ECF No. 63 and 73." ECF No. 144 at 27. These responses were unavailing at the time they were made. To the extent they are appropriate or relevant at this point, they remain unavailing. Additionally, LabMD fails to offer any response to Defendants' statement that, in light of LabMD's failure to address Defendants' challenge to these counts, "it appears that LabMD is conceding [its fraud and negligent misrepresentation] claims." ECF No. 151 at 9 n.8.

However, as set forth above, the Court's review of the new factual allegations in the Amended Complaint reveals allegations which appear to cure the identified problem with the original Complaint. Specifically, LabMD alleges that "Boback and Tiversa intended for LabMD to rely upon [multiple identified false] statements by incurring enough costs in their own investigation that they would eventually be motivated to hire Tiversa after LabMD failed to uncover the truth." ECF No. 125 ¶ 66. Further, LabMD alleges that "LabMD justifiably relied on these misrepresentations by conducting an unnecessary investigation at a great cost to LabMD of time and money." Id. ¶ 66.

### c.   Statute of Limitations

The Pennsylvania statute of limitations for negligent misrepresentation is two years. 42 Pa. Cons. Stat. § 5524(7). The statements and acts described in Count V occurred in 2008. ECF No. 125 ¶¶ 43-66. This action was commenced on January 21, 2015. ECF No. 1. Facially, the claim is time-barred.

18

In opposing the Motion to Dismiss, LabMD raises multiple general challenges to the application of statutes of limitations in this case, but does not address the specific statute of limitations or time frame applicable to negligent misrepresentation/Count V.

To the extent that LabMD relies on fraudulent concealment, ECF No. 144 at 13-17, it is clear from a reading of LabMD's Complaint filed in Georgia state court in October 2011, wherein LabMD alleged that "Defendant Tiversa intentionally accesse[d] LabMD's computers and networks and downloaded the 1,718 File without authorization" and "Defendant Tiversa accessed LabMD's computers and networks with the intent to extort money from LabMD," ECF No. 138-2 ¶¶ 106, 112, that LabMD knew of the basis for the negligent misrepresentation claim in 2011. To the extent that LabMD asserts that the filing of the Georgia action equitably tolled the statute for this claim, id. at 14, this Court previously determined that no tolling resulted from that action. ECF No. 129 at 4. Accordingly, because LabMD knew the significance of the 2008 statements at least in 2011, the two-year statute of limitations on its negligent misrepresentation claim had run by the time of this 2015 action. It is therefore recommended that Count V be dismissed.

### 5.    Count VI: Civil Conspiracy (All Defendants)

#### a.    LabMD Claims

LabMD alleges that Defendants have a common design and purpose to benefit commercially from misrepresentations about data security breaches and that they acted in concert to harm LabMD through conversion of LabMD's property,[9] defamation relating to LabMD's trade and profession and interference with LabMD's business relations. ECF No. 125 ¶¶ 195-201.

---

[9] LabMD raised a conversion claim in the original Complaint which was dismissed with prejudice. ECF No. 115 at 1. The Amended Complaint contains no such claim.

19

#### b.    Substantive Deficiency

Defendants argue, *inter alia*, that there can be no conspiracy claim against Boback and Tiversa, because they are legally the same person. ECF No. 138 at 37. LabMD offers no response to Defendants' Motion to Dismiss this claim. As such, it is recommended that Count VI be dismissed as conceded.

#### c.    Statute of Limitations

Due to the above recommendation, no analysis of the statute of limitations for this claim is necessary.

### D.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss, ECF No. 137, be granted as to Count II (as to Defamatory Statements 1-12, 14-15 and 17-20), Count III, Count IV, Count V, and Count VI. It is further recommended that the Motion to Dismiss be denied as to Count II (as to Defamatory Statements 13 and 16).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Dated:  October 7, 2016

Respectfully submitted,

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Case 2:15-cv-00092-MPK   Document 166   Filed 10/07/16   Page 21 of 21

cc:     The Honorable Mark R. Hornak
        United States District Judge

        All Counsel of Record Via CM-ECF