# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LABMD, INC., )
                Plaintiff, )
                 )
vs. )     Civil Action No. 15-92
                 )     Magistrate Judge Maureen P. Kelly
                 )
TIVERSA HOLDING CORP. *formerly* )     Re: ECF Nos. 393 and 402
*known as* TIVERSA, INC.; ROBERT J. )
BOBACK; M. ERIC JOHNSON; DOES )
1-10, )
              Defendants. )

## MEMORANDUM OPINION

Presently before the Court is the Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37(b)(2) (the "Motion for Sanctions") filed by Defendant Tiversa Holding Corp. ("Tiversa"). ECF No. 393. In the Motion for Sanctions, Tiversa requests that Plaintiff LabMD, Inc. ("LabMD") be sanctioned for failure to abide by the Order of this Court dated June 21, 2019 (the "Deposition Protective Order") expressly directing the limited scope of depositions. Defendant Robert J. Boback ("Boback") joins in the Motion for Sanctions. ECF No. 402. LabMD filed a Brief in Opposition. ECF No. 409. Tiversa filed a Reply in Support of its Motion for Sanctions. ECF No. 411.

## I.    RELEVANT PROCEDURAL HISTORY

In order to consider the Motion for Sanctions, it is essential to review it in the context of the relevant procedural history of this case, including the conduct of LabMD and its counsel.

LabMD commenced this litigation on January 21, 2015. ECF No. 1. Following the disposition of two Motions to Dismiss that were granted in part and denied in part, ECF No. 115, on February 12, 2016, LabMD filed a First Amended Complaint. ECF No. 125. Another

Motion to Dismiss was filed. ECF No. 137. On October 7, 2016, this Court issued a Report and

Recommendation recommending that the Motion to Dismiss be granted as to Count II (as to

Defamatory Statements Nos. 1-12, 14-15 and 17-20), Count III, Count IV, Count V and Count

VI. ECF No. 166. It was further recommended that the Motion to Dismiss be denied as to Count

II (as to Defamatory Statements Nos. 13 and 16). Id. The Report and Recommendation was

adopted by District Judge Mark Hornak. ECF No. 185.

Following disposition of the Motions to Dismiss, only a portion of LabMD's defamation

per se claim remains as to two statements.

> 133. The following statements published by Tiversa and Boback in their
> February 10, 2015 statement to "The Pathology Blawg" are false and defamatory,
> were known by Boback and Tiversa to be false and defamatory, were understood
> by recipients of the statements to apply to LabMD, were intended to harm LabMD
> and did, in fact, cause special harm [to] LabMD: . . .
>
> - LabMD lawsuit — The claims are baseless and completely
>   unsubstantiated . . . . even in the complaint itself. This appears to be
>   another attempt by Daugherty to distract people from the
>   INDISPUTABLE FACT that LabMD and Michael Daugherty leaked
>   customer information on nearly 10,000 patients. (Defamatory Statement
>   No. 13).

ECF No. 125 ¶ 133 (internal citations omitted).

> 135. The following statements made by Boback and Tiversa in a letter to the
> editor of the Wall Street Journal, published in the December 9, 2015 edition of
> the Journal, are false and defamatory, were known by Boback and Tiversa to be
> false and defamatory, were understood by recipients of the statements to apply to
> LabMD, were intended to harm LabMD and did, in fact, cause special harm [to]
> LabMD: . . .
>
> - LabMD's CEO Michael Daugherty admits that a LabMD employee
>   improperly installed LimeWire file-sharing software on a company
>   computer. Doing so made confidential patient information publicly
>   available over the Internet. (Defamatory Statement No. 16).

Id. ¶ 135.

On August 29, 2017, the Court conducted the initial case management conference in this case. During the conference, the Court gave the parties 5 months to conduct discovery in light of the fact that all that remained of the 205 paragraph 10 count First Amended Complaint was a portion of the defamation per se claim as to the two statements, identified above. The Court set a fact discovery period of August 29, 2017 to January 29, 2018. ECF Nos. 246 and 247.[1]

On October 12, 2017, the Court conducted a telephone status conference with counsel and addressed discovery, ESI custodians/search terms and an upcoming mediation. ECF No. 285.

Just 8 days later, on October 20, 2017, LabMD and its CEO, Michael Daugherty ("Daugherty"), filed a new lawsuit with this Court against Tiversa and Boback, and the individual attorneys and law firms representing them in the instant case in LabMD, Inc. and Michael J. Daugherty v. Tiversa Holding Corp., et al., Case No. 17-1365. In the new lawsuit, LabMD and Daugherty alleged that Defendants engaged in abuse of process, conspiracy to abuse process, and violations of Pennsylvania's Dragonetti Act. These claims arose out of purported misconduct by Tiversa and Boback in pursuing defamation claims against several parties, including LabMD and Daugherty, in two Pennsylvania state and federal court actions.[2] LabMD and Daugherty alleged that these defamation actions were procured, initiated, and continued in a grossly negligent manner and without probable cause, and that defendants had filed certain motions for purposes of concealing their own misconduct and harming LabMD.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF No. 249.

[2] The state court defamation action at issue was filed on September 23, 2014 in the Court of Common Pleas of Allegheny County at Case No. GD-14-016497. The federal court defamation action was filed on September 5, 2013 in the United States District Court for the Western District of Pennsylvania at Case No. 13-1296.

On October 24, 2017, Defendants filed a joint Motion to Stay the instant case so that they could have the opportunity to review the new lawsuit and decide the impact that it had on the ability of defense counsel and their law firms to continue to represent Tiversa and Boback. ECF No. 292. The stay was granted until a status conference with the Court on December 4, 2017. ECF No. 295.

On December 4, 2017, the Court conducted a status conference. ECF No. 296. Discovery conducted to date was discussed. Attorney James Hawkins for LabMD acknowledged during the status conference his understanding that discovery in the instant case was limited to Statement Nos. 13 and 16. ECF No. 311-2 at 10:9-16. Following the conference, the Court stayed this case pending rulings on the Motions to Dismiss in Case No. 17-1365. ECF No. 300.

The Motions to Dismiss were granted in Case No. 17-1365 and the case was dismissed on November 6, 2018.[3]

On February 7, 2019, this Court conducted a status conference to address the completion of discovery, including: search terms and custodians, the names of the individuals to be deposed, setting deposition dates as soon as possible, and nonparty subpoena issues. ECF No. 324.

During this conference, Tiversa's counsel expressed concern that LabMD's discovery requests were not directly related to the two defamation claims but were attempts to use discovery in this case for other cases or in other forums. ECF No. 370 at 20.

Of particular note to the instant Motion for Sanctions, throughout the February 7, 2019 status conference, the Court addressed the requirements of proportionality and that discovery is

---

[3] It appears to this Court that the filing of Case No. 17-1365 by LabMD and Daugherty may have been a purposeful attempt by LabMD and Daugherty to interfere with the representation of Tiversa and Boback by their defense attorneys and respective law firms in this case, particularly because there had been no discovery motions filed in this case relative to any conduct by Tiversa or Boback's counsel.

to be limited to the remaining portions of the defamation per se claim as to Statement Nos. 13

and 16. Id. at 8, 13 and 17. The Court also stated:

> And again, I want to be clear, as you think about that after the ESI and the depositions, is I am going to be enforcing the amendments to the Federal Rules of Civil Procedure in terms of proportionality. This case has now been dramatically narrowed to just the two claims as to the two statements, and those are the only things that I'm going to allow discovery on, that which is related to it for purposes of preparing this case for trial.

Id. at 24.

At the conclusion of the February 7, 2019 status conference, this Court reiterated:

> But let's all communicate with each other and keep it constructive so that we keep it focused on the narrow issues in this case. This case is not about what's going on in all the other different forums. We have a limited issue that's left here, and let's deal with it accordingly.

Id. at 29.

At the conclusion of the February 7, 2019 status conference, the Court scheduled fact discovery to close on June 1, 2019. ECF Nos. 324, 325 and 370 at 28.[4]

On May 21, 2019, LabMD filed a Motion to Modify Case Management Order seeking an extension of time to complete fact discovery. ECF No. 337. In the motion and accompanying brief, LabMD sought to extend discovery by another 10 months until March 30, 2020. LabMD also attached 1,549 pages of exhibits in support of its motion. ECF No. 338-1 to 338-32. Tiversa opposed the motion on the grounds that: the case was 4 years old and limited to one defamation claim related to the two alleged defamatory statements made in 2015. Tiversa argued that it was apparent that the request for an additional 10 months of discovery sought by LabMD was an attempt by LabMD to conduct discovery that would be heavily focused on

---

[4] On February 8, 2019, the Court also ordered the lifting of the stay of this case. ECF No. 323.

5

LabMD's claims and defenses in the state court defamation action and the *qui tam* action.[5] ECF No. 345 at 2. However, as a practical matter, Tiversa was agreeable to a 30 day extension to facilitate the completion of certain depositions. Id. at 1. Given the myriad of irrelevant matters raised in LabMD's brief and exhibits, this Court issued an Order granting in part and denying in part the motion for extension of time to complete discovery. The Court ruled, in pertinent part:

> In the instant motion, Plaintiff seeks to extend discovery by ten months. Defendants oppose this request. Defendant Tiversa is agreeable to a thirty day extension of discovery in order to complete the limited number of necessary depositions. As the parties are well aware, and as this Court has repeatedly addressed, this case is now four years old and the remaining claims relate solely to remaining portion of one defamation claim as to two alleged defamatory statements. The Court has also repeatedly addressed the requirements of the applicable Federal Rules of Civil Procedure that discovery must be proportionate to the limited remaining claims as to the two alleged defamatory statements. As such, Plaintiff's request for a ten month extension of discovery is DENIED. The Court will allow a brief thirty day extension of discovery until July 1, 2019. NO FURTHER EXTENSIONS OF DISCOVERY WILL BE GRANTED.

---

[5] The matter *sub judice* is just one of numerous cases filed in various jurisdictions arising of out, or related to, Tiversa's purported shakedown scheme and the FTC's investigation of LabMD. Some of the cases have since concluded, while others remain pending. The *qui tam* action referred to herein is currently pending in the United States District Court for the Southern District of New York at United States of America ex rel. Michael J. Daugherty v. Tiversa Holding Corp., et al. at Case No. 14-cv-4548. There is a second pending lawsuit before this Court, Michael J. Daugherty and LabMD, Inc. v. Joel P. Adams, et al., at Case No. 2:17-cv-368. In addition to these matters and the defamation action previously discussed, the Court is also aware of related matters pending in the Supreme Court of the State of New York (LabMD, Inc. and Michael J. Daugherty v. Mary Beth Buchanan and Bryan Cave Leighton Paisner LLP, at Index No. 160929/2018); and in the United States District Court for the Eastern District of Virginia, (LabMD Inc. v. The Privacy Institute, et al., at Case No. 1:19-cv-852). There is also an appeal pending before the United States Court of Appeals for the Third Circuit arising out of the Court's order granting dismissal in Case No. 17-1365, discussed *supra*, at Case No. 18-3487. Furthermore, there are pending, or have been pending, a multitude of other lawsuits in other jurisdictions. See Brief on Behalf of Appellants, id. at 5-8 (submitting statement of related cases and proceedings).

ECF No. 349.[6]

On June 18, 2019, Tiversa filed a Motion for Protective Order Limiting the Scope of Depositions. ECF No. 372. In the Motion, Tiversa sought a protective order limiting the scope of upcoming depositions in this case to the remaining defamation per se claims as to Statement Nos. 13 and 16 and referenced the Court's prior and recent admonishments of counsel for LabMD regarding the requirement of proportionality for discovery. Id.

In the Motion for Protective Order, Tiversa cited the Court to counsel for LabMD's deposition questioning of non-party Joel Adams ("Adams") on Monday, June 17, 2019 (the day before the Motion for Protective Order was filed). Tiversa advised the Court that LabMD's counsel did not ask one question about the two defamatory statements remaining at issue – Statements Nos. 13 and 16. Tiversa pointed out many questions that were asked of Adams had nothing to do with the remaining claims in this case. Id. at 3-5. These irrelevant questions included, but were not limited to: if there was something secretive about his children, strengths and weaknesses of a certain employee, the workplace culture at Tiversa, leadership styles, guns in the workplace, an AIDS clinic in Chicago, Edward Snowden, an Iranian IP address and whether the witness had "ever met Judge Maureen P. Kelly." Id. Tiversa correctly argued that these questions had nothing to do with the remaining claim in the instant case.

---

[6] The same day that LabMD filed this Motion to Modify Case Management Order seeking to extend discovery by 10 months, LabMD also filed a Motion for Discovery Coordination Order, ECF No. 339, seeking a discovery coordination order with a *qui tam* action in the United States District Court for the Southern District of New York and a state action in the Court of Common Pleas of Allegheny County. LabMD argued that an order issued by Judge Christine Ward, in the state court action, warranted the entry of a discovery coordination order in the three cases. Upon closer review by this Court, Judge Ward had simply signed a two sentence proposed order lifting the stay of discovery in the state action and handwrote "[p]arties to coordinate discovery." Contrary to LabMD's misrepresentation, Judge Ward did not order discovery consolidation in the three cases. As such, this Court denied LabMD's Motion for Discovery Coordination Order finding that the instant case was limited to the remaining portion of the defamation per se claim as to Statements Nos. 13 and 16, that discovery in this case was limited to the two claims and by the proportionality requirements of the recently amended Federal Rules of Civil Procedure and that the *qui tam* action and state court action involved different issues, had certain different parties and were at different stages of litigation. ECF No. 351.

7

In the Motion for Protective Order, Tiversa argued that these deposition questions by LabMD's counsel clearly demonstrated the type of "fishing expedition" that this Court expressly forbid during the status conference on June 11, 2019. Tiversa cited to this Court's clear statement on the record at the then most recent status conference:

> As I've said, we had a status conference in this case on February 7, 2019. **And this Court, as I have been throughout, was crystal clear that the only remaining claim in this case is the two statements that remained as to the defamation per se claim. It was clear that discovery to be completed was to relate to these remaining claims only. This was not to be used as a fishing expedition for the qui tam action or the state court action.** It was to be limited to the remaining claims in this case.

ECF No. 367 at 25 (emphasis added).

LabMD opposed the Motion for Protective Order and pointed to ten broad topic areas that were covered in the Adams deposition which it claimed "related to the two defamatory statements and the intimidation of witnesses by Tiversa and Mr. Boback." ECF No. 376.

This Court granted the Motion for Protective Order Limiting the Scope of Depositions and issued the Deposition Protective Order on June 21, 2019. The Court held as follows:

> Having considered the arguments of the parties relative to the instant Motion, the Court finds that Tiversa has demonstrated good cause under Rule 26(c) to warrant the issuance of the requested protective order. In the context of the applicable provisions of Rule 26, this Court, as addressed during the June 11, 2019, Status Conference, referenced herein, has repeatedly advised counsel that discovery in this case must be limited to the portion of the sole remaining in this case – the defamation per se claim as to Statement #13 and #16. This Court has also repeatedly discussed with counsel the corresponding requirements of proportionality. Nonetheless, **LabMD has repeatedly attempted to push or has gone beyond the boundaries of the requirements of Rule 26 and disregarded the orders of this Court: by consistently attempting to engage in "fishing expeditions"; by seeking information that is not relevant to the remaining claim in this case; by seeking information to be used in the qui tam action, state court action or other litigation in other forums; and by attempting to relitigate previously disposed of legal matters. Clearly, such discovery conduct by LabMD seeks information that is not for the requisite legitimate and proper purpose.**

8

Due to LabMD's ongoing discovery tactics, disregard of this Court's prior admonishments and orders and the limited nature of the remaining defamation per se claim in this case, this Court is compelled to grant Tiversa's Motion for Protective Order. An appropriate order follows.

AND NOW, this 21st day of June, 2019, it is hereby ORDERED that Defendant Tiversa Holding Corp.'s Motion for Protective Order Limiting the Scope of Depositions is GRANTED. The scope of the depositions in this action must be limited to the remaining portion of the defamation per se claim, specifically Statements #13 and #16, LabMD's alleged damages and defenses thereto.

**NOTICE is hereby given to LabMD and its counsel that if this Order is disregarded that this Court may impose sanctions, up to and including the dismissal of this action, as provided for by Federal Rule of Civil Procedure 37(b).**

ECF No. 379 at 5-6 (emphasis added).

During an emergency telephone conference with counsel on June 27, 2019, relative to

another matter of LabMD's conduct, Tiversa's counsel notified the Court that LabMD had

violated the Deposition Protective Order. ECF No. 403 at 11-12. The Court responded:

[T]his court has been very clear with all of you since you were before the court for the lengthy status conference on February 7th of this year and on June 11th, and in multiple rulings on discovery motions, again . . . repeatedly advising counsel that the remaining discovery in this case, because all that is left is what remains of the defamation per se claim is to statements 13 and 16 only. And I have repeatedly, and I think I've used the phrase crystal clear in some of my orders, indicated that that is the scope of discovery. This is not a fishing expedition, and I have repeatedly indicated that.

Id. at 12.

In the pending Motion for Sanctions, Tiversa and Boback assert that LabMD and its

counsel have willfully violated the express ruling set forth in the Order of Court dated June 21,

2019. ECF Nos. 393 and 402.

Since the status conference on April 23, 2019, the Court has been required to deal with

numerous discovery motions and discovery issues, including this Motion for Sanctions. ECF

9

Nos. 329, 331, 332, 336, 337, 339, 341, 347, 349, 350, 351, 352, 353, 356, 361, 363, 364, 366, 371, 372, 374, 375, 377, 379, 381, 382, 388, 391, and 393. Almost all of the discovery motions and issues in the final two-and-one-half months of discovery resulted from the conduct of LabMD and its counsel.

## II.    TIVERSA'S MOTION FOR SANCTIONS

In the instant Motion for Sanctions, ECF No. 393, Tiversa argues that LabMD and its counsel willfully violated the express ruling of this Court in the Deposition Protective Order limiting the scope of deposition questions in the remaining depositions in this case.

Tiversa argues that LabMD and its counsel repeatedly violated the Deposition Protective Order dated June 21, 2019 through continued improper questioning of six deponents. Tiversa correctly recognizes that this Court clearly limited the scope of depositions to "the remaining portion of the defamation *per se* claim, specifically Statements #13 and #16, LabMD's alleged damages and defenses thereto." Id. at 6. Tiversa also recognizes that this Court provided clear notice "to LabMD and its counsel that if this Order is disregarded that this Court may impose sanctions, up to and including the dismissal of this action, as provided for by Federal Rule of Civil Procedure 37(b)." Id. Tiversa argues that, notwithstanding the clear language of the Deposition Protective Order, LabMD and its counsel continued to proceed with discovery without regard for the Federal Rules of Civil Procedure or the Orders of this Court. Tiversa cites as "one of the most glaring examples" of this utter disregard the continued questioning by LabMD's counsel of witnesses about the "gun culture" at Tiversa. Id. at 2. Tiversa notes that this Court directly addressed the improper nature of this type of questioning (among others); yet LabMD's counsel proceeded unabated and without regard for the Deposition Protective Order. Tiversa also argues that, despite repeated admonitions and warnings by the Court and the

10

Deposition Protective Order, LabMD has continued with its fishing expedition, seeking to obtain discovery in this case for other pending litigation, not for the "requisite legitimate and proper purpose." ECF No. 379 at 5. As such, Tiversa asserts that the imposition of sanctions against LabMD and its counsel is warranted.

In support of this Motion for Sanctions, Tiversa has provided to the Court excerpts, as examples, from each of the six depositions conducted by counsel for LabMD in the days immediately after the issuance of the Deposition Protective Order dated June 21, 2019, during which LabMD's counsel spent a substantial portion of each deposition asking a multitude of questions not related to the remaining defamation per se claim as to Statement Nos. 13 and 16 and that were violative of the Deposition Protective Order.[7]

### 1. Deposition of Robert Boback – 6/24/19

Boback is a named defendant in this case.

Tiversa argues that during the deposition of Boback, counsel for LabMD asked countless questions relating to issues that were not related in any way to the remaining portion of the defamation claims, limited to Statements Nos. 13 and 16. Tiversa further argues that the questions were blatant attempts to get discovery to support LabMD's claims against Boback in other lawsuits and/or other forums, including state and federal court in Pennsylvania, state and federal court in New York, and federal court in Virginia. Tiversa provides the following

---

[7] Tiversa's counsel repeatedly objected to these questions as improper discovery in violation of the Deposition Protective Order. Nonetheless, LabMD's counsel disregarded these objections. ECF No. 393 at 2-3. Given the fact that the court deadline to complete these depositions was July 1, 2019, Tiversa's counsel elected to complete the depositions and then bring all of LabMD's violations before the Court. Id.

examples of LabMD's questioning in violation of the Deposition Protective Order and prior rulings of this Court.[8]

- LabMD's counsel spent a significant portion of the deposition asking questions about the alleged spread of the 1718 file, which is not at issue in either Statement No. 13 or 16, but *is* at issue in many of the other cases LabMD has filed against Tiversa and Mr. Boback. (ECF No. 393-2 at 38:16) ("What does file spread mean to you?"); (id. at 53:20-24) ("Do you have any recollection of testifying that the file was found by Tiversa at locations in Costa Rica, London, England, San Diego, California, and Apache Junction, Arizona?").

- LabMD's counsel asked questions regarding the FTC investigation which, as this Court has previously ruled, ECF No. 408, is not relevant to this case. (Id. at 42:5-7) ("Do you have a recollection of Tiversa preparing a list of 84 companies to turn over to the FTC?"); (id. at 126:11-12) ("Did Tiversa make misrepresentations to the FTC?"); (id. at 126:14-15) ("Did Tiversa make misrepresentations to Congress?"); (id. at 129:22-25) ("Do you believe that Tiversa benefitted commercially from the fact that the FTC was investigating companies that Tiversa had referred to the FTC?"); (id. at 33:9-11) ("When you read your June 2014 deposition, did anything strike you as being false?"); (id. at 115:8-10) ("You did not admit to Congress or the FTC that there was a mistake in your earlier testimony?").

- LabMD's counsel asked Boback if he believed anything Daugherty said in his book *The Devil Inside the Beltway* was not true. (Id. at 83:1-2).

---

[8] The Court refers to certain portions of the depositions conducted by LabMD's counsel in the days immediately following the Deposition Protective Order, cited by Tiversa in the Motion for Sanctions, because they demonstrate counsel's disregard for the Orders of this Court.

- LabMD's counsel blatantly ignored the Court's prior ruling denying LabMD's Motion for Witness Protection with respect to its allegations that Boback engaged in witness intimidation of non-party Richard Wallace. ECF No. 371. Such questions included:

  - "[I]n January or February of 2014, did you visit Mr. Wallace in the hospital at the treatment facility where he was?" (ECF No. 393-2 at 187:11-14);

  - "Did you have any conversations with anybody at the treatment facility?" (Id. at 187:19-20);

  - "Did you get a release of medical records?" (Id. at 188:22-23);

  - "Was Mr. Wallace, in fact, fired on February the 28th?" (Id. at 140:22-23); and

  - Why was [Mr. Wallace] fired?" (Id. at 141:4).

### 2. Deposition of Keith Tagliaferri – 6/25/19

Keith Tagliaferri ("Tagliaferri") is a former employee of Tiversa and not a party to this case. Tagliaferri is a defendant in another federal case, *Daugherty v. Adams*, 17-368 (W.D. Pa.).

In support of its Motion for Sanctions, Tiversa points out that most, if not all, the deposition questions asked of Tagliaferri by LabMD's counsel sought discovery related to the allegations against Tagliaferri in the other federal action, not the claims in the instant case. Tiversa argues that at no point during Tagliaferri's nearly three-hour deposition did counsel for LabMD ask any questions about Statement Nos. 13 and 16; nor did counsel ask any questions regarding "publicly available" or the word "leak." Tiversa provides the following examples of LabMD's questioning in violation of the Deposition Protective Order and prior rulings of this Court.

- LabMD's counsel spent the majority of the deposition questioning Tagliaferri about reports he had prepared while employed at Tiversa that are totally unrelated to the defamatory statements. (ECF No. 393-1 at 11:20-23).

- Questions by LabMD's counsel focused entirely on the "Fourth Forensic Report" as it is defined in the Complaint in the other federal action, and referring to said report as "evidence fabricated by Tagliaferri."

- Counsel for LabMD made over thirty references to the "Fourth Forensic Report" during Tagliaferri's deposition, which is not relevant to this limited defamation case.

- Counsel for LabMD also asked about another report that was prepared for a former Tiversa client, Cigna, which appears in the Complaint in the other federal action. (Id. at 38:13-17). That report was prepared years prior to the defamatory statements at issue in this case.

- None of the questions asked of Tagliaferri had any relation to or bearing on the two allegedly defamatory statements in this case.

### 3. Deposition of Richard Wallace – 6/26/19

Richard Wallace ("Wallace") was formerly employed by Tiversa as a director of operations. LabMD has repeatedly tried to align itself with Wallace.[9] ECF No. 390-1.

---

[9] LabMD previously sought to preclude Wallace from producing documents in response to a subpoena issued by Tiversa. ECF No. 329. The subpoena sought documents related to Wallace's communications with LabMD, Daugherty, and Attorney Hawkins. Id. This Court ordered the production of all non-privileged documents and conducted an *in-camera* review. ECF Nos. 332 and 336. Thereafter, LabMD filed a motion to hold the attorneys for Wallace, a nonparty, in civil contempt and requested that they be incarcerated. ECF No. 382. The Court further notes that LabMD began the first two lines of its supporting brief with references to: "original sin," giving "a weapon to a criminal" and "mayhem." ECF No. 383. The Court was again required to caution LabMD and its counsel to cease their use of inflammatory statements. ECF No. 395 at 3. In the contempt motion, LabMD sought a password for a disc, despite the fact that neither Wallace or his counsel had possession of the disc or the password. ECF No. 390. For reasons discussed at length in the 7 page Order of Court, this Court denied the motion as without merit, substantively and procedurally. This Court held:

14

Tiversa argues that LabMD asked numerous deposition questions of Wallace that were violative of the Deposition Protective Order and other discovery rulings of this Court. Tiversa provides the following examples of LabMD's questioning in violation of the Deposition Protective Order and prior rulings of this Court.

- LabMD's counsel asked Wallace questions as to the unfounded dated allegations of witness intimidation that the Court had just recently held lacked merit and relevance to discovery as to the two remaining Statements in this case, ECF No. 371. (ECF No. 393-3 at 123:10-13) ("Q: What is this?" A: "…Bob demanded to have access to my medical documents or the documents at Greenbriar"). Tiversa

Upon review, this Court finds that the instant Motion appears to be yet another attempted "fishing expedition" by LabMD and its counsel to seek discovery for other cases and in other forums because it seeks information that is not relevant to the remaining portion of the sole remaining defamation per se claim as to Statements #13 and #16 only.

Simply put, Tiversa issued a Subpoena to Wallace for the production of documents responsive to eight identified requests. LabMD filed Objections to Wallace producing documents based on attorney-client privilege. The Court ruled on the Objections and addressed the privilege objections. Wallace produced the required non-privileged documents. Tiversa, the party issuing the Subpoena, is satisfied with the responses. Thus, Wallace and his counsel have complied with the Subpoena at issue and this Court's Order of April 29, 2019, ECF No. 332. Nonetheless, LabMD seeks to hold Attorney Lindsey and Attorney Tully, as well as Wallace, in contempt and have the Court direct that they be incarcerated relative to a Subpoena that LabMD did not issue – and, in fact, LabMD objected to. Suddenly, LabMD seeks, by way of the instant Motion, to compel production of privileged documents that it sought to prohibit the release of just two months ago with Objections dated April 23, 2019 and during the April 29, 2019 status conference. ECF No. 331.

LabMD and its counsel appear to have gone to extensive lengths to obtain control of the Bryan Cave documents and the password-protected disc from Wallace directly, apparently outside of the involvement of Wallace's legal counsel. That conduct, we leave to Wallace and his counsel to address as they deem appropriate.

In conclusion, the Court finds that the instant Motion and LabMD's pursuit of the password are further attempts by LabMD to misuse discovery in this case to assist it in other litigation and in other forums. Such attempts are part of a pattern of conduct by LabMD and its counsel of ongoing discovery tactics contrary to the applicable Rules of Federal Civil Procedure and a pattern of ongoing conduct in disregard of the Court's prior admonishments and orders relative to discovery and proportionality in light of the remaining portion of the defamation per se claim in this case.

ECF No. 395.

again argues that this line of questioning was a clear attempt to seek evidence for an improper purpose.[10]

- LabMD's counsel also asked Wallace numerous questions seeking information for use in its other cases, including as to the use of eP2P, the claims of metadata alteration, and the alleged false spread of the 1718 File are all subjects of other dismissed or pending lawsuits filed by LabMD. None of these topics are at issue in alleged defamatory Statement Nos. 13 and 16 or Tiversa's defenses.
  o "[A]t some point you were using [eP2P] for work at Tiversa for things other than searching for child pornography, right?... Did anybody ask you to do that?" (Id. at 92:4-6, 92:10);
  o "Were you able to change any other information in the medidata [sic] of the files such as the download date?" (Id. at 98:3-5);
  o "[A]s of November 6, 2012, had the LabMD file ever been downloaded from any of the IP addresses that are shown in Exhibit 51?" (Id. at 114:4-6); and
  o "Did you provide information on IP addresses to Mr. Boback before his testimony in the FTC action?" (Id. at 122:3-4).

### 4. Deposition of Jeromy Dean – 6/27/19

Jeromy Dean ("Dean") is a former employee of Tiversa and not a party in this case.

Tiversa argues in support of the Motion for Sanctions that LabMD's counsel spent the majority of the time at Dean's deposition questioning him on issues beyond the scope of discovery in this case, including general fishing expeditions into Tiversa's business operations

---

[10] Of note, during the status conference on February 7, 2019, Attorney Hawkins preemptively raised the issue of witness intimidation by Boback but Hawkins then admitted that such conduct was not an issue at that point. ECF No. 370 at 15-16. During a telephone conference with the Court on June 11, 2019, Attorney Hawkins admitted that there was no allegation of any recent misconduct by Boback. ECF No. 367 at 31-32.

and its culture, discovery on discovery, the alleged witness intimidation of Mr. Wallace (which this Court has already ruled on), and the spread of the 1718 File and alleged alteration of its metadata. Tiversa cites to examples of improper questions posed to Dean.

- "…what did the technology that Tiversa invented do?" (ECF 393-4 at 10:22-23);
- "No I am wondering just generally what was the business of Tiversa and what did its technology do to help it in its business?" (Id. at 11:3-5);
- "Was EagleVision and whatever versions or other names it may have had versions that may have been in [sic] was it ever referred to as a connection engine?" (Id. at 15:10-13);
- "How many websites were scraped on a daily basis in general in approximately 2009?" (Id. at 16:4-5);
- "Where were the search terms physically kept at Tiversa?" (Id. at 19:4-5);
- "Why was there not a record kept of which search terms were used to retrieve which documents?" (Id. at 19:24-20:1);
- "Did Tiversa ever delete any of the information in the data store, the files or the metadata?" (Id. at 44:10-12);
- "Did the company ever have a data retention or data destruction policy?" (Id. at 44:18-20);
- "Yesterday we heard testimony from Rick Wallace that he used a program the FBI gave him called eP2P?" (Id. at 26:1-3);
- "Do you recall the circumstances of [Mr. Wallace's] departure?" (Id. at 27:1-2);
- "Did you ever talk with Mr. Boback about the circumstances of [Mr. Wallace's] departure?" (Id. at 27:9-10);

17

- "Did you [know] or hear Mr. Wallace was terminated just shortly before his deposition in a Federal Trade Commission enforcement [action]?" (Id. at 27:17-19);

- "Were you ever afraid of Rick Wallace?" (Id. at 57:5-6);

- "Could the analyst change the dates from, let's say, an actual download date was May 1 of 2008?" (Id. at 24:12-14);

- "Could an analyst change that download date in the file injector?" (Id. at 24:16-17);

- "Do you remember anybody – did anybody ask you to make any changes to that database shortly after [Mr.] Wallace left?" (Id. at 24:10-12);

- "Do you remember Mr. Boback asking you to make changes in the data store to some of the metadata for various files between the time when Mr. Wallace left in, say, July of 2014?" (Id. at 33:2-6);

- "Have you ever heard of false spread?" (Id. at 61:3);

- "Have you ever heard of anybody at Tiversa ever manufacturing information like IP addresses to create the appearance of spread when in fact there was no spread?" (Id. at 61:9-12); and

- "Do you remember the FBI raid?" (Id. at 59:19).

Tiversa argues that, taking these questions into account, the Court should sanction LabMD and its counsel for violating the Deposition Protective Order.

### 5. Deposition of Sean Ways 6/27/19

Sean Ways ("Ways") is a former employee of Tiversa and not a party in this case.

18

Tiversa argues that, much like the deposition of Dean, LabMD's counsel used this deposition as an opportunity to seek information for use in other cases against Tiversa and did not limit the questions to the two alleged defamatory statements remaining at issue in this case. Tiversa provides the following examples of LabMD's questioning in violation of the Deposition Protective Order and prior rulings of this Court. LabMD's counsel asked Ways:

- if he was aware of any "illegal things" that Richard Wallace did. (ECF No. 393-5 at 81:2, 81:15);

- "Were there any programs or assignments that were given to you that you questioned whether it was for legal or appropriate purposes?" (Id. at 77:11-14); and

- "Was there anything else you questioned the legality of the product?" (Id. at 79:10-11).

Tiversa points out that counsel for LabMD continued to seek information to support its claims that Boback engaged in witness intimidation. For example, he asked if Ways ever felt threatened or intimidated by Boback. (Id. at 98:1-5).

### 6. Deposition of Jason Shuck – 6/27/19

Jason Shuck ("Shuck") is a former employee of Tiversa and not a party to this action.

Tiversa argues that at the deposition of Shuck, LabMD's counsel continued to inquire into a broad array of topics beyond the deposition's intended limited scope as articulated by the Court.

- Many of the questions LabMD's counsel asked dealt with the culture of Tiversa, (ECF No. 393-6 at 140:2-3) ("Was there a gun culture at Tiversa?") and the allegations of witness intimidation by Mr. Boback, (id. at 137:2-138:2) ("Did

there ever come a point in time you became aware of some videotape surveillance of Mr. Wallace?").

- The vast majority of the questions of Shuck by LabMD's counsel were an attempt to obtain information regarding the alleged false spread of the 1718 file:

  o "Do you know what the term false spread means?" (Id. 133:12-13);

  o "Before you got there if an analyst had gone in and made a change to the metadata to a file for example a download date, how would you if you were asked determine whether that change had actually been made from what it was originally?" (Id. at 122:21-123:1);

  o "Did there come a point in time when Mr. Dean was asked by Mr. Boback to make some changes in the IP addresses in the data store?" (Id. at 128:7-9);

  o "And so you understood that Mr. Boback had asked him to bypass the rad importer?" (Id. at 130:2-4);

  o "Are you aware [it is] a crime for anyone to take possess [sic] a medical file if it is taken from a medical entity as described by HIPAA?" (Id. at 188:4-6);

  o "Does it surprise you for there to be a law about that?" (Id. at 189:4-5);

  o "Why is that? Because Tiversa did that quite often to files like that?" (Id. at 189:11-12); and

  o "[W]hen you were at Tiversa, if a file had spread on the P2P networks and it resided on six different computers throughout the world and the data store showed that six of those files were downloaded within six minutes of one another, does that sound odd to you?" (Id. at 192:24-193:4).

Tiversa again argues that the remaining limited scope of this case does not encompass the allegations of false spread and metadata alteration that appear in LabMD's other litigation. As such, Tiversa argues that this questioning by LabMD's counsel violated the Deposition Protective Order and was for an improper purpose.

## III.  LABMD'S RESPONSE IN OPPOSITION

LabMD filed an Opposition to Defendant Tiversa Holding Corp.'s Motion for Sanctions pursuant to Federal Rule of Civil Procedure 37(B)(2) (the "Brief in Opposition"). ECF No. 409. In the Brief in Opposition, LabMD argues that it fully complied with the Deposition Protective Order relative to the depositions identified in Tiversa's Motion for Sanctions. LabMD further asserts that the deposition questions at issue are relevant to LabMD's claims and Tiversa's defenses. Id. at 2.

The Court notes that, instead of specifically addressing the appropriateness of the questions of each witness as identified in the Motion for Sanctions by witness, LabMD has provided a broad stroke response addressing the general categories of depositions topics.

### 1.  False Spread and Spoliation

As to false spread, LabMD argues that from 2008 to at least 2015, Tiversa and Boback claimed that LabMD leaked and made the 1718 File publicly available. LabMD asserts that Tiversa and Boback alleged that the 1718 File was found on computers of several bad actors and spreading through cyberspace. Id. at 3. LabMD further contends that this claim was "debunked" by testimony given by Richard Wallace before the FTC in May 2019.[11] Id. at 3-4.

LabMD argues that documents produced by Tiversa reveal instances where Tiversa and Boback addressed false spread to support their assertion that LabMD leaked and made the 1718

---

[11] Although LabMD cites the date of Wallace's FTC testimony as May 2019, this appears to be a typographical error. The testimony that LabMD cites is dated May 5, 2015. ECF No. 256-9.

File publicly available. Id. at 4. LabMD then cites to five particular emails. Id. at 4-6. LabMD also claims that false spread was a key issue in the FTC Enforcement actions and cites to certain passages from the November 13, 2015 Initial Decision of FTC Chief Administrative Law Judge D. Michael Chappell. Id. at 6-7. LabMD argues that these portions of the Initial Decision "informed LabMD's strategy for obtaining discovery from Tiversa and Boback on the remaining defamatory statements at issue." Id. at 7.

As to spoliation, LabMD argues that there is substantial evidence that Tiversa spoliated evidence in Tiversa's Data Store to support its false claims of spread. Id. at 8. LabMD further argues that metadata in the Data Store has been altered to make it appear that Tiversa found LabMD's File on computers of others. Id. LabMD points to an FBI spreadsheet compilation of metadata from the Tiversa Data Store. Then LabMD turns to the testimony of Wallace that "as of November 6, 2019,[12] the LabMD files had never been downloaded" from the seven listed IP addresses and he entered the Data Store to create the spread. Id. at 9. LabMD then points to testimony of Tagliaferri regarding the seven IP addresses. Id. at 8-9. LabMD argues that Tiversa altered metadata in its Data Store relative to where and how Tiversa downloaded the 1718 File. Id. at 11.

### 2. Witness Intimidation

LabMD argues that evidence of witness intimidation is relevant for impeachment purposes and for assisting the jury in examining the credibility of witnesses and prior testimony that may or may not be introduced at trial. LabMD asserts that although this Court denied LabMD's request for a protective order against future intimidation, it never barred questions as to purported witness intimidation. Id. at 11. LabMD goes on to try to claim that questions as to

---

[12] Although LabMD cites November 6, 2019, this appears to be a typographical error. Wallace's testimony was taken prior to this date, and he refers to November 6, 2012 in his testimony. ECF No. 409-09.

past intimidation are relevant to the remaining portion of the defamation per se claim and rebutting Defendants' defenses. Id.

### 3. FTC Matters

LabMD argues that its deposition questions as to FTC matters are relevant to this case because prior false statements and testimony of Defendants and their witnesses in related matters bear on credibility. Id. at 15. LabMD also contends that the Deposition Protective Order did not prohibit questions as to the first part of Statement No. 13 that the claims in LabMD's lawsuit were "baseless and completely unsubstantiated." Therefore, LabMD broadly asserts that any questions as to the merits of the original LabMD Complaint were permitted. Id. at 16.

### 4. 1718 File – Technically Available vs. Legally and Publicly Available and/or Leaked Allegations

LabMD argues that its deposition questions as to whether the 1718 File was technically available or legally and publicly available or leaked are relevant. Id. at 16-17. LabMD states that a copy of the eP2P software was given to Tiversa by the FBI. LabMD asserts that the fact that Tiversa was able to locate the 1718 File only with the eP2P software suggests or proves that the 1718 File was never leaked. LabMD goes on to argue that questions related to Tiversa's use of the eP2P software relate to both defamatory statements. Id.

### 5. Miscellaneous

LabMD briefly argues that deposition questions as to the FBI raid, Daugherty's book, weapons, a gun culture, and feeling threatened or intimidated by Boback were appropriate.

In the remainder of the Brief in Opposition, LabMD argues that if the Court finds that LabMD violated the Deposition Protective Order, dismissal as a sanction is not warranted. Id. at 18-19. LabMD also contends that monetary sanctions are not warranted either. Id. at 20-22.

Further, LabMD asserts that a reprimand would be sufficient if the Court determines that a sanction is necessary. Id. at 22.

## IV.    LEGAL STANDARD

Federal Rule of Civil Procedure 37 authorizes a court to impose sanctions against a party that fails to comply with a court order. Fed. R. Civ. P. 37. Although the Federal Rules of Civil Procedure permit a court to sanction, "[t]he ultimate decision to impose sanctions under Rule 37 and any determination as to what sanctions are appropriate are matters entrusted to the discretion of the district court." Dufala v. Primanti Bros., No. 2:15-cv-647, 2015 U.S. Dist. LEXIS 132964, at *2 (W.D. Pa. Sept. 30, 2015) (citing Bowers v. Nat'l College Athletic Ass'n, 475 F.3d 524, 538 (3d Cir. 2007)).

There are two subsections of Federal Rule of Civil Procedure 37 which are implicated by LabMD's conduct in this matter: Rule 37(b)(2) and (c). Rule 37 provides, in relevant part:

> (b)(2) **Sanctions Sought in the District Where the Action is Pending**.
>
> (A) *For Not Obeying a Discovery Order*. If a party or a party's officer, director, or managing agent – or witness designated under Rule 30(b)(6) or 31(a)(4) – fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35 or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (i)  directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)  prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence:
>
> (iii)  striking pleadings in whole or in part;
>
> (iv)  staying further proceedings until the order is obeyed;
>
> (v)  dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

(C) *Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

In the instant case, the most troubling misconduct is the repeated failure of LabMD and its counsel to comply with this Court's discovery orders and directions, including the Order of Court dated June 21, 2019, granting a protective order as to the deposition questioning of witnesses by LabMD's counsel, as set forth above, *supra* at 8-9.

As recently recognized by District Judge Joy Flowers Conti of this Court:

In applying Rule 37(b), district courts have "very broad discretion" to use sanctions where necessary to ensure compliance with pretrial orders: this facilitates the "expeditious and sound management of the preparation of cases for trial." Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d Cir. 2007) (involving objections to a special master's R&R about Rule 16(f) sanctions). Although Rule 37(b) "provides a 'veritable arsenal of sanctions' to deter and rectify discovery violations," is not equivalent to carte blanche; the court's discretion is limited in two ways: (1) any sanction must be just; and (2) the sanction must be specifically related to the specific claim that was at issue in the order to provide discovery. Clientron Corp. v. Devon IT, Inc., 894 F.3d 568, 580-582 (3d Cir. 2018) (citations omitted) (rejecting veil piercing sanction not authorized by substantive law). In other words, the "unproduced discovery [must] be sufficiently material to the administration of due process to support a presumption that the failure to produce constituted an admission by the offending party that its asserted claim or defense lacked merit." Id. In Clientron, the court of appeals cautioned: "nothing in this opinion should be read to cast doubt on the District Court's authority to levy a sanction given the gravity of the misconduct, nor should the opinion be read to take issue with the severity of the sanction originally imposed." 894 F.3d at 582.

In Deitrick v. Costa, No. 4:06-CV-1556, 2019 WL 450216 (M.D. Pa. Feb. 5, 2019), the court succinctly summarized the legal rules governing the imposition of sanctions on a party who fails to comply with a discovery order:

25

Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes the imposition of sanctions against a party who fails to comply with a discovery order. DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 2014). "The choice of an appropriate sanction generally is committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d at 788 (citation omitted). "Sanctions for the violation of Rule 37(b)(2)(A) include orders by the court ranging from designating that certain facts be admitted, to prohibiting the disobedient party from supporting or opposing designated claims or defenses, to monetary damages or even to the dismissal of all or part of the action." Craig v. Kelchner, No. 3:07-CV-1157, 2010 WL 528331 (M.D. Pa. Feb. 11, 2010) (citing Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii)). In addition, Fed. R. Civ. P. 37(b)(2)(C) provides for the sanction of reasonable expenses including attorney fees against a party failing to comply with an Order.

...

In imposing sanctions, the sanction must be specifically related to the particular claim or claims at issue in the Order to provide discovery violated by the offending party. Furthermore, the Court must "assess the culpability of the offending party and the prejudice to the party seeking sanctions" in determining the appropriate sanction. Craig v. Kelchner, No. 3:07-CV-1157, 2010 WL 528331 (M.D. Pa. Feb. 11, 2010) (citation omitted).

[2010 WL 528331,] at *5. Rule 37(b)(2)(C) directs that instead of or in addition to the sanctions described above, the court "must" order the disobedient party, the advising attorney, or both to pay the reasonable expenses, including attorney's fees caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust. In re Atomica Design Grp., Inc., No. 12-17235, 591 B.R. 217, 233 (Bankr. E.D. Pa. 2018).

Miller v. Thompson-Walk, No. 15-1605, 2019 WL 2150660, at *9 (W.D. Pa. May 17, 2019).

It is also recognized that a party subject to a sanction under Rule 37(b)(2) generally has engaged in multiple discovery violations. See Nat'l Fire & Marine Ins. Co. v. Robin James Construction, Inc., 478 F. Supp. 2d 660, 663 (D. Del. 2007) (sanctioning defendant for violating multiple discovery orders); Moser v. Bascelli, 879 F. Supp. 489, 493-94 (E.D. Pa. 1995)

(imposing a sanction of attorneys' fees and expenses on plaintiff for continuing to disobey a court order).

Furthermore, when considering dismissal as a sanction, the United States Court of Appeals for the Third Circuit requires that a court balance "the record as a whole" along with "(1) the extent of the party's personal responsibility; (2) prejudice to the adversary; (3) a history of dilatoriness; (4) whether the attorney's conduct was willful or in bad faith; (5) alternative sanctions; and (6) the meritoriousness of the claim." Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984).

## V. LEGAL ANALYSIS

Tiversa, joined by Boback, seeks the imposition of sanctions against LabMD and its counsel for repeatedly violating the Deposition Protective Order, ECF No. 379, by continued improper questioning of the deponents during the 6 days immediately following the issuance of the Order. Tiversa argues that this conduct by LabMD is part of a pattern of repeated disregard by LabMD for this Court's admonishments and Orders. Tiversa notes that the Court provided clear notice in the Deposition Protective Order "to LabMD and its counsel that if this Order is disregarded that this Court may impose sanctions, up to and including the dismissal of this action as provided for by Federal Rule of Civil Procedure 37(b)." ECF No. 379 at 6.

### A. Appropriateness of Sanctions

Based on the record before this Court as to the history of the conduct of LabMD and its counsel relative to their discovery tactics, disregard of Court admonitions, disregard of Court Orders, and now willful disregard of the clear direction and notice set forth in the Deposition Protective Order, this Court finds that the conduct of LabMD and its counsel warrants the imposition of sanctions.

27

The history of LabMD's discovery conduct, abuse of discovery, and repeated disregard of Court Orders is clearly set forth, in part, in the "Relevant Procedural History" section of this Memorandum Opinion, *supra* at 1-10. We do not need to repeat the recitation of LabMD's discovery misconduct again here.

Most significant to the pending Motion for Sanctions is that on June 21, 2019, this Court found that LabMD's counsel was asking deposition questions that had nothing to do with the remaining portion of the defamation per se claim as to Statement Nos. 13 and 16. These questions included, for example:

- whether there was something secretive about a deponent's children;
- the strengths and weakness of a certain employee;
- the workplace culture of Tiversa;
- leadership styles at Tiversa;
- guns in the workplace;
- an AIDs clinic in Chicago;
- Edward Snowden;
- an Iranian IP address; and
- whether the deponent had ever met Judge Maureen P. Kelly.

ECF No. 379 at 2.

In granting Tiversa's Motion for Protective Order, this Court found that LabMD's counsel was asking many questions, having nothing whatsoever to do with Statement Nos. 13 and 16, contrary to the Court's directive during the status conference on June 11, 2019. This Court clearly and unequivocally found as follows:

- The Court had repeatedly advised counsel that discovery must be limited to the portion of the sole remaining claim in this case—the defamation per se claim as to Statement Nos. 13 and 16.

- The Court had repeatedly discussed with counsel the corresponding requirements of proportionality.

- LabMD had repeatedly attempted to push or has gone beyond the boundaries of the requirements of Rule 26 and disregarded the Orders of this Court: by consistently attempting to engage in "fishing expeditions;" by seeking information that is not relevant to the remaining claim in this case; by seeking information to be used in the *qui tam* action, state court actions or other litigation in other forums; and by attempting to relitigate previously disposed of legal matters.

- LabMD's discovery conduct had sought information that was not for the requisite legitimate and proper purpose.

Due to LabMD's "ongoing discovery tactics, disregard this Court's prior admonishments and orders and the limited nature of the remaining defamation per se claim," the Court granted the Motion for Protective Order. Id. at 6.

In the Deposition Protective Order, the Court expressly ruled that "[t]he scope of the depositions in this action must be limited to the remaining portion of the defamation per se claim, specifically Statements #13 and #16, LabMD's alleged damages and defenses thereto." Id.

Given the pattern of discovery misconduct by LabMD and its counsel, the Court put LabMD and its counsel on clear "NOTICE": "that if this Order is disregarded this Court may

impose sanctions up to and including the dismissal of this action, as provided for in Fed. Rule of Civil Procedure 37(b)." Id. (capitalization in original).

In the instant Motion for Sanctions, Tiversa sets out in detail examples of deposition questions asked by LabMD's counsel that, upon careful review by this Court, reveal an utter disregard by LabMD's counsel for Deposition Protective Order entered on June 21, 2019. These questions were asked by LabMD's counsel of former employees of Tiversa during depositions between June 24, 2019 and June 27, 2019, starting just three days after the issuance of the Order.[13]

First, LabMD's counsel asked many of the same questions on the very same topics that were brought before the Court in the Motion for Protective Order and found to be violative of Rule 26. These repeated questions/topics included, but were not limited to:

- The workplace culture at Tiversa;

- Guns in the workplace;

- A nonparty's stay at a treatment facility;

- Performance of certain employees at Tiversa; and

- Whether any Tiversa employees ever did any "illegal things."

Second, LabMD also spent considerable time in these six depositions asking questions having no relevance to Statement Nos. 13 and 16, nor Tiversa's defenses. These topics included, but were not limited to:

---

[13] Tiversa correctly points out in its Reply that LabMD, in its Brief in Opposition, did not address Tiversa's citation to specific questions in each deposition that were violative of the Deposition Protective Order. LabMD only generally referenced 5 categories of broad deposition questions. ECF No. 411 at 2.

- The spread of the 1718 File;[14]

- The FTC investigation, which this Court previously ruled does "not relate to Statement Nos. 13 and 16 and whether the 1718 file was publicly available and/or leaked" and, as such, this Court previously declined to permit discovery by LabMD as to the FTC and FTC investigations finding such discovery to be "fishing expeditions" for long since concluded investigations or for other cases, ECF No. 408 at 9;

- Tiversa's day-to-day operations; and

- The *Devil Inside the Beltway.*

Third, LabMD also spent a substantial portion of each of these depositions engaging in the type of "fishing expeditions" that this Court had expressly prohibited—again seeking discovery for other cases or in other forums or claims that had long since been dismissed.[15] These questions included, but were not limited to:

- Questions directly related to claims and parties in the other federal case, Case No. 17-368;

- Questions relative to the *qui tam* action;

---

[14] In an attempt to again broaden the scope of the depositions in disregard of the Deposition Protective Order, LabMD stretches and argues in its Brief in Opposition that "there is every reason to expect Defendants will continue to rely in this case on the same false claims of spread of LabMD's confidential information and falsified digital evidence and metadata that they have in the past in an effort to prove that LabMD's confidential patient information really was publicly available instead of hacked by special means only available to the FBI and to Defendants." ECF No. 407 at 7-8. The Court takes note, as correctly pointed out by Tiversa in its Reply, that LabMD does not, and cannot, point to any discovery responses, answer, or briefs filed by Tiversa wherein it relies upon or uses the spread of the 1718 File as a defense to the remaining defamation per se claim as to Statement Nos. 13 and 16. ECF No. 411 at 3.

[15] It is important to note that the Court again warned LabMD against using the depositions as a "fishing expedition" for other cases during and emergency telephone conference on June 27, 2019 at 8:30 a.m., immediately prior to the depositions of Dean, Ways and Shuck, three former Tiversa employees.

- Questions relative to a Fourth Forensic Report, which relates to Case No. 17-368;

- Questions relative to a Cigna report years prior to the alleged defamatory statements;

- Questions related to alleged metadata alteration by Tiversa.

Fourth, as to each of these depositions, LabMD's counsel either asked no questions relative to Statement Nos. 13 and 16 or asked very minimal questions relative to the two statements remaining at issue in this case. Instead, LabMD's counsel used the depositions to obtain discovery for other cases.

Fifth, despite previous admissions by LabMD's counsel that he had no evidence to support his allegation of purported witness intimidation during the February 7, 2019 status conference and again during a telephone conference on June 11, 2019, ECF Nos. 370 at 15-16 and ECF No. 367 at 31-32, and this Court's ruling denying LabMD's Motion for Protective Order to Protect Witnesses from Defendant Robert J. Boback's Intimidation and Threats as meritless, LabMD used the depositions in the 6 depositions to ask improper questions about this issue. As this Court has previously ruled, based on the admissions of LabMD's counsel and absence of any genuine substantiated evidence in at least the last 4 to 5 years, LabMD's attempts to collect evidence regarding these alleged dated incidents of purported witness intimidation from 2014 and 2015 "appear[] to be an attempt [by LabMD] to again to again take the focus of this case away" from discovery in this case and "yet another attempt by LabMD to relitigate past disputes between the parties from other forums." ECF No. 371 at 3. As such, this Court found LabMD's allegations were unsubstantiated and "in no way relevant to Statement Nos. 13 and 16." ECF No. 408 at 9.

Finally, the Court is compelled to recognize that LabMD and its counsel used these "fishing expedition" depositions in violation of the Deposition Protective Order in order to gain information for yet another lawsuit that LabMD filed on June 26, 2019 in the United States District Court for the Eastern District of Virginia, Case No. 1:19-cv-852, against Tiversa, Boback, Tiversa's attorneys and other defendants. ECF No. 387. This Court conducted an emergency telephone conference the following day on June 27, 2019. ECF Nos. 391 and 403. At the conclusion of the telephone conference, this Court expressed its significant concern that the new Virginia federal lawsuit, filed at a key point in discovery in this case, against Defendants Tiversa, Boback, and counsel, was part of a litigation strategy by LabMD to "purposefully interfere with discovery" and, as with the lawsuit that was filed by LabMD at 17-1365 that was previously dismissed, was a purposeful "attempt to interfere with Tiversa's counsel and its ability to represent Tiversa, whether it is an attempt to intimidate defense counsel and an attempt to interfere with [Tiversa's] right to representation." ECF No. 403 at 15-16. This Court further stated: "I just want to be clear and caution LabMD and its counsel against abusive litigation practices. That is something that is not tolerated in the United States District Court for the Western District of Pennsylvania." Id. The Court also warned LabMD's counsel that his *pro hac vice* admission status could be removed for a pattern of abusive litigation practices. Id. at 16-17.

### B.    Sanctions

For the reasons set forth above, the imposition of discovery sanctions against LabMD and its counsel is appropriate.

As to specific sanctions, Tiversa argues that it is entitled to its attorneys' fees and costs to prepare and file the Motion for Sanctions, at a minimum. Tiversa suggests that the Court impose

33

sanctions "barring" the improper testimony from use in this litigation or dismissing the case. ECF No. 393 at 14. However, Tiversa defers to the Court's judgment as to the sanctions warranted by the conduct of LabMD and its counsel. Id.

As previously recognized in this Memorandum Opinion, *supra* at 25-26, federal district courts have very broad discretion to use sanctions to ensure compliance with court orders. Miller v. Thompson-Walk, No. 15-1605, 2019 WL 2150660, at *9 (May 17, 2019 W.D. Pa.). Rule 37(b) provides courts with a "veritable arsenal of sanctions" to use to deter and rectify discovery violations. Id. In considering the imposition of a just sanction, the Court's discretion is limited in two ways: (1) any sanction must be just; and (2) the sanction must be related to the claim that was at issue. Id.; see also Clientron Corp. v. Devon IT, Inc., 894 F.3d 568, 580 (3d Cir. 2018). The district court "must ensure that the sanction is tailored to meet the harm identified." Klein v. Stahl GMBH, 185 F.3d 110-11 (3d Cir. 1999) (quoting Republic of the Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 73 (3d Cir. 1994)).[16]

Having carefully considered Tiversa's Motion for Sanctions, LabMD's Brief in Opposition and Tiversa's Reply and applicable decisions, the Court finds that it must impose sanctions to address the apparent willful decisions by LabMD and its counsel to disregard the Orders of this Court, most recently the Deposition Protective Order dated June 21, 2019. Having attempted prior admonitions, orders, and clear NOTICE in the Deposition Protective Order, to address the conduct of LabMD and its counsel, the Court must now move to sanctions. The

---

[16] As explained by the United Stated Court of Appeals for the Third Circuit in Clientron Corp. v. Devon IT, Inc., federal courts can invoke their inherent authority to impose sanctions even if procedural rules exist which sanction the same conduct. Clientron, 894 F.3d at 577, n. 4. However, the "preferred" course, as found by the Third Circuit, "is that when statutory or rules-based sanctions are entirely adequate, they should be invoked rather than inherent power." Id. As such, because Rule 37 provides an adequate basis for discovery sanctions in this case, the Court declines to exercise its inherent powers. That said, given the record of LabMD's discovery misconduct addressed herein, the imposition of the same sanctions would be warranted under the Court's inherent authority.

sanctions imposed are tailored to address the misconduct and resulting harm. The Court imposes the following sanctions.

First, Tiversa and Boback are awarded the reasonable attorneys' fees and costs incurred related to the Motion for Sanctions and all filings related thereto. Tiversa and Boback shall file a petition which documents the attorneys' fees and costs incurred by September 6, 2019. LabMD shall file a response, limited to the issue of reasonableness only, by September 27, 2019.

Second, Attorney James Hawkins is ordered to pay for all of the court reporter fees and transcript costs incurred by Tiversa and Boback relative to the depositions of: Robert Boback, Keith Tagliaferri, Richard Wallace, Jeromy Dean, Sean Ways and Jason Shuck.

Third, LabMD is precluded from using any of the testimony elicited during the depositions of Robert Boback, Keith Tagliaferri, Richard Wallace, Jeromy Dean, Sean Ways and Jason Shuck, including in responding to any motion for summary judgment and for any purpose whatsoever in the trial of this case, should LabMD's remaining claim survive the scheduled motion for summary judgment.

Fourth, LabMD is expressly barred from using the deposition testimony of Robert Boback, Keith Tagliaferri, Richard Wallace, Jeromy Dean, Sean Ways and Jason Shuck in any other litigation in any other forum, based on LabMD's "fishing expedition" and LabMD's obvious attempt to use the 6 depositions of these 6 former Tiversa employees to elicit testimony for use in other cases or other forums.

Fifth, given the gravity of the misconduct and discovery litigation tactics of LabMD and its counsel in disregarding orders of this Court and violating the applicable rules, this Court could have imposed a case dispositive sanction under Rule 37 and considering the six factors set forth in Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984). However, this

Court exercises its discretion and does not do so. Nonetheless, the Court puts LabMD and Attorney Hawkins on final notice that any further litigation misconduct or disregard of orders of this Court will result in the dismissal of this case and the termination of the *pro hac vice* admission of Attorney Hawkins.

## VI.    CONCLUSION

This Court does not derive pleasure from ruling on the Motion for Sanctions before it today. However, as made clear by the pattern of discovery conduct engaged in by LabMD and its counsel, Attorney Hawkins, this Court is compelled to impose sanctions in order to ensure that LabMD and its counsel conduct themselves in accordance with the Federal Rules of Civil Procedure and the orders and admonitions of this Court. This Court has been more than patient in addressing the ongoing misconduct and discovery/litigation tactics of LabMD and its counsel. Again, they must be held accountable, having previously been given notice and warned, sanctions must be imposed. An appropriate order follows.

AND NOW, this _16th_ day of August 2019, it is hereby ORDERED that Defendants' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37(b)(2), ECF Nos. 393 and 402, is GRANTED as follows:

1. Tiversa and Boback are awarded the reasonable attorneys' fees and costs incurred related to the Motion for Sanctions and all filings related thereto. Tiversa and Boback shall file a petition which documents the attorneys' fees and costs incurred by September 6, 2019. LabMD shall file a response, limited to the issue of reasonableness only, by September 27, 2019.

2. Attorney James Hawkins is ordered to pay for all of the court reporter fees and transcript costs incurred by Tiversa and Boback relative to the depositions of: Robert

Boback, Keith Tagliaferri, Richard Wallace, Jeromy Dean, Sean Ways and Jason Shuck.

3. LabMD is precluded from using any of the testimony elicited during the depositions of Robert Boback, Keith Tagliaferri, Richard Wallace, Jeromy Dean, Sean Ways and Jason Shuck, including in responding to any motion for summary judgment and for any purpose whatsoever in the trial of this case, should LabMD's claims survive the scheduled motion for summary judgment.

4. LabMD is expressly barred from using the deposition testimony of Robert Boback, Keith Tagliaferri, Richard Wallace, Jeromy Dean, Sean Ways and Jason Shuck in any other litigation in any other forum, based on LabMD's "fishing expedition" and LabMD's obvious attempt to use the 6 depositions of these 6 former Tiversa employees to elicit testimony for use in other cases or other forums.

BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF.