IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LABMD, INC., <br>                 Plaintiff, <br> vs. <br> TIVERSA HOLDING CORP. *formerly known as* TIVERSA, INC. and ROBERT J. BOBACK, <br>                 Defendants. | Civil Action No. 15-92 <br> Magistrate Judge Maureen P. Kelly <br><br> Re: ECF Nos. 137 and 564 |

## MEMORANDUM OPINION

Plaintiff LabMD, Inc. ("LabMD") has filed this civil action arising out of an alleged shakedown scheme executed by Defendant Tiversa, Inc. ("Tiversa") and Defendant Robert J. Boback ("Boback") (collectively, "Defendants"). Following a lengthy procedural history, including an appeal to the United States Court of Appeals for the Third Circuit and subsequent remand, LabMD's only remaining claim is a portion of a defamation per se claim.

Presently before the Court is Defendants' Supplemental Brief in Support of Motion to Dismiss the Remaining Claims in Plaintiff's First Amended Complaint, ECF No. 564, in which Defendants renew arguments raised in a previously filed Motion to Dismiss, ECF Nos. 137 and 138, relative to five alleged defamatory statements. For the reasons that follow, the renewed Motion to Dismiss is denied.[1]

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct all proceedings in this case, including the entry of a final judgment. ECF Nos. 249 and 250.

1

## I. FACTUAL AND PROCEDURAL HISTORY

LabMD commenced this action by Complaint filed on January 21, 2015. ECF No. 1. After the disposition of two motions to dismiss, LabMD filed the operative Amended Complaint on February 12, 2016. ECF Nos. 34, 36, 70, 115, 125 and 129.

### A. Amended Complaint

In the Amended Complaint, LabMD describes an allege shakedown scheme in which Defendants conspired to infiltrate LabMD's computer systems and, upon gaining access, created a data security breach in LabMD's computer files. ECF No. 125 ¶ 4. Through this breach, Tiversa obtained a 1718-page file containing confidential patient health-related data ("the 1718 File"). Id. ¶ 37. With this file as proof of a breach, Tiversa then offered to sell LabMD services to remedy the breach. Id. ¶ 43. When LabMD refused to purchase Tiversa's services, Defendants turned to the Federal Trade Commission ("FTC") and reported that due to LabMD's failed data security protocols, confidential patient health and personal information was disseminated on peer-to-peer[2] networks for unbridled use by identity thieves. Id. ¶¶ 77-83. The FTC instituted an administrative action. In the Matter of LabMD, Inc., No. 9357 (FTC). LabMD alleges that as a result of Defendants' conduct, it is now "an insolvent shell of a company." Id. ¶ 1.

LabMD originally brought a claim for defamation per se (Count II) based on 20 alleged defamatory statements, which it claims diminished LabMD's reputation and hurt its business by casting doubt on its identity as "a business that operates legally, ethically and honestly." Id. ¶¶ 159-174. Relevant here, LabMD's claim arose in part out of these statements.

---

[2] Also referred to "P2P."

1. **Defamatory Statement Nos. 10-14**

LabMD identifies Defamatory Statement Nos. 10-14 as the following statements published by Defendants in a February 10, 2015, statement to "The Pathology Blawg":

> After all, we found this file in a public file sharing network that was accessible by millions of people from around the world. (Defamatory Statement No. 10).
>
> The FTC then filed a Civil Investigative Demand (CID) that forced Tiversa to comply. In compliance with the CID, Tiversa provided information on 84 companies that were breaching information and that matched the criteria of the CID. LabMD was one of those listed. (Defamatory Statement No. 11).
>
> Tiversa has not had a single criminal allegation alleged against us by any individual or organization in our entire 11 year history .... not even Daugherty or LabMD, despite the defamatory and baseless allegations of extortion, theft and fraud. One would think that if Daugherty truly believed he was the victim of an actual extortion plot, as he has suggested, he would have called the police or FBI. To my knowledge, he has not. It is my belief that he knows that if he files a false police statement, he could be prosecuted, which may be the likely reason why he has decided not to do so. (Defamatory Statement No. 12).
>
> LabMD lawsuit - The claims are baseless and completely unsubstantiated .... even in the complaint itself. This appears to be another attempt by Daugherty to distract people from the INDISPUTABLE FACT that LabMD and Michael Daugherty leaked customer information on nearly 10,000 patients. (Defamatory Statement No. 13).
>
> To my understanding from the deposition transcripts, LabMD had a policy against installing file sharing software. An employee at LabMD violated that policy, which resulted in the exposure of nearly 10,000 patients['] private information. This clearly demonstrates that LabMD DID NOT adequately protect their patient's [sic] PHI/PII, which is al[l] that the FTC needs to demonstrate. Case closed. The rest of this is just a desperate attempt to distract everyone from that INDISPUTABLE FACT. (Defamatory Statement No. 14).

Id. ¶ 133.

As to these statements, LabMD alleges that "Defamatory Statements Nos. 10-14 are expressly or impliedly false because the 1718 File was not found in 'a public file sharing network that was accessible by millions of people from around the world.'" Id. ¶ 134.

### 2. Defamatory Statement Nos. 15-20

LabMD identifies Defamatory Statement Nos. 15-20 as the following statements published by Defendants in a letter to the editor of The Wall Street Journal, published in the December 9, 2015, edition:

> LabMD, a Georgia-based cancer screening company, admits its own employee mistakenly exposed the confidential medical records of nearly 10,000 individuals on the Internet. (Defamatory Statement No. 15).
>
> LabMD's CEO Michael Daugherty admits that a LabMD employee improperly installed LimeWire file-sharing software on a company computer. Doing so made confidential patient information publicly available over the Internet. (Defamatory Statement No. 16).
>
> Using this information, LabMD discovered that it had peer-to-peer sharing software on a company computer. Without Tiversa's free information, LabMD would have never known it was continuing to publicly expose patient information. (Defamatory Statement No. 17).
>
> The suggestion that Tiversa provided information on exposed files to the Federal Trade Commission as a means of retribution because LabMD didn't hire Tiversa is 100% false. (Defamatory Statement No. 18).
>
> In the Fall of 2009 - well over a year later - as part of its investigation into cyber leaks, the FTC issued the equivalent of a subpoena to Tiversa, which legally required us to provide information on all the breaches we found from many companies. There was absolutely no "deal" entered into between the FTC and Tiversa. It is no different than the subpoena the FTC issued on LabMD. LabMD was legally required to respond, as was Tiversa. (Defamatory Statement No. 19).
>
> As a result of this dispute, LabMD's CEO has defamed my company and made statements that are 100% wrong. (Defamatory Statement No. 20).

Id. ¶ 135.

As to these statements, LabMD alleges that "Defamatory Statements Nos. 10-14 are expressly or impliedly false because the 1718 File was not found in 'a public file sharing network that was accessible by millions of people from around the world.'" Id. ¶ 134.

**2. Defamatory Statement Nos. 15-20**

LabMD identifies Defamatory Statement Nos. 15-20 as the following statements published by Defendants in a letter to the editor of The Wall Street Journal, published in the December 9, 2015, edition:

> LabMD, a Georgia-based cancer screening company, admits its own employee mistakenly exposed the confidential medical records of nearly 10,000 individuals on the Internet. (Defamatory Statement No. 15).
>
> LabMD's CEO Michael Daugherty admits that a LabMD employee improperly installed LimeWire file-sharing software on a company computer. Doing so made confidential patient information publicly available over the Internet. (Defamatory Statement No. 16).
>
> Using this information, LabMD discovered that it had peer-to-peer sharing software on a company computer. Without Tiversa's free information, LabMD would have never known it was continuing to publicly expose patient information. (Defamatory Statement No. 17).
>
> The suggestion that Tiversa provided information on exposed files to the Federal Trade Commission as a means of retribution because LabMD didn't hire Tiversa is 100% false. (Defamatory Statement No. 18).
>
> In the Fall of 2009 - well over a year later - as part of its investigation into cyber leaks, the FTC issued the equivalent of a subpoena to Tiversa, which legally required us to provide information on all the breaches we found from many companies. There was absolutely no "deal" entered into between the FTC and Tiversa. It is no different than the subpoena the FTC issued on LabMD. LabMD was legally required to respond, as was Tiversa. (Defamatory Statement No. 19).
>
> As a result of this dispute, LabMD's CEO has defamed my company and made statements that are 100% wrong. (Defamatory Statement No. 20).

Id. ¶ 135.

LabMD alleges that Statement Nos. 15-20 are "expressly and/or impliedly false because LabMD never admitted that any of its employees ever exposed anything on the Internet," and "[a]n installation of LimeWire did not make confidential patient information publicly available over the Internet." Id. ¶ 136.

LabMD also sued for tortious interference with existing and prospective business relationships (Count III), fraud (Count IV), negligent misrepresentation (Count V), and civil conspiracy (Count VI). Id. ¶¶ 174-200.[3]

### B. Prior Disposition of Motion to Dismiss Amended Complaint

Defendants moved to dismiss the Amended Complaint on March 11, 2016. ECF Nos. 137 and 138. The undersigned issued a Report and Recommendation, recommending that Defendants' Motion to Dismiss be granted as to Counts III, IV, V and VI. It was further recommended that the Motion to Dismiss the defamation claim, Count II, be granted in part (as to Statement Nos. 1-12, 14-15 and 17-20) and denied in part (as to Statement Nos. 13 and 16). ECF No. 166 at 20.

As to Statement Nos. 10-14, the undersigned concluded that LabMD only specifically addressed one of these statements, Statement No. 13, in its response in opposition to the Motion to Dismiss, and it focused on the phrases "indisputable fact" and "leaked customer information." Thus, it appeared that LabMD had conceded that Statement Nos. 10-12 and 14 were not defamatory. Id. at 9.

As to Statement Nos. 15-20, the undersigned found that LabMD offered no direct response to Defendants' arguments but only disputed the portion of those statements in which patient

---

[3] Counts I, VII and VIII of LabMD's original Complaint were dismissed with prejudice, while Counts II, III, IV, V and VI were dismissed without prejudice with leave to amend. ECF Nos. 115 and 129. LabMD did not replead a claim under Count I in the Amended Complaint, so its first numbered claim is LabMD's defamation claim at Count II. ECF No. 125.

information was characterized as "publicly available." Thus, it appeared that LabMD had also conceded that Statement Nos. 15 and 17-20 were not defamatory. Id. at 10-11.

As to Statement No. 16, it was noted that LabMD disputed the characterization of the confidential patient information as "publicly available," arguing that even if such information were technically accessible via inadvertent file sharing, it was not legally available to the public. "Because the meaning of 'publicly available' is subject to interpretation, the Court cannot say that LabMD cannot maintain a defamation claim as to Defamatory Statement 16." Based on this, it was recommended that the portion of Count II based on Statement Nos. 15-20 be dismissed as to Statement Nos. 15 and 17 through 20—but not as to Statement No. 16. Id. at 11.

The Report and Recommendation was adopted by District Judge Mark R. Hornak. ECF No. 185.[4] As a result, LabMD's only remaining claim was its defamation per se claim at Count II relative to Statement Nos. 13 and 16.

### C. Third Circuit Appeal and Remand

The parties conducted extensive fact discovery as to LabMD's remaining claim. Defendants then moved for summary judgment. ECF Nos. 414 and 419. Upon consideration, the Court granted summary judgment for Defendants. ECF Nos. 464 and 465.

LabMD then appealed from multiple orders of this Court to the United States Court of Appeals for the Third Circuit, including the Order granting in part Defendants' Motion to Dismiss the Amended Complaint, and the Order granting summary judgment for Defendants. ECF Nos. 468, 469, 522 and 527.

Upon review, the Third Circuit vacated this Court's Order granting the Motion to Dismiss LabMD's defamation claim relative to Statement Nos. 10, 14, 15, 17 and 18, along with its Order

---

[4] The parties later consented to the jurisdiction of a United States Magistrate Judge to conduct proceedings in this case. ECF Nos. 249 and 250.

granting summary judgment relative to Statement Nos. 13 and 16, and it remanded for further proceedings. LabMD Inc. v. Boback, 47 F.4th 164 (3d Cir. 2022).

As to Statement Nos. 10, 14, 15, 17 and 18, the Third Circuit disagreed that LabMD had conceded the non-defamatory nature of those statements in responding to the Motion to Dismiss. The Third Circuit found that while LabMD had focused on the phrases "indisputable fact," "leaked" and "publicly available" that appear in Statement Nos. 13 and 16 (which the Court did not dismiss), Statement Nos. 10, 14, 15, 17 and 18 (which the Court did dismiss) contained similar language or characterizations. Based on this, the Third Circuit found this Court had too narrowly construed LabMD's argument, and it was improper to grant the Motion to Dismiss on this basis relative to Statement Nos. 10, 14, 15, 17 and 18. Id. at 183-85.

As a result, the Third Circuit directed as follows.

> We will therefore direct the reinstatement of LabMD's defamation claim pertaining to Statements 10, 14, 15, 17, and 18. On remand, the District Court may consider any other arguments Tiversa has made in favor of dismissing the claim as to those statements.

Id. at 185.

The Third Circuit also vacated the Court's Order granting summary judgment on the defamation claim as to Statement Nos. 13 and 16, and it remanded for further proceedings. Id. at 188.

**D. Renewed Motion to Dismiss**

Upon remand, the Court entered an Order on December 15, 2022 reinstating LabMD's defamation claim, Count II, as to Statement Nos. 10, 14, 15, 17 and 18, and it allowed Defendants to renew any other arguments it previously made in favor of dismissing the claim, as per the ruling of the Third Circuit. ECF Nos. 561 and 562.

On January 18, 2023, Defendants filed this Supplemental Brief in Support of the Motion to Dismiss. ECF No. 564. LabMD filed a Brief in Opposition. ECF No. 565. Defendants filed a Reply. ECF No. 566.

The renewed Motion to Dismiss is ripe for consideration.

## II.  LEGAL STANDARD

In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed]

conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim

### III. DISCUSSION

Defendants renew their Motion to Dismiss as to the remaining portion of LabMD's defamation per se claim, Count II, relating to Statement Nos. 10, 14, 15, 17 and 18. ECF No. 564. Under Pennsylvania law, the elements of a defamation claim are codified by statute. In order to successfully establish a claim for defamation, the plaintiff has the burden of proving:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

42 Pa. C.S.A. § 8343(a).

A defamatory statement is one that "tends so to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from dealing with him or her." U.S. Healthcare v. Blue Cross of Greater Phila., 898 F.2d 914, 923 (3d Cir. 1990) (quoting Birl v. Phila. Elec. Co., 17 A.2d 472 (Pa. 1960)). The court determines, in the first instance, whether a statement is capable of defamatory meaning. Id. If the court decides that it is capable of a defamatory meaning, then it is for the jury to decide whether the statement was understood as such by the reader or listener. Id.

Truth is an affirmative defense to defamation. Tucker v. Fischbein, 237 F.3d 275, 288 (3d Cir. 2001) (citing Pa. Const. Stat. Ann. § 8343(b)(1). A defamation claim may be dismissed when the affirmative defense of truth is apparent on the face of a complaint. Morrison v. Chatham Univ., Civ. A. No. 16-476, 2016 WL 4701460, at *11-12 (W.D. Pa. Sept. 8, 2016). Further, pure expressions of opinion cannot support an action in defamation. McCafferty v. Newsweek Media Grp., Ltd., 955 F.3d 352, 357 (3d Cir. 2020).

The Court will address the statements at issue in the order presented by Defendants.

**A. Statement Nos. 10, 15 and 17**

Statement No. 10: After all we found this file in a public file sharing network that was accessible by millions of people from around the world.

Statement No. 15: LabMD, a Georgia-based cancer screening company, admits its own employee mistakenly exposed the confidential medical records of nearly 10,000 individuals on the Internet.

Statement No. 17: Using this information, LabMD discovered that it had peer-to-peer sharing software on a company computer. Without Tiversa's free information, LabMD would have never known it was continuing to publicly expose patient information.

ECF No. 125 ¶¶ 133, 135.

In support of the Motion to Dismiss, Defendants argue that Statement Nos. 10, 15 and 17 are not defamatory as a matter of law because they are true. According to Defendants, these statements all relate to the exposure of the 1718 File through a P2P network. Defendants argue that the Complaint heavily references the public accessibility of the 1718 File through P2P network capabilities, and that LabMD has conceded the file was accessed through "inadvertent file sharing." Defendants also contend that LabMD has made substantially similar statements in other public filings, and that courts in Pennsylvania have explained that files housed on P2P networks

are "accessible [by] the general public." ECF No. 564 at 3-7 (quoting Motown Rec. Co., L.P. v. Kovalcik, No. 07-cv-4702, 2009 WL 455137, at *4 (E.D. Pa. 2005)).

In response, LabMD argues that this Court has already denied the Motion to Dismiss as to Statement No. 16, and the Third Circuit found that Statement Nos. 15, 17 and 18 are substantially similar in that they all allege the 1718 File being publicly available. LabMD also disputes that it has admitted to exposing the 1718 File, and it instead alleges that Defendants hacked into a LabMD computer. ECF No. 565 at 2-6.

Upon review, the Motion to Dismiss is denied as to Statement Nos. 10, 15 and 17. The Court has held allegations the 1718 File was "publicly available" to be capable of defamatory meaning. Based on the Third Circuit's finding these statements are substantially similar and contain analogous phrasing, dismissal on this basis is improper. LabMD, 47 F.4th at 184-85.

### B. Statement No. 14

> Statement No. 14: To my understanding from the deposition transcripts, LabMD had a policy against installing file sharing software. An employee at LabMD violated that policy, which resulted in the exposure of nearly 10,000 patients private information. This clearly demonstrates that LabMD DID NOT adequately protect their patient's PHI/PII, which is all that the FTC needs to demonstrate. Case closed. The rest of this is just a desperate attempt to distract everyone from that INDISPUTABLE FACT.

ECF No. 125 ¶ 133.

In support of the Motion to Dismiss, Defendants argue that LabMD's claim fails to state a claim as to Statement No. 14 because it is both true and a non-actionable opinion. Defendants argue that Boback signaled this was his opinion by stating it was "to [his] understanding" based on information contained in deposition transcripts. ECF No. 564 at 8-9.

In response, LabMD argues that use the phrase "to my understanding" does not shield Defendants from liability, and that this qualifying language only relates to the portion of the statement that refers to LabMD's policy. LabMD argues that Boback's assertion that patient

11

information was "exposed" was false and defamatory, as is the subsequent claim that LabMD did not adequately protect its patients' information, and that this false assertion was amplified by the claim this is "indisputable fact." ECF No. 565 at 8-9.

Upon review, the Court finds that dismissal is not warranted as to this statement at this stage of the case. As the Third Circuit found, Boback's assertion about "exposed files" is "effectively synonymous" with language the Court has held to be capable of defamatory meaning. LabMD, 47 F.4th at 184.

Although Defendants argue this is mere non-actionable opinion, the Court disagrees. Under Pennsylvania law, "a statement qualified by the speaker as being only an opinion may nevertheless be considered a statement of fact if it could 'reasonably be interpreted' as such by the audience." Meyers v. Certified Guaranty Co., 221 A.3d 662, 671 (Pa. Super. Ct. 2019) (citing Braig v. Field Commc'ns, 456 A.2d 1366, 1373 (Pa. Super. Ct. 1983)). Despite the use of the phrase "to my understanding," a reader could reasonably construe this as a statement of fact that LabMD had exposed patients' information. Indeed, the Court notes that Boback emphasizes his own statement as "INDISPUTABLE FACT." Accordingly, the Motion to Dismiss is denied as to Statement No. 14.

### C. Statement No. 18

> Statement No. 18: The suggestion that Tiversa provided information on exposed files to the Federal Trade Commission as a means of retribution because LabMD didn't hire Tiversa is 100% false.

ECF No. 125 ¶ 135.

As to Statement No. 18, Defendants argue that dismissal of this portion of the defamation claim is proper because reasonable readers would not understand this statement to be referring to LabMD. Defendants argue that when read in context, Boback is responding to the "suggestion" of op-ed writer Dan Epstein ("Epstein"), and not LabMD. ECF No. 564 at 11.

In response, LabMD argues that this statement is clearly "of and concerning LabMD," which Boback expressly refers to. And, it argues, Boback resurrects and relies on the prior false and defamatory allegation that LabMD's confidential files were exposed, which is itself false and defamatory. ECF No. 565 at 9-10.

Upon review, the Court finds that Motion to Dismiss should not be granted on this basis. While Boback may have been responding to Epstein's suggestion, he discusses LabMD's files as having been "exposed." As the Third Circuit found, Boback's characterization of the files as "exposed" is similar to accusations that the 1718 File was "publicly available," and is thus capable of defamatory meaning. LabMD, 47 F.4th at 185. Therefore, the Court denies the Motion to Dismiss LabMD's defamation claim as to Statement No. 18.

**IV.    CONCLUSION**

For the reasons set forth herein, the renewed Motion to Dismiss LabMD's defamation per se claim, Count II, as to Statement Nos. 10, 14, 15, 17 and 18 is denied. An appropriate Order follows.

Dated: March 29, 2023

BY THE COURT:

_Maureen P. Kelly_
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF.