## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LABMD, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 15-92 |
| | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| TIVERSA HOLDING CORP. *formerly* | ) | Re: ECF No. 583 |
| *known as* TIVERSA, INC. and ROBERT J. | ) | |
| BOBACK, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM ORDER</u>

Plaintiff LabMD, Inc. ("LabMD") has filed this civil action arising out of an alleged shakedown scheme executed by Defendant Tiversa, Inc. ("Tiversa") and Defendant Robert J. Boback ("Boback") (collectively, "Defendants"). Following a lengthy procedural history, including an appeal to the United States Court of Appeals for the Third Circuit and subsequent remand, LabMD's only remaining claim is a portion of a defamation per se claim.

Presently before the Court is Plaintiff's Motion to Compel Discovery. ECF No. 583. Defendants oppose the Motion. ECF No. 585. For the reasons below, the Motion to Compel is granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.  Amended Complaint

In the operative Amended Complaint, LabMD describes an alleged shakedown scheme in which Defendants conspired to infiltrate LabMD's computer systems and, upon gaining access, created a data security breach in LabMD's computer files. ECF No. 125 ¶ 4. Through this breach, Tiversa obtained a 1718-page file containing confidential patient health-related data ("the 1718

File"). <u>Id.</u> ¶ 37. With this file as proof of a breach, Tiversa then offered to sell LabMD services to remedy the breach. <u>Id.</u> ¶ 43. When LabMD refused to purchase Tiversa's services, Defendants turned to the Federal Trade Commission ("FTC") and reported that due to LabMD's failed data security protocols, confidential patient health and personal information was disseminated on peer-to-peer[1] networks for unbridled use by identity thieves. <u>Id.</u> ¶¶ 77-83. The FTC instituted an administrative action. <u>In the Matter of LabMD, Inc.</u>, No. 9357 (FTC).

Among other claims, LabMD originally brought a claim for defamation per se (Count II) based on 20 alleged defamatory statements, which it claims diminished LabMD's reputation and hurt its business by casting doubt on its identity as "a business that operates legally, ethically and honestly." <u>Id.</u> ¶¶ 159-174. This claim arose, in part, out of the following statements.

### 1. Defamatory Statement Nos. 10-14

LabMD identifies Defamatory Statement Nos. 10-14 as the following statements published by Defendants in a February 10, 2015, statement to "The Pathology Blawg":

> After all, we found this file in a public file sharing network that was accessible by millions of people from around the world. (Defamatory Statement No. 10).
>
> The FTC then filed a Civil Investigative Demand (CID) that forced Tiversa to comply. In compliance with the CID, Tiversa provided information on 84 companies that were breaching information and that matched the criteria of the CID. LabMD was one of those listed. (Defamatory Statement No. 11).
>
> Tiversa has not had a single criminal allegation alleged against us by any individual or organization in our entire 11 year history .... not even Daugherty or LabMD, despite the defamatory and baseless allegations of extortion, theft and fraud. One would think that if Daugherty truly believed he was the victim of an actual extortion plot, as he has suggested, he would have called the police or FBI. To my knowledge, he has not. It is my belief that he knows that if he files a false police statement, he could be prosecuted, which may be the likely reason why he has decided not to do so. (Defamatory Statement No. 12).

---

[1] Also referred to as "P2P."

LabMD lawsuit - The claims are baseless and completely unsubstantiated ….
even in the complaint itself.  This appears to be another attempt by Daugherty
to distract people from the INDISPUTABLE FACT that LabMD and Michael
Daugherty leaked customer information on nearly 10,000 patients.
(Defamatory Statement No. 13).

To my understanding from the deposition transcripts, LabMD had a policy
against installing file sharing software.  An employee at LabMD violated that
policy, which resulted in the exposure of nearly 10,000 patients['] private
information.  This clearly demonstrates that LabMD DID NOT adequately
protect their patient's [sic] PHI/PII, which is al[l] that the FTC needs to
demonstrate.  Case closed.  The rest of this is just a desperate attempt to
distract everyone from that INDISPUTABLE FACT.   (Defamatory
Statement No. 14).

Id. ¶ 133.

As to these statements, LabMD alleges that "Defamatory Statements Nos. 10-14 are

expressly or impliedly false because the 1718 File was not found in 'a public file sharing network

that was accessible by millions of people from around the world.'"  Id. ¶ 134.

### 2.  Defamatory Statement Nos. 15-20

LabMD identifies Defamatory Statement Nos. 15-20 as the following statements published

by Defendants in a letter to the editor of The Wall Street Journal, published in the December 9,

2015, edition:

LabMD, a Georgia-based cancer screening company, admits its own
employee mistakenly exposed the confidential medical records of nearly
10,000 individuals on the Internet.  (Defamatory Statement No. 15).

LabMD's CEO Michael Daugherty admits that a LabMD employee
improperly installed LimeWire file-sharing software on a company
computer.  Doing so made confidential patient information publicly available
over the Internet.  (Defamatory Statement No. 16).

Using this information, LabMD discovered that it had peer-to-peer sharing
software on a company computer.  Without Tiversa's free information,
LabMD would have never known it was continuing to publicly expose patient
information.  (Defamatory Statement No. 17).

3

The suggestion that Tiversa provided information on exposed files to the Federal Trade Commission as a means of retribution because LabMD didn't hire Tiversa is 100% false. (Defamatory Statement No. 18).

In the Fall of 2009 - well over a year later - as part of its investigation into cyber leaks, the FTC issued the equivalent of a subpoena to Tiversa, which legally required us to provide information on all the breaches we found from many companies. There was absolutely no "deal" entered into between the FTC and Tiversa. It is no different than the subpoena the FTC issued on LabMD. LabMD was legally required to respond, as was Tiversa. (Defamatory Statement No. 19).

As a result of this dispute, LabMD's CEO has defamed my company and made statements that are 100% wrong. (Defamatory Statement No. 20).

Id. ¶ 135.

LabMD alleges that Statement Nos. 15-20 are "expressly and/or impliedly false because LabMD never admitted that any of its employees ever exposed anything on the Internet," and "[a]n installation of LimeWire did not make confidential patient information publicly available over the Internet." Id. ¶ 136.   LabMD asserts that Tiversa gave the FTC the 1718 File and other "evidence" in retribution for LabMD not hiring Tiversa.   Id.

LabMD also sued for tortious interference with existing and prospective business relationships (Count III), fraud (Count IV), negligent misrepresentation (Count V), and civil conspiracy (Count VI).  Id. ¶¶ 174-200.[2]

**B.  Prior Disposition of Motion to Dismiss Amended Complaint**

Defendants moved to dismiss the Amended Complaint on March 11, 2016.  ECF No. 137. The undersigned issued a Report and Recommendation, recommending that Defendants' Motion to Dismiss be granted as to Counts III, IV, V and VI.  It was further recommended that the Motion

---

[2] Counts I, VII and VIII of LabMD's original Complaint were dismissed with prejudice, while Counts II, III, IV, V and VI were dismissed without prejudice with leave to amend.  ECF Nos. 115 and 129.  LabMD did not replead a claim under Count I in the Amended Complaint, so its first numbered claim is LabMD's defamation claim at Count II.  ECF No. 125.

to Dismiss the defamation claim, Count II, be granted in part (as to Statement Nos. 1-12, 14-15 and 17-20) and denied in part (as to Statement Nos. 13 and 16).  ECF No. 166 at 20.

As to Statement Nos. 10-14, the undersigned concluded that LabMD only specifically addressed one of these statements, Statement No. 13, in its response in opposition to the Motion to Dismiss, and it focused on the phrases "indisputable fact" and "leaked customer information." Thus, it appeared that LabMD had conceded that Statement Nos. 10-12 and 14 were not defamatory.  Id. at 9.

As to Statement Nos. 15-20, the undersigned found that LabMD offered no direct response to Defendants' arguments but only disputed the portion of those statements in which patient information was characterized as "publicly available."  Thus, it appeared that LabMD had also conceded that Statement Nos. 15 and 17-20 were not defamatory.  Id. at 10-11.

The Report and Recommendation was adopted by District Judge Mark R. Hornak.[3]  ECF No. 185.  As a result, LabMD's only remaining claim was its defamation per se claim at Count II relative to Statement Nos. 13 and 16.

**C.  Discovery**

The parties conducted extensive fact discovery as to LabMD's sole remaining claim.  As LabMD described in its Rule 26(f) report, that discovery included the following topics.

- The technology used by Tiversa to search for, access and take the 1718 File from LabMD, Inc. and all communications related thereto;

- Search terms used by Tiversa to access and take the 1718 File from LabMD, Inc. and all communications related thereto;

- Individuals who were involved in the search for, accessing and taking the 1718 File from LabMD and all communications related thereto;

---

[3] The parties later consented to the jurisdiction of a United States Magistrate Judge to conduct proceedings in this case.  ECF Nos. 249 and 250.

- Individuals who were or became aware of the means by which Tiversa searched for, accessed and took the 1718 File from LabMD and all communications related thereto;

- The means by which Tiversa altered metadata to make it appear that LabMD's 1718 File was found at certain IP addresses and all communications related thereto;

- The inconsistencies in Tiversa's documents regarding source, disclosure and spread of the 1718 File and all communications related thereto;

- Tiversa and Boback's dissemination and definition of "publicly available," including the use of that phrase in one of the defamatory statements;

- Emails and other Tiversa and Boback documents relating to the defendants' "publicly available" defense, including those that Plaintiff believes were forged and/or false (*e.g.*, an affidavit by Tiversa's Chief Information Officer Anju Chopra) and all other communications related thereto;

- Boback's motivation for publishing the defamatory statements and all communications related thereto;

- Boback's intent to harm LabMD and Michael J. Daugherty and all communications related thereto;

- The extent to which the defamatory statements at issue were disseminated; and

- LabMD's harm resulting from the defamatory statements at issue.

ECF No. 243 at 6.

Counsel for Tiversa and LabMD met and conferred on several occasions to identify discovery criteria and search terms. The parties agreed that Tiversa would collect and store electronic data from thirteen individuals, including Boback, and they also agreed to a list of seventeen ESI search terms. ECF No. 583-3 at 3-4. Tiversa produced thousands of documents based on this search. Id. LabMD also subpoenaed documents from nonparties, including former Tiversa employee Richard Wallace ("Wallace"). ECF No. 324 ¶ 10; ECF No. 332 at 1. The parties scheduled depositions for ten fact witnesses. ECF No. 372 ¶ 2.

Throughout the discovery process, the Court was required to deal with numerous discovery motions and discovery issues. See, e.g., ECF Nos. 329, 331, 332, 336, 337, 339, 341, 347, 349,

350, 351, 352, 356, 363, 364, 366, 371, 372, 374, 375, 377, 379, 381, 382, 388, 391, and 393. Nearly all the discovery motions and issues in the final two-and-one-half months of discovery resulted from the conduct of LabMD and its counsel. The Court ultimately imposed sanctions on LabMD and its counsel. ECF No. 413.

### D. Summary Judgment

After fact discovery closed, Defendants moved for summary judgment. ECF Nos. 414 and 419. The Court granted summary judgment in Defendants' favor because it found that LabMD could not prove damages. ECF Nos. 464 and 465.

In its Opinion, the Court discussed that under Pennsylvania law, there are two categories of compensatory damages relevant to a defamation claim: "actual" and "presumed" damages. ECF No. 464 at 15 (citing Sprague v. Am. Bar Ass'n, 276 F. Supp. 2d 365, 368 (E.D. Pa. 2003)). To establish actual damages, plaintiff must show competent proof of harm. Id. (citing Sprague, 276 F. Supp. 2d at 368).

Presumed damages, by contrast, are "presumed under the law" and "allow a defamation plaintiff to recover compensatory damages without proving the defamatory statement caused actual harm." Id. at 20 (citing Sprague, 276 F. Supp. 2d at 368; Franklin Prescriptions, Inc. v. N.Y. Times. Co., 424 F.3d 336, 341 (3d Cir. 2005)). To establish a right to presumed damages, plaintiff must prove that the speaker acted with actual malice, "i.e., with knowledge that [the Statements] were false or with reckless disregard of whether [they] were false or not." Id. (citing Lewis v. Philadelphia Newspapers, Inc., 833 A.2d 185, 192 (Pa. Super. 2003); Beverly Enterprises v. Trump, 182 F.3d 183,188 n. 2 (3d Cir. 1999); Joseph v. Scranton Times L.P., 129 A.3d 404, 432 (Pa. 2015)).

Because LabMD had ceased operations over a year before the alleged defamatory statements, the Court held that LabMD could not prove actual damages. ECF No. 464 at 18-20. Based on the record, the Court also held that LabMD was not entitled to presumed damages because it could not show Boback acted with actual malice. Id. at 20-29.

### E. Appeal

LabMD appealed from multiple orders of this Court to the United States Court of Appeals for the Third Circuit, including the Order granting in part Defendants' Motion to Dismiss the Amended Complaint, and the Order granting summary judgment for Defendants. ECF Nos. 468, 469, 522 and 527.

Upon consideration, the Third Circuit affirmed in part specific rulings but vacated this Court's Order granting the Motion to Dismiss LabMD's defamation claim relative to Statement Nos. 10, 14, 15, 17 and 18, along with its Order granting summary judgment relative to Statement Nos. 13 and 16, and it remanded for further proceedings. LabMD Inc. v. Boback, 47 F.4th 164 (3d Cir. 2022).

As to Statement Nos. 10, 14, 15, 17 and 18, the Third Circuit disagreed that LabMD had conceded the non-defamatory nature of those statements in responding to the Motion to Dismiss. The Third Circuit found that while LabMD had focused on the phrases "indisputable fact," "leaked" and "publicly available" that appear in Statement Nos. 13 and 16 (which the Court did not dismiss), Statement Nos. 10, 14, 15, 17 and 18 (which the Court did dismiss) contain similar language or characterizations. Based on this, the Third Circuit found this Court had too narrowly construed LabMD's argument, and it was improper to grant the Motion to Dismiss on this basis relative to Statement Nos. 10, 14, 15, 17 and 18. Id. at 183-85.

With respect to the Court's ruling on summary judgment, LabMD conceded its lack of actual damages on appeal.  Id. at 186.  LabMD argued, however, that the Court should have allowed it to submit an expert declaration in support of its request for presumed damages.  Id.  The Third Circuit agreed.  Id. at 186-88.

The Third Circuit also vacated certain sanctions that the Court imposed on LabMD and its counsel.  Id. at 188-90.  In doing so, however, the Third Circuit recognized that LabMD and its counsel had "engaged in aggressive discovery tactics that frustrated Tiversa and unnecessarily burdened the District Court[.]"  Id. at 188.  The Third Circuit noted that it "in no way condones" such "hyper-aggressive behavior," and it had no doubt that some of LabMD's conduct warranted sanctions.  Id. at 190.  Accordingly, this Court was advised that it is "free to keep [LabMD and its counsel] on an appropriately designed and well-explained short leash as the case continues."  Id.

## F.  Remand

Upon remand, the Court entered an Order on December 15, 2022, reinstating LabMD's defamation claim, Count II, as to Statement Nos. 10, 14, 15, 17 and 18.  ECF No. 561.  In addition, the Court allowed Defendants to renew any other arguments they previously made in favor of dismissing the claim, in accordance with the ruling of the Third Circuit, and scheduled supplemental briefing relative to the Motion to Dismiss.  ECF No. 562.  The Court later denied Defendants' renewed Motion to Dismiss.  ECF Nos. 569 and 570.

On April 19, 2023, the Court held a video status conference.  ECF No. 574.  The Court directed counsel to meet and confer as to "targeted discovery" needed for the five reinstated statements: Statement Nos. 10, 14, 15, 17 and 18.  Id. ¶ 3.  The Court emphasized that discovery is limited to those five statements, and that discovery that had already been conducted would not be repeated.  Id. ¶ 4.

The Court met with counsel for another video status conference on June 5, 2023.  ECF

No. 580.  During the status conference, the Court reiterated the limited scope of discovery.

> And given the nature of those five statements, given the scope of what was already covered beyond extensive discovery, ***I am very concerned that this is not a situation that—this [cannot be a] situation where there is duplicative discovery, where there were discovery decisions made by prior counsel for LabMD, that you may have a different view on those; but we are not repeating discovery***.
>
> There was unbelievable amounts of discovery and unbelievable amounts of motion practice relative to the discovery that is clearly set forth on the docket.  So that is a very significant concern that I have.
>
> This is not a re-run to the start of the first quarter of the football game.  I mean, we are at the beginning of the fourth quarter.  There has been incredible work done in this case over the last seven-plus years.

ECF No. 581 at 9-10 (emphasis added).

> The Court also noted in the hearing memo:

> Court stated that only ***narrowly tailored discovery*** limited to the 5 remaining statements will be permitted.  Given the most extensive discovery previously conducted in this case, the Court cautioned as to the ***limited scope of discovery that will be permitted as to matters not previously addressed***.

ECF No. 580 ¶ 3 (emphasis added).

### G.  Motion to Compel

LabMD filed this Motion to Compel on September 15, 2023.  ECF No. 583.  Tiversa filed

a Response in Opposition.  ECF No. 585.  The Motion to Compel is now ripe for consideration.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

"Rulings regarding the proper scope of discovery, and the extent to which further discovery responses may be compelled, are matters committed to the court's judgment and discretion." Simmons v. Gilmore, No. 2:17-cv-00996, 2019 WL 3944325, at *1 (W.D. Pa. Aug. 21, 2019). That discretion is limited by Rule 26, which reaches only "nonprivileged matter that is relevant to any party's claim or defense." Id. at *2. "Accordingly, '[t]he Court's discretion in ruling on discovery issues is therefore restricted to valid claims of relevance and privilege.'" Id. (quoting Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (W.D. Pa. Sept. 9, 2016)).

As the moving party, LabMD "bears the initial burden of showing the relevance of the requested information." Id. (quoting Morrison v. Phila Hous. Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001)). "Once that burden is satisfied, the party resisting the discovery has the burden to establish that the discovery being sought is not relevant or is otherwise inappropriate." Id.

## III.    DISCUSSION

This case has been pending for over eight years. It is one of myriad cases arising out of Tiversa's alleged shakedown scheme, including multiple cases filed in this Court.[4] As LabMD points out, issues related to Tiversa's conduct and LabMD's alleged exposure of the 1718 file also

---

[4] LabMD and its CEO, Michael Daugherty, have brought three other cases in this Court: Daugherty v. Adams, No. 17-368 (W.D. Pa. 2016); LabMD, Inc. v. Tiversa, No. 17-1365 (W.D. Pa. 2017); and LabMD, Inc. v. The Privacy Institute, No. 20-766 (W.D. Pa. 2019). The Court is also aware of many additional cases, including cases filed in the United States District Court for the Southern District of New York (United States of America ex rel. Michael J. Daugherty v. Tiversa Holding Corp., et al., Case No. 1:14-cv-4548); the Supreme Court of the State of New York (LabMD, Inc. and Michael J. Daugherty v. Mary Beth Buchanan and Bryan Cave Leighton Paisner LLP, Index No. 160929/2018); the United States District Court for the Eastern District of Virginia (LabMD Inc. v. The Privacy Institute, et al., Case No. 1:19-cv-852); the United States District Court for the District of Columbia (LabMD, Inc. v. Federal Trade Commission, et al., Case No. 1:13-cv-1787; Michael J. Daugherty and LabMD, Inc. v. Alain H. Sheer, et al., Case No. 1:15-cv-2034); the United States District Court for the Northern District of Georgia (LabMD, Inc. v. Federal Trade Commission, Case No. 1:14-cv-810; LabMD, Inc. v. Tiversa, Inc., No. 1:11-cv-4044; LabMD, Inc. v. the Federal Trade Commission, Case No. 1:21-cv-3525; Daugherty v. Cause of Action Institute, No. 1:23-cv-642); and the Court of Common Pleas for Allegheny County, Pennsylvania (Tiversa v. LabMD, Inc., Case No. GD-14-016497). Numerous appeals have also been filed arising out of these various lawsuits.

prompted an FTC investigation, an investigation by the United States House of Representatives, and a criminal investigation.

While there is a sprawling history of litigation between the parties, this case is distinctly limited in scope.  There is only one remaining claim: a portion of a defamation per se claim arising out of seven statements that Boback made in 2015.

> After all, we found this file in a public file sharing network that was accessible by millions of people from around the world.  (Defamatory Statement No. 10).

> LabMD lawsuit - The claims are baseless and completely unsubstantiated …. even in the complaint itself.  This appears to be another attempt by Daugherty to distract people from the INDISPUTABLE FACT that LabMD and Michael Daugherty leaked customer information on nearly 10,000 patients. (Defamatory Statement No. 13).

> To my understanding from the deposition transcripts, LabMD had a policy against installing file sharing software.  An employee at LabMD violated that policy, which resulted in the exposure of nearly 10,000 patients['] private information.  This clearly demonstrates that LabMD DID NOT adequately protect their patient's [sic] PHI/PII, which is al[l] that the FTC needs to demonstrate.  Case closed.  The rest of this is just a desperate attempt to distract everyone from that INDISPUTABLE FACT.  (Defamatory Statement No. 14).

> LabMD, a Georgia-based cancer screening company, admits its own employee mistakenly exposed the confidential medical records of nearly 10,000 individuals on the Internet.  (Defamatory Statement No. 15).

> LabMD's CEO Michael Daugherty admits that a LabMD employee improperly installed LimeWire file-sharing software on a company computer.  Doing so made confidential patient information publicly available over the Internet.  (Defamatory Statement No. 16).

> Using this information, LabMD discovered that it had peer-to-peer sharing software on a company computer.  Without Tiversa's free information, LabMD would have never known it was continuing to publicly expose patient information.  (Defamatory Statement No. 17).

> The suggestion that Tiversa provided information on exposed files to the Federal Trade Commission as a means of retribution because LabMD didn't hire Tiversa is 100% false.  (Defamatory Statement No. 18).

ECF No. 125 ¶¶ 125, 127.

LabMD seeks to recover damages for harm to its reputation caused by these statements. Because LabMD ceased operations over a year before Boback made these statements, however, any potential damages are limited at best. LabMD cannot prove actual harm, so it is not entitled to actual damages. ECF No. 464 at 18-20; LabMD, 47 F.4th at 186. Presumed damages do not require competent proof of harm; but they are still compensatory in nature and must "at least roughly approximate [LabMD's] actual harms." Szymkowicz v. Frisch, No. 19-3329, 2020 WL 4432240, at *8 (D.D.C. July 31, 2020).[5] Because LabMD was non-operational, it did not suffer any lost profits or business because of the statements. As a result, there is simply no basis to award significant damages.

At this stage, the need for additional discovery is also limited. The parties have conducted extensive discovery as to LabMD's defamation claim relative to Statement Nos. 13 and 16.[6] While Statement Nos. 10, 14, 15, 17 and 18 are newly reinstated, the Third Circuit has found those

---

[5] The rationale for allowing presumed damages is "that it may be unfair to require proof of actual harm to reputation because reputational injury is difficult to prove and measure." ECF No. 464 at 20 (quoting Franklin Prescriptions, 424 F.3d at 341). Nevertheless, presumed damages are not a "blank check," and even a nominal recovery may be sufficient to vindicate an injury to reputation. Szymkowicz, 2020 WL 4432240, at *7 (citing Grossman v. Goemans, 631 F. Supp. 972, 974 (D.D.C. 1986)). Courts have held that presumed damages should be supported by the evidence and have reduced such awards where it is clear such damages are serving a punitive, rather than compensatory, function. See, e.g., Republic Tobacco Co. v. N.A. Trading Co., Inc., 381 F.3d 717, 725 (7th Cir. 2005) ("Presumed damages serve a compensatory function—when such an award is given in a substantial amount to a party who has not demonstrated evidence of concrete loss, it becomes questionable whether the award is serving a different purpose."); Prendeville v. Singer, 155 F. App'x 303, 305 (9th Cir. 2005) (court retains discretion to grant a new trial for excessive damages if the amount of presumed damages awarded is "wholly unsupported by the evidence presented"); Amor v. Conover, No. 5:21-cv-05574, 2023 WL 5339618, at *5 (E.D. Pa. Aug. 18, 2023) (while plaintiffs were entitled to presumed damages, they were not entitled to "excessive damages unsupported by the evidentiary record").

[6] Given the extensive history of litigation between the parties and related proceedings, the Court notes that LabMD also has discovery and information from other sources. For example, LabMD has referred to testimony and evidence from the FTC proceedings. ECF No. 418-3. In an expert declaration it previously filed, LabMD relies on computer data it received in separate qui tam action from the FBI's investigation into Tiversa. ECF No. 433-18 ¶ 18.

statements contain similar or analogous language to Statement Nos. 13 and 16.  LabMD, 47 F.4th at 183-85.

In reopening fact discovery, the Court met with counsel multiple times and advised as to the limited scope of discovery that would be permitted.  The Court repeatedly instructed that discovery must be narrowly tailored to the 5 reinstated statements, and it must not cover matters previously addressed.  As it has throughout this litigation, the Court reminded the parties that discovery must be proportional to the needs of this case.

Against this backdrop, LabMD now brings this seventy-eight-page Motion to Compel Discovery relative to twenty requests for production, eight interrogatories, and ten requests for admission.

Before addressing the pending motion, the Court notes that it painstakingly reviewed the Motion to Compel, response in opposition, the current discovery requests and responses, prior discovery requests and responses, as well as the multitude of prior rulings and Court findings relative to the discovery disputes between the parties.  Of note, certain of the discovery requests that LabMD seeks to compel responses to were the subject of prior rulings by this Court.

**A.  Requests for Production of Documents**

LabMD moves to compel further responses to Requests for Production Nos. 1 through 3; 5 through 10; and 13 through 23.  ECF No. 583 at 7-68.  Tiversa objects that these requests are overly broad, not proportional to the needs of the case, and beyond the scope of the limited discovery allowed by this Court as to the reinstated statements.  ECF No. 583-3.

The Court will address each of these requests below.

### 1. Request No. 1

Request for Production No. 1 seeks "[a]ll P2P Software used by Tiversa, including Eagle Vision, Lime Wire, and any P2P provided to Tiversa by any governmental agency." ECF No. 583 ¶ 20.

In support of the Motion to Compel, LabMD argues that this discovery goes to whether the 1718 File was "publicly available." LabMD refers to Wallace's testimony that he found the 1718 File using the government's proprietary eP2P software. According to LabMD, this suggests that the 1718 File was not readily accessible using standard P2P software, and thus was not "publicly available." LabMD argues that Tiversa's P2P software is needed to determine which software was used to find the 1718 File. Id. at 10-18.

Upon review, the Motion to Compel is denied as to Request No. 1. This request violates the Court's directive not to repeat discovery. Whether the 1718 File was "publicly available," and how it was obtained, was the subject of extensive prior discovery.

This request is also not proportional to the needs of this case. In considering the Rule 26(b)(1) factors, the Court notes that this case concerns the reputation of a shuttered business; any potential damages are limited at best. The burden of complying with this request far exceeds the utility of such information. As framed, this request is patently overly broad in scope; it requires the production of all P2P software, regardless of whether it may have been used to locate the 1718 File. At the same time, LabMD already has access to relevant information from other sources, including: (1) knowledge of how its own data was stored; (2) Wallace's testimony about how he located the 1718 File; and (3) information about the capabilities of P2P software from various sources, including interviews, depositions, disclosures, Tiversa documents, independent research, and LabMD's expert, Daniel Regard. ECF No. 583 at 11; ECF No. 433-18. Because this request

is duplicative of prior discovery and not proportional to the needs of this case, the Motion to Compel is denied as to Request No. 1.

### 2. Request No. 2

Request for Production of Documents No. 2 requests Tiversa to produce its "Data Store." ECF No. 583 ¶ 50.

According to LabMD, the Data Store is the repository of files and folders on Tiversa's computer servers that were discovered and downloaded by Tiversa using P2P software. LabMD contends this database will reveal when various files were accessed and if they were manipulated. LabMD says this request goes to whether Defendants misrepresented that the 1718 File was located on computers other than LabMD's computer. Id. at 19-22.

Upon review, the Motion to Compel is denied as to Request No. 2. Information about where and how the 1718 File was found was the subject of prior discovery.[7] Beyond that, this request far exceeds the scope of relevant information, and it is not even remotely proportional to the needs of this case. LabMD is asking for every single file, document, or piece of data that Tiversa ever downloaded during its operation—literally terabytes of data. ECF No. 585 at 1-2. Despite this Court's repeated admonition that discovery must be narrowly tailored, this request is in no way limited to LabMD's single remaining claim. Indeed, LabMD tacitly acknowledges its overreach, claiming that it only asked for the entire database to "limit the burden" on Tiversa to search for relevant files in that database. ECF No. 583 ¶ 55.

---

[7] In a prior motion to compel, LabMD suggested that Tiversa no longer had the data store. LabMD informed the Court: "Steve Zoffer, counsel for Tiversa in a related action, represented to [t]he Honorable Denise Cote that Tiversa no longer has documents in and related to Tiversa's Data Store because it transferred its Data Store (and presumably all metadata and other source information therein and associated therewith) when it transferred its assets." ECF No. 378 at 21. The parties do not discuss this prior representation or address if the data store is even available for production.

In the alternative, LabMD asks the Court to compel Tiversa to produce information relating to certain IP addresses and/or company names based on information provided by the FBI regarding Tiversa's "scheme to use its technology to fabricate evidence and manipulate electronically stored information." Id. ¶¶ 55-57. LabMD does not provide this list, so it is unclear what it asks the Court to compel. In any event, such a request is not relevant or proportional to the needs of this case. The reinstated statements do not concern any "scheme" involving other companies; they are limited to LabMD and the 1718 File. Accordingly, the Motion to Compel is denied as to Request No. 2.

### 3. Request No. 3

Request for Production No. 3 requests "[t]he Master File Table for all computers or servers used by You to run any P2P Software or to connect to the Data Store." Id. ¶ 58.

According to LabMD, the Master File Table is a system file on a computer that stores metadata information about all files and directories and contains information such as the file name, timestamps, permissions, and a pointer to the file's data. LabMD contends this information is necessary for it to understand "which computers at Tiversa (and hence which users at Tiversa) had access to the various technologies used to perpetrate" Tiversa's alleged scheme to report companies that declined to pay for its services to the FTC. Id. at 27.

Upon review, the Motion to Compel is denied as to Request No. 3. As this request relates to the 1718 File, it is duplicative of prior discovery. LabMD has already conducted discovery into "individuals who were involved in the search for, accessing and taking the 1718 File from LabMD." ECF No. 243 at 6. Based on this discovery, the parties stipulated at summary judgment that Wallace used a stand-alone computer to download the 1718 File on February 25, 2008. ECF No. 417 ¶¶ 3-4. Wallace was scheduled to be deposed in this matter, and he also testified under

oath in FTC proceedings.  ECF No. 256-9; ECF No. 353.  To the extent this request seeks evidence of a broader "scheme," it is not relevant or proportional to the needs of the remaining claim. Therefore, the Court denies LabMD's Motion as to Request No. 3.

### 4.   Request No. 5

Request No. 5 seeks "[a]ll File Renamer Programs Used by You."  ECF No. 583 ¶ 63.

LabMD refers the Court to testimony that Tiversa used "file renamer software" to change the metadata of individual files to make those files appear to relate to a specific date, time, or IP location.  LabMD argues that it requires this software to show these program(s) were used by Tiversa to reflect false spread "as part of its scheme to use its technology to fabricate evidence and manipulate electronically stored information to induce clients or potential clients to purchase its services."  LabMD also wishes to test this software to determine whether there are "other artifacts created" that would allow it to determine which records or files in the Data Store were subjected to this type of manipulation, including the 1718 File.  Id. at 30-31.

Upon review, the Motion to Compel as to Request No. 5 is denied.  This request sweeps far beyond the bounds of the 1718 File or LabMD, and it seeks to establish evidence of a broader scheme that is not relevant or proportional to the needs of the remaining claim.  As it relates to the 1718 File, LabMD conducted discovery on whether Tiversa took efforts to create the appearance of false spread.  See, e.g., ECF No. 435 at 4-5.

### 5.   Request Nos. 6 and 7

Request Nos. 6 and 7 request the following documents.

6.    All programs used by employees at Tiversa to inject files into Tiversa's Data Store (e.g., the RAD Importer, File Importer and Data Store Importer).

7.    All Tickets, including the Metadata associated with such Tickets.

ECF No. 583 ¶¶ 68, 73.

In support of the Motion to Compel as to Request No. 6, LabMD states that injector programs were used for "no legitimate reason" to insert files into the data store, and this discovery goes to establishing that Tiversa used such programs "as part of its scheme to use its technology to fabricate evidence and manipulate electronically stored information to induce clients or potential clients to purchase its services." Id. at 34-35.  As for Request No. 7, LabMD argues that Tiversa used "tickets" to alert a prospective client that sensitive files had been discovered.  This discovery also goes toward establishing Tiversa's alleged scheme. Id. at 38-39.

Upon review, the Motion to Compel is denied as to Request Nos. 6 and 7.  These requests are directed to whether Tiversa engaged in a broader scheme involving companies unrelated to LabMD, and they are not reasonably limited to the 1718 File and claim as to the reinstated statements.

### 8.  Request No. 8

Request No. 8 states: "To the extent not previously produced, all versions of the 1718 File in Native File Format, including all Metadata, and all documents and things concerning the downloading or handling of the 1718 File by You including those relating to:

a.   who downloaded the 1718 File;
b.   the date(s) when You downloaded the 1718 File;
c.   how You located the 1718 File;
d.   what program(s) (e.g., Eagle Vision, LimeWire, eP2P) You used to download the 1718 File;
e.   all metadata evidencing such downloads;
f.   the IP address(es) of all computer(s) from which You downloaded the 1718 File;
g.   whether You modified or altered the IP address(es) of the 1718 File;
h.   whether Tiversa modified or altered the timestamps of the 1718 File;
i.   who injected the 1718 File into Tiversa's Data Store;
j.   when the 1718 File was injected into Tiversa's Data Store;
k.   what program(s) Tiversa used to inject the 1718 File into Tiversa's Data Store; and

> l.   log or other entries from Tiversa's server(s) showing the date the 1718 File was injected into Tiversa's Data Store and any other recorded dates for the 1718 File (e.g., create date, modified date)."

Id. ¶ 82.

Upon review, these inquiries were all the topics of prior discovery. Indeed, LabMD admits as much, arguing that "[g]iven the prior discovery responded to in this case, one would assume that, at a minimum, Tiversa would have already produced all documents responsive to Request No. 8 and the response would have been that there are no additional documents to produce." Id. at 40. Because this request is duplicative of prior discovery, the Motion to Compel is denied as to Request No. 8.

### 9.   Request Nos. 9 and 10

Request Nos. 9 and 10 request the following documents.

> 9.   Documents sufficient to identify the formation of, operation or, communication with, provision of information and data to, and or coordination with the Privacy Institute.

> 10.   Documents sufficient to identify the companies reported to the FTC by You, whether any such companies were clients and, if so, when they became clients.

ECF No. 583 ¶¶ 88, 90.

In support of the Motion to Compel, LabMD explains that Request No. 9 seeks documents related to the Privacy Institute, which was created as a conduit for Tiversa to provide information to the FTC, and that Request No. 10 seeks documents related to communications with the FTC. LabMD contends these requests relate to Statement No. 18 because they go to whether Tiversa had a pattern of providing information on exposed files to the FTC as a means of retribution. Id. at 49.

Upon review, the Motion to Compel is denied as to Request Nos. 9 and 10 because these requests are duplicative of prior discovery.  ECF No. 408 at 8-9.  LabMD previously filed a motion to compel regarding substantially similar requests.  Id.  The Court denied that motion because it was untimely.  Id.  Nonetheless, the Court found that responsive, non-privileged documents had been produced when Tiversa ran the agreed ESI search terms in February 2019, which included the term "FTC."  Id.  As for Request No. 10, LabMD also says in its pleadings that it received the list of companies that Tiversa reported to the FTC during the FTC proceedings in May 2015.  ECF No. 125 ¶¶ 81, 93-94.  LabMD's counsel questioned Boback about this list in the first discovery period.  ECF No. 435 at 4.

### 8.  Request Nos. 13 and 14

Request Nos. 13 and 14 are as follows:

13.   All documents or things evidencing directions, methods, and/or protocols created or used by You to instruct Tiversa's forensic analysts how to add, remove, or modify Eagle Vision records and or Metadata for Files acquired, managed, or tracked by Eagle Vision.

14.   All documents or things evidencing directions, methods and/or protocols created or used by Tiversa to instruct Tiversa's forensic analysts how to inject files into Tiversa's Data Store.

ECF No. 583 ¶¶ 98, 100.

According to LabMD, these documents go to Tiversa's knowledge about its employees' manipulation of data.  Id. at 57.   These inquiries are not reasonably limited to the 1718 File or the reinstated statements.  Accordingly, the Motion to Compel is denied as to Request Nos. 13 and 14.

### 9.  Request Nos. 15 and 16

15.   All documents and things identifying the "Burnt IP addresses" used by Tiversa including the "Burnt IP addresses" described in ¶ 31 of the Search Warrant Affidavit.

16. The October 1, 2007 email referenced in ¶ 30 of the Search Warrant Affidavit.

ECF No. 583 ¶¶ 107, 109.

Request Nos. 15 and 16 relate to an Affidavit in Support of Application under Rule 41 for a Warrant to Search and Seize that was filed relative to a criminal investigation of Tiversa. LabMD argues these documents "go to the scheme used by Tiversa to manipulate data to create the impression that companies which refused to pay for its services had a major security breach." Id. at 63. As discussed, the reinstated defamatory statements do not concern such a scheme. Therefore, the Motion to Compel is denied as to Request Nos. 15 and 16.

**10. Request Nos. 17 through 22**

Request Nos. 17 through 22 seek the following documents.

17. All investigative reports prepared by You regarding allegations that Boback and/or Tiversa gave false statements and/or false testimonies and/or fabricated documents and things to Congress and the FTC.

18. All "documented proof that this did not happen" as mentioned in Boback's February 10, 2015 statement to the Pathology Blawg in reference to the allegation that an FTC attorney visited Tiversa in October 2014, and that Boback told Wallace to fabricate IP addresses regarding the spread of the LabMD file.

19. All native versions of and all original unaltered Metadata (if any) associated with Exhibits CX1007, CX1008, CX1009, CX1016 and CX1017 referenced by Anju S. Chopra in her affidavit filed in support of the Motion to File Response.

20. All Metadata and Files that are the sources of such Metadata referenced by Anju S. Chopra in paragraph 3 of her affidavit filed in support of the Motion to File Response.

21. All documents that would have allowed you to "further demonstrate what you and Mr. Daugherty already know through publically available documents: namely, that the file in question could be found and today can still be found at multiple sites in the public domain," as stated in a letter from Tiversa's counsel, John Hansberry, to LabMD's counsel, Stephen Fusco.

22.    Please produce all documents that support the statement made in a letter from Tiversa's counsel, Jarrod Shaw, to LabMD's counsel, Richard Victoria (and others), date[d] October 17, 2013, that "the evidence will indisputably show that Mr. Boback did not access, take, 'invade,' or ever obtain the File through a LabMD computer."

ECF No. 583-2 at 23-26.

The Motion to Compel is denied as to Request Nos. 17 through 22 because these requests repeat prior discovery.  In support of the Motion to Compel, LabMD admits that it served the same exact same requests in the first discovery period.  LabMD argues these requests are properly renewed, however, because the Court improperly rejected LabMD's discovery on the grounds they concerned "false spread"—an issue the Third Circuit later held is relevant to whether Boback acted with malice.  ECF No. 583 at 64.  LabMD did not appeal relative to these discovery requests, however, and its argument is not supported by the record.

Request No. 17 is not about false spread; it concerns false statements to the government. The Court did not previously consider or sustain any objections regarding this request.

As for Request Nos. 18 and 20, LabMD did not raise any objections with the Court, so the Court did not consider or sustain any objections related to false spread.

As for Request No. 19, LabMD moved to compel further responses, but the Court did not sustain Tiversa's objections on the grounds it related to false spread.  Based on the parties' briefing, the Court found that the issue occurred because of how one of the ESI search terms was initially run ("LabMD" as a single word), and that issue had since been resolved (by running the search again with a space between Lab and MD).  As a result, the Court found this request was no longer in dispute.[8]  ECF No. 408 at 10.

---

[8] LabMD's motion to compel was also denied on the grounds that it was untimely.  ECF No. 408 at 5-6.

Finally, as for Request Nos. 21 and 22, LabMD moved to compel further responses. While the Court did find that LabMD appeared to be seeking discovery about statements not at issue, it separately denied the motion on the grounds that it was untimely filed. Id. at 5-6, 11-12.

### 11. Request No. 23

Request No. 23 seeks:

> all documents or things referring to the following ESI search terms: P2P, eP2P, FBI, Eagle Vision, EVXI, Data Store, injected, spread, proliferate, burnt, breakwater, 64.190.82.42, 68.8.250.203, 68.107.85.250, 173.16.83.112, 201.194.118.82, 90.215.200.56, 71.59.18.187, 173.16.148.85, 64.190.79.36, 70.173.76.192, file renamer, filer importer, RAD importer, information concentrator, info concentrator, CIG00081, BearShare, Ares, eDonkey, CitrixWire, DirectConnect, FireWire, Frostwire, Frosty, gIFT, gnutella, Lemonwire, Limewire, Morph500, MP3Torpedo, Torpedo, Shareaza, WinMX Music, WebDisclosure, FAVA and Frankhauser.

ECF No. 583 ¶ 120.

For Request No. 23, LabMD requests that Tiversa conduct a search relative to 46 additional ESI search terms. Tiversa points out that it already met and conferred with LabMD's former counsel regarding ESI search terms in the first discovery period and, in fact, many of the "new" search terms LabMD requests were previously suggested and withdrawn by LabMD's former counsel. ECF No. 585 at 16.

Upon review, the Motion to Compel is denied as to Request No. 23. As the Court explained: this is not a return to the beginning of discovery, or an opportunity to reconsider prior counsel's strategy. This list appears to be just that. LabMD argues that it is now entitled to discovery for the reinstated statements, which were not at issue during the prior discovery period. But there is nothing to suggest this list is borne of issues newly relevant or unique to the reinstated statements. This list includes terms such as "P2P" and "LimeWire"—issues that were also implicated by Statement Nos. 13 and 16. Indeed, as Tiversa points out, "Lime Wire" (with a space) was an agreed search term during the initial discovery period. Id.

24

This request is also not proportional to the needs of this case.  As detailed above, this case involves a single remaining claim subject to limited damages.  Extensive discovery has already taken place for substantially similar statements.  This proposed list includes nearly triple the number of ESI search terms previously run, and it would likely generate a substantial number of documents that are not relevant to the reinstated statements.  Accordingly, the Motion to Compel is denied as to Request No. 23.

## B. Interrogatories

LabMD also moves to compel further responses to Interrogatory Nos. 1 through 8. Interrogatory Nos. 1 through 7 ask Tiversa to identify "all evidence" that proves the defamatory statements were truthful and not misleading.  Interrogatory No. 8 requests that Tiversa identify the "significant information from law enforcement and others about this situation" as referenced in Boback's February 10, 2015, statement to the Pathology Blawg.[9]  ECF No. 583 at 69-71.

Upon review, Tiversa has sufficiently answered these interrogatories.  In response, Tiversa specifically identifies certain evidence and refers to materials previously cited in support of its Motion for Summary Judgment.  Those documents are readily available for LabMD's review.  Of course, Tiversa should supplement its responses to these interrogatories as appropriate based on continued discovery, as addressed by Federal Rule of Civil Procedure 26(e).  Accordingly, the Motion to Compel is denied as to Interrogatory Nos. 1 through 8.

---

[9] This quote does not refer to one of the alleged defamatory statements at issue.  It is an excerpt from the sentence in Boback's statement that "[w]e actually look forward to [Wallace's] testimony as we have done an extensive investigation ourselves and have learned significant information from law enforcement and others about this situation."  ECF No. 18-5 at 4.

### C. Requests for Admission

#### 1. Request Nos. 10 and 14

Request No. 10 asks Tiversa to admit that "the 1718 file was never found on any computer other than a LabMD computer," and Request No. 14 asks Tiversa to admit that "no member of the public using non-proprietary P2P Software could have found the 1718 File." ECF No. 583 ¶¶ 145, 147. Tiversa responded that it could neither admit or deny these requests, and that it is "not able to respond whether the 1718 File could have been found on any other computer by any other member of the public." ECF No. 583-5 at 10, 12. LabMD contends these answers are improper because Tiversa has access to information necessary to admit or deny these requests. ECF No. 583 at 74-75.

Upon review, the Motion to Compel is denied as to these requests. As framed, the requests are not limited to seeking information that is clearly within Tiversa's knowledge or control. The Court cannot state that Tiversa's response is improper.

#### 2. Request No. 12

Request No. 12 asks Tiversa to "admit that Mr. Wallace was acting within the scope of his employment at Tiversa at the time he located the 1718 file." ECF No. 583 ¶ 152. Tiversa denied this request on the grounds that it seeks a legal conclusion. The parties now disagree whether this request improperly seeks a legal conclusion, or if it involves the "application of law to fact," which is permissible under Federal Rule of Civil Procedure 36. ECF No. 583 at 76; ECF No. 585 at 21.

Upon review, the advisory committee notes to Rule 36 include whether an "employee acted in the scope of his employment" as an example of an appropriate request involving the application of law to fact. Based on this commentary, the Court grants the Motion to Compel as to Request for Admission No. 12.

### 3.  Request No. 18

Request No. 18 asks Tiversa to admit that it "only informed the FTC of data breaches it had found that related to companies that did not pay for Tiversa's services." ECF No. 583 ¶ 152. Tiversa did not provide an answer, and it objected that this Request falls outside the scope of limited discovery ordered by the Court.

Tiversa's objection is supported.  Although LabMD contends this request is relevant to Statement No. 18, that statement concerns Tiversa reporting LabMD to the FTC.  Request No. 18 seeks an admission regarding other companies that are not at issue, and thus it does not "serve to narrow the triable issues in this case."  Langer v. Monarch Life Ins. Co., 966 F.2d 786, 803 (3d Cir. 1992).  Therefore, the Motion to Compel is denied as to this request.

### 4.  Requests to Identify Supporting Facts and Documents in Requests for Admission Nos. 9 through 18

Plaintiff served ten requests for admission.  Each request for admission ends with the inquiry: "if your answer is anything other than an unqualified 'yes', identify all facts and produce all documents that support your position."  Tiversa objected to these inquiries, and LabMD now moves to compel responses.  ECF No. 583 at 73-74.

As Tiversa correctly points out, however, these inquiries go beyond the scope of what is required under Federal Rule of Civil Procedure 36.  Although LabMD argues that this portion of the request should be considered a supplemental interrogatory, interrogatories and requests for admission are not "interchangeable procedures."  In re Olympia Holding Corp., 189 B.R. 846, 853 (M.D. Fla. 1995) (request for admission that required defendant to explain denials was improper and could improperly circumvent the rules limiting the number of interrogatories).  Accordingly, the Motion to Compel is denied on this basis.

IV.    **CONCLUSION**

For the reasons set forth herein, the Motion to Compel Discovery, ECF No. 583, is granted

in part and denied in part.  An appropriate Order follows.

## **ORDER**

AND NOW, this 6th day of December, 2023, IT IS HEREBY ORDERED that the Motion

to Compel Discovery, ECF No. 583, is GRANTED IN PART and DENIED IN PART.  The motion

is GRANTED as to Request for Admission No. 12.  Tiversa is directed to amend its response to

Request for Admission No. 12 within 14 days.  The motion is DENIED in all other respects.


BY THE COURT:


MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


cc:  All counsel of record via CM/ECF.

28